# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATHAN STRONG

        *Plaintiff,*

    v.

 HAMPTON DELLINGER,

*U.S. Special Counsel.*

       *Defendants*.

Civil Action No. 24-2766 (TJK)

## Second Amended Complaint

### I. INTRODUCTION

This is an action for damages, declaratory relief, and injunctive relief against the United States via the U.S. Office of Special Counsel ("OSC") for violations of the Privacy Act, the Administrative Procedure Act ("APA"), constitutional provisions under the First and Fifth Amendments, and the Federal Tort Claims Act ("FTCA"). Plaintiff seeks monetary damages, a declaration that the agency's actions were unlawful, and equitable relief including reversal of damaging records and issuance of a corrective public notice.

### II. PARTIES

1. Plaintiff Nathan Strong is a former OSC employee who, at all relevant times, resided in the Commonwealth of Virginia.

2. Defendant Office of Special Counsel is an independent agency of the United States government headquartered in Washington, D.C.

## III. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question, including claims arising under the First and Fifth Amendments and structural constitutional challenges), 28 U.S.C. § 1346(b) (Federal Tort Claims Act), 5 U.S.C. §§ 701–706 (Administrative Procedure Act), and 5 U.S.C. § 552a(g)(1)–(g)(1)(D) (Privacy Act). Declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201–2202. Venue is proper in this District under 28 U.S.C. § 1391(e) because Defendant is an agency of the United States, and a substantial part of the events giving rise to Plaintiff's claims occurred in the District of Columbia, including the creation, maintenance, and dissemination of false and stigmatizing records, the implementation of the unconstitutional § 1212(i) referral scheme, and the denial of Plaintiff's statutory and constitutional rights. Plaintiff also timely filed an administrative FTCA claim, which was denied (Exhibit M).

## IV. JURISDICTIONAL SUPPORT

Declaratory and injunctive relief are proper where they will "finally settle the controversy," resolve issues of great "public importance," and are judicially manageable given the "degree of adverseness between the parties." *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 696–97 (D.C. Cir. 2015). Those criteria are satisfied here, as OSC continues to maintain and disseminate false records, perpetuate a constitutionally defective internal scheme, and has not offered any legitimate justification for its conduct. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

### A. No CSRA Preclusion

Plaintiff's claims are not precluded by the Civil Service Reform Act ("CSRA") because none of the challenged actions constitute a covered "personnel action" reviewable by the Merit

Systems Protection Board ("MSPB") or within OSC's remedial authority. See Elgin v. Dep't of Treasury, 567 U.S. 1, 10–11 (2012). The actions at issue include:

1. Creation, maintenance, and dissemination of false and stigmatizing records, including fabricated AWOL designations, a non-existent probationary status, and uncorrected allegations of misconduct;

2. Unauthorized dissemination of medical and reasonable accommodation records beyond individuals with a legitimate need to know;

3. Violations of nondiscretionary statutory duties under the Privacy Act, FRA, and APA, including failure to maintain, amend, and safeguard records;

4. Negligent acts under the FTCA, including negligent supervision, records management, and post-resignation retention of harmful false records;

5. Deprivation of constitutional rights, including procedural and substantive due process, informational privacy, and First Amendment protections;

6. Ultra vires and structural constitutional violations arising from OSC's interpretation and use of 5 U.S.C. § 1212(i) to bypass CSRA and WPA protections.

In MSPB proceedings (Exhibit B), OSC itself affirmatively argued that the CSRA provided no jurisdiction over Plaintiff's allegations of internal misconduct, hostile treatment, and record falsification by agency officials and that § 1212(i)  was the only legal path to redress. The MSPB agreed and dismissed Plaintiff's claim for lack of jurisdiction, based on OSC's representation that OSC employees are "uniquely subject" to the internal reporting mechanism in 5 U.S.C. § 1212(i) rather than the CSRA (Exhibit C). See Kendall v. Perez, 209 F. Supp. 3d 520, 534 (D.D.C. 2016) (declining to apply CSRA preclusion where the agency disavowed CSRA jurisdiction).OSC additionally asserted that 1212i was the only permissible avenue for redress,

By forcing Plaintiff exclusively into the 5 U.S.C. § 1212(i) process and simultaneously barring CSRA review, the government itself removed these claims from the CSRA framework. Additionally, the government has made no attempt to resolve the reported complaints (initially reported in 2022) to this day. Having asserted that § 1212(i) was the only permissible avenue, OSC and MSPB cannot now contend that the CSRA remains controlling. As a result, district court jurisdiction is the only viable forum for adjudication of these matters, in addition to the independent statutory causes of action recognized under the APA, FTCA, Privacy Act, and the Constitution.

OSC's implementation of § 1212(i) foreclosed any meaningful access to CSRA remedies: complaints of prohibited personnel practices and internal misconduct are automatically referred to USDA OIG without notice, investigation, findings, or right of appeal. There is no mechanism to return a §1212(i) referral to the MSPB or CSRA framework, creating a jurisdictional "black hole" insulating OSC misconduct from any review. See Spagnola v. Mathis, 859 F.2d 223, 228–29 (D.C. Cir. 1988) (CSRA does not bar claims where the statutory scheme "prevents any meaningful review"); Cobell v. Norton, 240 F.3d 1081, 1095–96 (D.C. Cir. 2001).

This dual deprivation—exclusion from CSRA remedies and the absence of constitutionally adequate review under § 1212(i)—cannot preclude judicial review. Constitutional claims are presumptively reviewable unless Congress explicitly forecloses them, which it has not done here. Webster v. Doe, 486 U.S. 592, 603 (1988); Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982).

### B. Federal Tort Claims Act (FTCA) Jurisdiction

This Court has jurisdiction under the FTCA, 28 U.S.C. §§ 1346(b), 2671 2680, because Plaintiff seeks damages for personal, reputational, and economic injuries proximately caused by the negligence of federal employees acting within the scope of their employment. Plaintiff timely

submitted an administrative claim to the Office of Special Counsel, which was formally denied (Exhibit M). The FTCA waives sovereign immunity for these torts, and the United States is the proper defendant. Venue is proper in this District because the events giving rise to the claim occurred in the District of Columbia and involve actions by OSC employees headquartered here. Additionally, Plaintiff was ordered by this court to file the FTCA claim in his first Amended Complaint on April 28, 2025 after a successful Motion for Leave to Amend.

### C. Administrative Procedure Act (APA) Jurisdiction

This Court also has jurisdiction under the APA, 5 U.S.C. §§ 701-706, to review final agency actions and unlawful agency inaction that caused Plaintiff continuing harm. OSC engaged in arbitrary and capricious action, abused its authority, and failed to perform mandatory duties under law, including refusing to correct false records and implementing an unconstitutional § 1212(i) referral scheme. Under 5 U.S.C. § 706(1), the Court may compel agency action unlawfully withheld or unreasonably delayed; under § 706(2), it may set aside actions that are arbitrary, capricious, or contrary to law. No other adequate remedy exists because OSC's practices fall outside CSRA review and foreclose any MSPB remedy.

### D. Privacy Act Jurisdiction

This Court has jurisdiction under the Privacy Act, 5 U.S.C. § 552a(g)(1)(A)–(D), because OSC recklessly created, maintained, and disseminated inaccurate records that directly harmed Plaintiff. This Court has jurisdiction over Plaintiff's Privacy Act claims under 5 U.S.C. § 552a(g)(1)–(g)(1)(D) because Defendant United States, acting through the Office of Special Counsel (OSC), created, maintained, and disseminated inaccurate, incomplete, and stigmatizing records affecting Plaintiff's employment and reputation, including:

- False performance records, such as the June 2022 AWOL designation, fabricated probationary status, a backdated and unsigned performance plan, the Notice of a criminal accusation, the November 2022 evaluation and related emails;

- Mishandled medical and reasonable accommodation records, including RA documentation and related internal emails, in violation of OSC-3 SORN and 5 U.S.C. § 552a(b), (e)(10);

- Records (including related emails) foreseeably resulting in compelled self-disclosure, including to EEOC (Apr 2025), MSPB, DOJ, the U.S. Attorney's Office, USDA OIG, federal background investigators (July 1, 2025).

These acts caused continuing harm, including reputational injury, loss of employment opportunities, emotional distress, and the compelled self-publication of false records in every current and future federal background investigation. Plaintiff seeks declaratory, injunctive, corrective, and monetary relief under § 552a(g), including amendment or expungement of the false records and notification to all agencies that previously received or may rely on them.The Privacy Act authorizes this Court to grant declaratory, injunctive, and compensatory relief, including record amendment and expungement. Venue is proper because the records were created, maintained, and used within the District of Columbia, and the harm arose from OSC's actions in this District.

Under the Civil Service Reform Act, "personnel actions" are defined by statute to include appointments, promotions, disciplinary or corrective measures, details, transfers, suspensions, removals, performance evaluations, and other decisions taken under statutory authority. 5 U.S.C. § 2302(a)(2)(A). These actions, when taken, are reviewable through the procedures established by Congress, including direct appeal to the Merit Systems Protection Board. 5 U.S.C. §§ 7512, 7701. The records challenged in this action do not fall within that statutory framework. They consist of fabricated performance evaluations, false AWOL designations, and secret leave records that were

not processed as lawful personnel actions under the CSRA. Instead, they were created and maintained outside the formal personnel system and were used to advance retaliatory purposes without being submitted to MSPB review or other statutory safeguards.

Even if these records were to be construed to be personnel actions, the Office of Special Counsel diverted them from the statutory scheme by creating shadow records and invoking 5 U.S.C. § 1212(i). That provision pulls complaints from the MSPB and the CSRA and refers them internally to an Inspector General, but provides no mechanism for judicial review and excludes complainants from investigative findings. By channeling disputed materials into this process, OSC ensured that they were never or no longer subject to MSPB jurisdiction or CSRA oversight, if they ever were.

The result is that Plaintiff does not ask this Court to review the merits of any removal, suspension, or other official personnel action. Rather, Plaintiff challenges the creation, maintenance, and dissemination of records that were deliberately withheld from lawful personnel procedures and then insulated from oversight through § 1212(i). Labeling such records as "personnel" does not convert them into lawful personnel actions under the CSRA. Because the claims here concern recordkeeping violations and not the substance of a personnel action, they do not fall within the line of cases barring collateral Privacy Act challenges to personnel determinations. See Hubbard v. EPA, 809 F.2d 1 (D.C. Cir. 1986) (en banc); Kleiman v. Dep't of Energy, 956 F.2d 335 (D.C. Cir. 1992). Instead, they seek enforcement of the statutory duties imposed by 5 U.S.C. § 552a, including accuracy, lawful maintenance, and proper dissemination of records. Courts in this District have applied those duties even where the records at issue were created outside formal personnel systems. See Bartel v. FAA, 725 F.2d 1403, 1411–12 (D.C. Cir. 1984); Chambers v. Dep't of Interior, 568 F.3d 998, 1006–07 (D.C. Cir. 2009).

**E. Jurisdiction over Constitutional, Structural, and Ultra Vires Claims**

This Court retains jurisdiction under 28 U.S.C. § 1331 to adjudicate Plaintiff's constitutional claims arising under the First and Fifth Amendments as well as the structural nondelegation/separation of powers challenge to OSC's implementation of § 1212(i). Structural constitutional claims are presumptively reviewable and not subject to CSRA preclusion. See Free Enterprise Fund v. PCAOB, 561 U.S. 477, 491–92 (2010); Elgin, 567 U.S. at 12; Webster, 486 U.S. at 603.

Counts 16 and 23 further allege ultra vires agency action and violations of the Federal Records Act, 44 U.S.C. §§ 3101–3107. The D.C. Circuit has long held that courts retain jurisdiction to enjoin agency actions taken in excess of statutory authority and to compel compliance with recordkeeping statutes. See Leedom v. Kyne, 358 U.S. 184 (1958); Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289–90 (D.C. Cir. 1993).

**F. Continuing Injury and Jurisdictional Support**

In addition to the statutory bases for jurisdiction previously stated, Plaintiff alleges that jurisdiction is further supported by the continuing and ongoing nature of the injuries caused by Defendant's unlawful acts and omissions. Limitations under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671–2680), the Privacy Act (5 U.S.C. § 552a(g)(5)), and the APA (5 U.S.C. § 704) do not bar this action because the injuries alleged are not confined to discrete historical events but continue to accrue as Defendant maintains and disseminates false records, threatens criminal referral, and perpetuates a structurally deficient reporting scheme.

Courts recognize that claims accrue when a plaintiff is aware of both the injury and its cause, but accrual is extended where injury is ongoing or new harms arise as a direct and foreseeable consequence of government misconduct. United States v. Kubrick, 444 U.S. 111, 120 (1979); Page

v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984); Mendiola v. United States, 401 F.2d 695, 697

(5th Cir. 1968).

### 1. Continuing Physical Harm

Plaintiff's chronic inflammatory disease, documented in OSC records, is triggered by

stress. OSC officials—including Beckett and Massey—reviewed medical documentation

describing this risk but nevertheless pursued practices that predictably exacerbated

Plaintiff's condition, including AWOL misclassifications, false probation claims, and

repeated threats of criminal referral. These actions foreseeably caused flareups requiring

medical intervention and surgeries as recently as July 2025. Because the condition remains

permanently aggravated, with ongoing pain and scarring, Plaintiff's physical injuries are

continuing, not past and closed.

### 2. Ongoing Professional and Reputational Harm

OSC continues to maintain and disseminate disputed records, including fabricated AWOL

designations, a backdated and unsigned performance appraisal, and allegations of computer

misuse. These records remain accessible within government systems and are repeatedly

used in suitability investigations. On July 1, 2025, Plaintiff was required to disclose these

allegations in a federal background check and will be compelled to do so again in every

future federal investigation. This cycle of disclosure constitutes a recurring harm, extending

accrual and rendering limitations inapplicable. See Barnes v. United States, 776 F.3d 1134,

1138–39 (10th Cir. 2015).

### 3. Continuing Threat of Criminal Referral under 18 U.S.C. § 1030

On November 11, 2022, shortly after Plaintiff reported misconduct to the MSPB, OIG, and

FBI, OSC issued a suspension notice alleging "unauthorized" or "exceeding" access to

government systems in violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030).

These allegations persisted even after contemporaneous supervisory emails confirmed

Plaintiff had notified management of the access and had system privileges restored to

complete assigned duties. In May 2023, OSC senior attorney Erik Snyder explicitly refused

to withdraw these allegations, stating they would remain in place "in case circumstances

change." This refusal keeps the allegations active and exposes Plaintiff to an ongoing risk

of referral and prosecution, which constitutes a present injury and chilling effect. See

Harvey v. United States, 685 F.3d 939, 947 (10th Cir. 2012).

### 4. Continuing Dissemination of False Records

OSC has continued to use and disseminate false records after Plaintiff's resignation,

including in communications with DOJ, EEOC, and MSPB proceedings, and in responses

to discovery as recently as April 2025. These actions constitute independent Privacy Act

violations because each disclosure re-inflicts harm by requiring Plaintiff to defend against

allegations already known to be inaccurate. The government's ongoing reliance on disputed

records, despite formal correction requests, sustains jurisdiction under § 552a(g)(5).

### 5. Continuing Structural Harm Under § 1212(i)

OSC's diversion of complaints into the USDA OIG under 5 U.S.C. § 1212(i) has not been

corrected or limited, leaving Plaintiff and similarly situated employees without any lawful

adjudicatory forum. This structural void remains operative and continues to deny Plaintiff

meaningful process to challenge OSC's retaliatory actions. Courts have held that where a

statutory scheme "prevents any meaningful review," CSRA preclusion does not apply, and

district court jurisdiction persists. Spagnola v. Mathis, 859 F.2d 223, 228–29 (D.C. Cir.

1988); Cobell v. Norton, 240 F.3d 1081, 1095–96 (D.C. Cir. 2001).

These continuing harms—physical injury, reputational and professional damage through background checks, persistent threat of criminal referral, ongoing dissemination of false records, and denial of lawful review under § 1212(i)—each sustain jurisdiction under the FTCA, Privacy Act, and APA. Equitable tolling and the continuing violation doctrine apply. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95–96 (1990). Dismissal on timeliness or jurisdictional grounds is therefore unwarranted.

### G. Venue and Adequate Case or Controversy

Jurisdiction is further proper because Plaintiff seeks prospective relief to correct and prevent ongoing constitutional, statutory, and structural violations. Plaintiff remains subject to continuing injuries, including compelled disclosures of false records during background investigations and the ongoing existence of OSC's "black-hole" referral scheme. These harms demonstrate a live case or controversy and preclude mootness.

### H. Foreclosure of Judicial Review

A denial of jurisdiction in this Court would effectively deprive Plaintiff of any avenue for judicial review, a result inconsistent with established principles favoring access to judicial remedies. The Office of Special Counsel itself invoked and obtained a denial of jurisdiction from the Merit Systems Protection Board, representing that Plaintiff's claims did not fall within the CSRA's statutory framework, but under 1212(i). Having requested and received such a ruling, the government cannot now assert that the same claims are barred by the CSRA or subject to exclusive review in a forum it successfully excluded. To hold otherwise would leave Plaintiff without any avenue for judicial review, in direct contravention of the strong presumption favoring reviewability under the APA and constitutional principles of due process. See Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670–72 (1986); Mach Mining, LLC v. EEOC, 575 U.S. 480, 486 (2015).

**I. Absence of Discretion and, Alternatively, Abuse of Any Arguable Discretion**

Congress did not confer unbounded discretion on the Office of Special Counsel ("OSC") in its handling of employee records, investigatory authority, or statutory oversight. Each of the statutes implicated in this case imposes mandatory duties, thereby foreclosing the government's ability to invoke the discretionary function exception or similar defenses.

First, under the Privacy Act of 1974, 5 U.S.C. § 552a(e)(5) and (e)(10) impose non-discretionary duties requiring agencies to "maintain all records with such accuracy, relevance, timeliness, and completeness as is reasonably necessary" and to "establish appropriate administrative, technical, and physical safeguards" against improper disclosure. These statutory mandates do not allow OSC to decide whether to maintain accurate records or whether to safeguard medical information; they require it. The maintenance of fabricated records, the misclassification of protected leave, and the disclosure of medical information therefore fall outside any lawful discretion.

Second, the Federal Tort Claims Act bars invocation of the discretionary function exception where a federal employee violates a "specific mandatory directive." See Berkovitz v. United States, 486 U.S. 531, 536 (1988). Here, OSC's employees failed to comply with mandatory OPM leave regulations (5 C.F.R. §§ 630.401–630.403), federal recordkeeping statutes (44 U.S.C. §§ 3101, 3106), and internal directives governing record accuracy and retention. These violations remove the challenged conduct from the realm of discretion recognized by the FTCA.

Third, § 1212(i) of the Whistleblower Protection Act obligates OSC to refer allegations of misconduct by its own officials to the Inspector General of the agency involved. This statutory scheme does not empower OSC to withhold referrals, manipulate the scope of referral materials, or retain investigative records beyond lawful authority. Congress's use of mandatory language— "shall refer"—confirms the absence of discretion. By selectively retaining and mismanaging

referral materials, OSC not only exceeded its statutory authority but undermined the very statutory purpose of independent oversight.

Fourth, under the Administrative Procedure Act, courts must set aside agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). OSC's creation of backdated evaluations, fabrication of probationary terms, and mismanagement of medical records were not discretionary choices but actions ultra vires—taken beyond statutory and regulatory authority.

Fifth, the Whistleblower Protection Act and Civil Service Reform Act delineate specific channels of accountability, including protection for disclosures and regulated adverse actions. OSC's circumvention of these statutory schemes by retaliatory record creation and misuse of investigatory authority is not a matter of policy discretion but of statutory compliance. Finally, even if the Court were to accept the government's assertion that OSC possessed some measure of discretion, OSC's conduct as alleged constitutes an abuse of that discretion. Discretion is bounded by the Constitution and statutes: it may not be exercised to fabricate records, disclose sensitive medical information, or manipulate oversight processes. As the Supreme Court held in Dunlop v. Bachowski, 421 U.S. 560, 567 n.7 (1975), "statutory discretion does not mean the absence of judicial review when the agency has plainly departed from statutory mandates." By weaponizing its authority to retaliate against protected disclosures and to create records designed to justify adverse actions, OSC acted in excess of any lawful discretion.

Thus, whether analyzed under the Privacy Act, FTCA, APA, WPA, or constitutional guarantees, OSC's conduct is not insulated by the doctrine of discretion. It either lacked discretion altogether due to statutory mandates or, at minimum, abused whatever limited discretion may have existed by acting contrary to law, regulation, and constitutional duty.

### J. No Disability Claims

Plaintiff does not assert claims under the Rehabilitation Act, 29 U.S.C. § 791 et seq., or the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., in this action. This matter does not presently raise any cause of action sounding in discrimination; instead, it is limited to statutory, constitutional, and tort claims as set forth herein.

### K. No Contractual Challenge

This action does not sound in contract. Plaintiff asserts no claims for breach of contract or enforcement of any settlement agreement. Instead, this action arises solely under the Administrative Procedure Act, 5 U.S.C. §§ 701–706; the Privacy Act, 5 U.S.C. § 552a; the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680; and the Constitution of the United States. Plaintiff seeks judicial review of unlawful agency action, correction of inaccurate and improperly maintained agency records, redress for negligent acts and omissions by federal officials, and declaratory and injunctive relief for violations of constitutional rights. The claims asserted herein are statutory, constitutional, and tort-based in nature, and fall within this Court's federal question jurisdiction.

## V. FACTUAL ALLEGATIONS

### A. Overview of Plaintiff's Employment and Scope of Duties (September 2021 – November 2022)

Between approximately September 2021 and November 2022, Plaintiff served as an Information Technology Specialist at the U.S. Office of Special Counsel ("OSC"). In this role, Plaintiff performed core technical functions including email administration, internal system support, and intranet management. These duties were carried out under OSC's Information Technology Office. Plaintiff's supervisor was Vance Hall. Senior OSC officials involved includes

such as then-Chief Information Officer Smita Patel (from Sept 2021 - June 2022), CIO successor

Ammar Ahmad (July 2022 - Nov 2022), COO Karl Kammann, and Human Resources Chief Leigh

Ann Massey. Additional staff involved included General Counsel Susan Ullman, Assistant General

Counsel Amy Beckett, agency head and Special Counsel Henry Kerner, former COO Bruce Gipe,

Deputy Special Counsel Kim Baxter, and Advisor to the Special Counsel, Nicole Brightbill.

      Plaintiff's claims arise from a continuous sequence of misconduct that began shortly after

his appointment to OSC in September 2021 and extended beyond his resignation in November

2022, with ongoing harm persisting through at least July 1, 2025. Smita Patel's retaliatory

conduct—including isolation, denial of workplace flexibility, improper medical inquiries, and

initiation of performance documentation lacking evidentiary basis—began in fall 2021 and

escalated through her departure on June 3, 2022. In the months that followed, OSC officials

including Ammar Ahmad, Leigh Ann Massey, and Amy Beckett used Patel's documentation as a

foundation for renewed scrutiny and, for reasons never formally stated or justified, initiated a

pattern of coercive monitoring, retaliatory interference, and targeted procedural manipulation.

These actions included the unauthorized sharing of Plaintiff's medical and reasonable

accommodation records in October 2022; the enforcement of a fabricated probationary designation

in September 2022, which Ahmad later admitted was based solely on an informal conversation

with former COO Bruce Gipe and was enacted without any verification or documentation; and the

preparation of a backdated, procedurally invalid performance evaluation finalized on or about

November 10, 2022. After Plaintiff's resignation on November 18, 2022, OSC retained and

disseminated these disputed records in ways that continued to harm Plaintiff in 2023, 2024, and

2025. Internal performance spreadsheets, medical disclosures, and suspension notices were

submitted in parallel EEOC litigation in April 2025 and weighed during Plaintiff's July 1, 2025

federal background investigation. This progression demonstrates a coherent timeline of procedural

failure, retaliatory conduct, and record misuse spanning four years, each phase anchored in identifiable actions and omissions by named OSC staff acting in their official capacities.

Over the course of his service and continuing well after his resignation, Plaintiff was subjected to a sustained and escalating pattern of unlawful conduct by OSC officials. This included prolonged harassment by senior agency staff, repeated unauthorized disclosures of confidential medical and accommodation records, and interference with his workplace access, duties, and communication channels. Plaintiff's employment was monitored and constrained through retaliatory oversight measures unsupported by policy, reason, or documentation, including a probationary designation fabricated without authority or verification. OSC staff created and maintained false records purporting to document misconduct and performance deficiencies, backdated evaluations, and disciplinary notices that lacked factual or procedural foundation. These records were internally circulated and later externally disseminated to administrative tribunals and federal agencies, without correction or annotation, forcing Plaintiff to repeatedly disclose and defend against false information during litigation and background investigations. Plaintiff's objections to these records were ignored, his statutory rights to amendment and review under the Privacy Act were denied, and his reasonable accommodation records was shared with unauthorized personnel. As a result, Plaintiff suffered cumulative and compounding harms including reputational injury, professional disqualification, severe emotional distress, exacerbation of a chronic medical condition requiring surgical intervention, and the continuing threat of adverse suitability determinations based on inaccurate materials. These actions violated multiple provisions of federal law, including the Privacy Act, the Administrative Procedure Act, the Federal Tort Claims Act, and constitutional guarantees of informational privacy and due process.

According to the both the MSPB and OSC, Plaintiff's claims could not be challenged or addressed through the CSRA process solely because of Plaintiff's status as an OSC employee.

Both OSC and the MSPB asserted that Plaintiff was barred from pursuing them except through submission under 5 U.S.C. § 1212(i), which was presented as the only available avenue for redress. Most of the claims in this action were reported through that process. Despite Plaintiff's submissions, the Inspector General and OSC did not complete the process or issue any findings, and no mechanism existed for Plaintiff to obtain a resolution or further review.

### B. Harassment and Falsification of Records by Smita Patel (Sept. 2021 – June 3, 2022)

From the start of his tenure until June 2, 2022, Plaintiff was subject to persistent abusive conduct by Smita Patel. Among other incidents, Patel demanded access to Plaintiff's medical history to scrutinize his use of sick leave, barred him from communicating or working with other employees without her express permission, and required that he remain on-call and physically present in ways that interfered with his eating and restroom habits. Patel also insisted that she be the sole approver of Plaintiff's leave and refused to accommodate scheduling or administrative requests despite having an assistant manager, Daniel Wallerstein, that supervised all other IT staff. These restrictions directly impeded Plaintiff's job function and well-being. Plaintiff documented these abuses and ultimately accused Patel of harassment on June 2, 2022.

When Plaintiff requested that a proposed meeting occur online instead of in-person due to the harassment, Patel responded by seeking Plaintiff's removal and fabricating performance documentation (among other claims) to facilitate that removal after reporting the harassment allegation to Amy Beckett and Susan Ullman. No prior disciplinary action existed. On June 3, 2022, Patel's final day at OSC, she accessed Plaintiff's timekeeping records and retroactively modified prior entries. She entered a false Absent Without Leave (AWOL) designation for the day Plaintiff had been on sick leave (June 3, 2022) properly submitted seven days earlier (May 26, 2022). This designation was never corrected and became part of his permanent federal personnel record. The following day, Patel departed OSC to assume a role at the Department of Justice's

National Security Division, despite having engaged in actions that would violate 32 C.F.R. Part 147, Subpart E's adjudicative guidelines for trustworthiness and eligibility for sensitive positions. This underscores the government's failure to hold OSC officials accountable for conduct that would disqualify other federal employees from access to classified information or sensitive duties.

Although Plaintiff had previously signed a performance plan at the beginning of the appraisal cycle, the evaluation itself was never presented to Plaintiff for review, discussion, or signature. Instead, the evaluation was emailed to Plaintiff privately as part of the removal package without any prior communication or opportunity for rebuttal. No official was assigned to communicate the rating, respond to Plaintiff's inquiries regarding it, or allow Plaintiff to engage with or dispute the evaluation. As a result, Plaintiff was procedurally barred from addressing the evaluation or even fully the removal proposal it was based on. The agency's failure to communicate the rating of record, obtain Plaintiff's signature, or provide a meaningful opportunity to respond rendered the evaluation legally invalid under 5 U.S.C. §§ 4302(b) and 7513(b), 5 C.F.R. §§ 430.208, OSC Directive 202 §§ 8.1–9.2 (Exhibit K), and the Fifth Amendment's guarantee of due process as articulated in Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985).

Between May and June 2022, Smita Patel generated documentation concerning Plaintiff's attendance and performance, including a June 3, 2022 AWOL designation that conflicted with Plaintiff's prior sick leave submission and contemporaneous records confirming Patel's availability to approve the request. She also generated internal notes and records asserting misuse of leave, incompetence, unresponsiveness to directives among other unproven claims. These materials were created in direct reaction to Plaintiff harassment accusation which Patel herself revealed to Beckett and Ullman. Plaintiff submitted written complaints in June 2022 alleging harassment and retaliation by Patel, including improper medical inquiries, isolation from team communications, and excessive control over scheduling and leave; however, no inquiry was conducted and no

findings were issued in response to these complaints. Following Patel's departure, OSC officials—including Ammar Ahmad, Leigh Ann Massey, and Amy Beckett—subsequently reused Patel's disputed documentation in internal spreadsheets and performance-related discussions. The materials were not disclosed to Plaintiff, not verified for accuracy, and not subjected to any internal review process. Plaintiff received no opportunity to examine or respond to the information before it was repurposed. Within the IT Office, Plaintiff was the only subordinate employee formally rated during this period, despite holding the same series and duties as other staff supervised by Hall and Ahmad.

### C. Denial of System Access and Fabricated Performance Deficiencies (May – October 2022)

The United States further acted negligently by permitting OSC staff without supervisory authority or training to exercise administrative powers reserved for managers under OSC directives and OPM regulations. For example, on September 8 and 9, 2022, Ammar Ahmad, a non-supervisory attorney, instructed Plaintiff that he was subject to probationary restrictions and imposed in-person reporting obligations. This was contrary to OSC Directive 202, which authorizes only supervisors to implement probationary requirements. Ahmad's directive was also unsupported by any official personnel action and contradicted OSC's own onboarding timeline.

Similarly, OSC permitted Ahmad and Massey to develop and circulate a fabricated "performance plan" on or after October 19, 2022—after the performance year had already closed. This plan, unsigned and never reviewed with Plaintiff, was used as a basis for a spreadsheet circulated on November 1, 2022 to track alleged deficiencies. The creation and use of this plan violated Directive 202 § 7.3 and 5 U.S.C. § 4302(b)(1), which require advance establishment of performance standards and contemporaneous communication with the employee.

These negligent delegations and procedural failures foreseeably injured Plaintiff by generating false records, creating grounds for improper scrutiny, and compounding stress that aggravated his documented chronic skin disease.

### D. Fabricated Probation and Retaliatory Oversight (July – November 2022)

In July 2022, OSC began referring to Plaintiff as on "probation" despite his status as a permanent competitive service employee who had already completed his one-year probationary period under 5 C.F.R. § 315.801. On September 8, 2022 (Exhibit Q, p.122), Ammar Ahmad took it upon himself and without evidence, directed Plaintiff to report to the office four days a week (secretly citing this fabricated probationary status). No such policy applied to other IT employees, Plaintiff's duties required no in-person presence, and employees who could be needed in-person were allowed to continue working from home. He and Hall would explicitly lie to Plaintiff about this, stating that it was due to a staff shortage (Exhibit Q, p.123), applied to the entire IT team, and required Plaintiff to attend work in person four days a week. However, Plaintiff soon noticed he was the only person working in person. Even IT staff who performed in person tasks (like setting up computers for new employees or audio-visual set up) did not have to attend in person this often.

On September 13, 2022, Plaintiff submitted a sick leave request to Vance Hall, but the agency's system unexpectedly blocked the notice—a situation that had never occurred with Plaintiff's previous leave submissions. Later that day, Hall informed Ammar Ahmad of Plaintiff's absence, but rather than investigate the system error, Ahmad, Kim Baxter, Leigh Ann Massey, Susan Ullman, Nicole Brightbill, and Amy Beckett immediately began preparing to take punitive action.

On September 14, 2022, when Plaintiff returned to work, Hall asked about the absence and Plaintiff explained that the sick leave request had been sent to Hall as required. Hall then located the blocked notice in the agency's IT security system using his credentials as Chief Information

Security Officer, showing he should have known where to look the prior day. At the same time, Beckett advised Ahmad to begin secretly examining, tracking, and reclassifying Plaintiff's ordinary and approved leave usage as improper, despite the lack of any formal violation, investigation, or notification (Exhibit W). Ahmad began scrutinizing, restricting, and questioning Plaintiff's sick leave requests for the remainder of his time at OSC Ahmad asserted in a record of Plaintiff's leave that the 5 or so sick days Plaintiff had taken between August and October were excessive (despite Hall approving them)(Exhibit X). These actions demonstrate that after the failed AWOL designation, OSC officials pivoted to manufacturing a record of leave policy violations as a means of disciplining Plaintiff without basis, underscoring the retaliatory intent and animus directed toward him.

On or around September 29, 2022 (Exhibit Q, p. 122), Ahmad imposed additional restrictions including attendance monitoring, documentation of customer interactions, and required remedial training as a result of the probation. Ahmad repeatedly lied to and misled Plaintiff about the nature of these actions (Exhibit Q, p.126), actively avoiding addressing the matter directly or in writing with the Plaintiff. These restrictions were imposed exclusively on Plaintiff, without any valid performance plan, and without an official personnel action taken. The term "extended period of performance" began appearing in OSC records as a euphemism for the unofficial probation following Plaintiff's questioning of the original designation. Neither term (probation or extended period of performance) appeared in any formal SF-50 personnel record or any document shared between the parties. These records also remain at the agency for conveyance to any other agency. On this same date, Plaintiff saw evidence of criminal activity while performing his duties, reporting this to the Inspector General and the MSPB around November 8, 2022. Ahmad and Beckett would later accuse Plaintiff of a crime in retaliation for this reporting.

In early October, Ahmad imposed duties on Plaintiff for which Plaintiff had no prior training or subject-matter expertise. Despite having expressed vague concerns about Plaintiff's performance to Kim Baxter and Leigh Ann Massey in emails sent before any performance plan was developed or shared, Ahmad assigned Plaintiff to supervise a contractor and assume responsibility for OSC's critical infrastructure and web servers—roles significantly outside Plaintiff's core duties. This culminated in Ahmad forcing Plaintiff to work overtime on or around October 10, 2022. No pre-approval was obtained for this overtime assignment, in direct violation of OSC Directive 206, which mandates supervisory and higher-level authorization for overtime work. Plaintiff reasonably perceived these actions as intended to cause failure or disciplinary exposure, particularly given the broader pattern of hostility and improper conduct by OSC staff.

In mid/late-October 2022, General Counsel Susan Ullman personally contacted Plaintiff to request assistance with retrieving legacy paper records in response to a federal subpoena. Ullman instructed Plaintiff to coordinate with Martha Shethe, the former administrator of the agency's paper-based records system, despite Plaintiff's role being limited to management of the electronic system. The requested task fell outside Plaintiff's normal duties and prior assignments. When Plaintiff contacted Shethe, she declined to assist. Faced with simultaneous deadlines on other critical projects, Plaintiff assigned the subpoena-related task to the contractor he had been directed to supervise. In follow-up discussions with the contractor and Vance Hall, Plaintiff learned that Ullman and Shethe had bypassed both him and the contractor and instead directed a separate employee—a records coordinator whose role included subpoena response and who had historically performed such work—to handle the task. Plaintiff reasonably inferred that he had been assigned a complex and unfamiliar task without support, while the necessary expertise was deliberately withheld. The pattern mirrored earlier conduct by OSC staff, where Plaintiff was given responsibilities outside his training or scope and then denied guidance or collaboration, allowing

senior staff to later frame such circumstances as performance issues. These events contributed to a broader pattern of coercive work conditions,  obstruction, and stress-inducing assignments, which aggravated Plaintiff's documented medical condition known to be triggered by elevated stress.

**E.  Creation of Shadow Performance Records, Leave Records and a Backdated Evaluation (October – November 2022)**

On October 19, 2022, OSC officials Amy Beckett and Leigh Ann Massey unilaterally selected August 18 through October 31, 2022, as the retroactive performance period for evaluating Plaintiff (Exhibit R, p. 128), despite the fact that no performance plan or standards had been issued at the beginning of that period. According to contemporaneous records, Beckett and Massey initially intended the start date to be July 31—the date they mistakenly believed Vance Hall had been formally assigned as Plaintiff's supervisor. In reality, Hall's assignment did not occur until August 18. Plaintiff was never informed of the designated start date and was never issued performance expectations in accordance with OSC Directive 202, which mandates that performance plans be delivered at the outset of the rating period and that employees be notified in advance. No performance plan or designated period was established prior to October 19, 2022. On October 27, 2022—only four days before the backdated evaluation period ended—Plaintiff was informed by Ammar Ahmad and Hall that the period would conclude on October 31 (Exhibit R, p. 129). That same day, Hall and Ahmad began drafting the performance standards and associated plan (Exhibit R, p. 130). Hall later testified under oath during the MSPB hearing that he learned of the evaluation for the first time on October 27—the same day as Plaintiff—and began drafting standards only at Ahmad's instruction. Despite being Plaintiff's supervisor, Hall had no role in selecting the rating period or initiating the appraisal process. Those decisions were made exclusively by Ahmad, Beckett, and Massey—none of whom held supervisory authority over

Plaintiff or such authority was limited. OSC Directive 202, prohibits retroactive evaluations and requires supervisor-issued plans at the beginning of the cycle.

Around November 1, at the behest of Ullman and Beckett, Hall and Ahmad compiled shadow leave records that reclassified approved leave as abusive and improper and gave them to Beckett and Ullman. These records were created outside of the official system of record, Paycheck8.

On November 10, 2022 (Exhibit R, p. 131), Ahmad and Hall finalized the evaluation. Ahmad then emailed OSC HR Chief Massey to ask whether Plaintiff's signature on the newly created performance plan was required and whether the final evaluation needed to be communicated to Plaintiff. Massey responded (Exhibit R, p. 131) that both were necessary and that the plan had not even been completed using an approved OSC form. This admission confirmed that the plan had never been signed by Plaintiff and had never been properly initiated, delivered, or acknowledged during the performance period.

OSC Directive 202 requires that performance evaluations be based on communicated standards and timely performance plans. Federal law imposes the same obligation: 5 U.S.C. § 4302(b)(1) provides that agencies must establish performance appraisal systems that communicate performance expectations to employees at the beginning of the appraisal period, and 5 C.F.R. § 430.207 requires that supervisors certify the accuracy of appraisals and provide an opportunity for performance improvement before final ratings are issued.

In Plaintiff's case, no valid performance plan was issued at the beginning of the relevant period. Instead, on or after October 19, 2022, OSC staff created a performance plan retroactively and then generated a November 2022 evaluation based on that plan. The plan was not shared with Plaintiff, and the evaluation was not preceded by notice or an opportunity to improve, contrary to the requirements described above.

24

The evaluation was prepared and circulated with the involvement of OSC personnel—including Beckett, Ullman, and Brightbill—who were not Plaintiff's official supervisors of record. The evaluation was retained as part of OSC's records despite Plaintiff's dispute of its accuracy. In April 2025, the disputed evaluation was disclosed in litigation, showing that the record continues to exist and is available for use in formal proceedings.

This sequence of events demonstrates that the evaluation was generated outside the process required by statute, regulation, and OSC Directive 202, and its retention and disclosure have resulted in reputational and procedural consequences for Plaintiff.

### F. Medical/Reasonable Accommodation Records Disclosure and Resulting Harm (October 2022)

Around October 7- 14, 2022 (Exhibit F, pp. 42–43), OSC officials—including Ammar Ahmad and Leigh Ann Massey—disseminated Plaintiff's confidential medical reasonable accommodation records to agency personnel without a need to know, including Kim Baxter, Susan Ullman, and Karl Kammann. Massey first disclosed this information to Amy Beckett, as she later testified under oath. She then transmitted the same materials to both Vance Hall and Ammar Ahmad, despite stating in Exhibit F that Hall, as Plaintiff's supervisor, was the only individual authorized to determine accommodations under OSC Directive 52 (Exhibit J). Massey's email also confirmed that she and Beckett determined that Plaintiff's requested accommodation would be denied. After this internal denial, Ahmad solicited input from Baxter and Kammann by forwarding Plaintiff's full request and supporting medical documentation—without redaction or consent—to determine what response should be issued and how to justify the denial.

Initially, Plaintiff's accommodation records were maintained by OSC's Disability Program Coordinator, Leigh Ann Massey, and her assistant, Jessica McDaniels. Under 5 U.S.C. § 552a(b) and OSC Directive 52, such records are to be segregated and disclosed only to individuals with a

direct role in the accommodation process. Despite these requirements, Plaintiff's accommodation documentation was subsequently shared with other OSC officials, including Vance Hall and Ammar Ahmad, who were not responsible for making accommodation determinations.

Plaintiff had requested full-time telework to manage a chronic inflammatory skin condition documented as stress-sensitive. After receiving this information, Hall and Ahmad began imposing additional requirements, including new assignments and heightened monitoring of attendance and performance, though no written decision on the accommodation request was issued. Plaintiff contemporaneously reported that these measures caused significant stress and psychological distress, which coincided with worsening medical symptoms and treatment needs documented in late 2022 and 2023.

In MSPB January 2025 testimony, Ahmad described his coordination with other OSC officials, including his involvement in actions related to accommodation discussions, and the use of a probationary status. This evidence indicates that Plaintiff's medical and accommodation records, once disclosed beyond the restricted circle authorized by OSC-3/4, were used in administrative discussions that affected Plaintiff's supervision and daily working conditions. Plaintiff's medical and reasonable accommodation records were not maintained in the secure system of records designated for such materials. OSC's published Privacy Act System of Records Notice (SORN) for reasonable accommodation records, OSC-3, provides that accommodation files must be maintained in a restricted system accessible only to officials directly involved in the interactive process and protected with safeguards against unauthorized disclosure. See 85 Fed. Reg. 44854 (Exhibit S).

In practice, however, Plaintiff's records—including medical diagnoses, functional limitations, and reasonable accommodation requests—were circulated by email among OSC personnel who had no role in the accommodation process. These email transmissions included

26

legal personnel and management officials involved in performance oversight and disciplinary planning, rather than accommodation determinations. The records were not stored in a segregated or secured system as required by OSC-3, and no safeguards were applied to limit distribution.

As a result of this method of handling, sensitive medical information appeared in routine administrative discussions concerning attendance and performance. Plaintiff was subsequently questioned and scrutinized on the basis of these communications, and the same materials were later referenced in disciplinary documentation. After Plaintiff's resignation, OSC continued to rely on these records in defending agency actions and transmitted them internally as recently as April 2025.

Medical professionals treating Plaintiff documented that stress was a known trigger of his chronic condition, and the contemporaneous record shows that OSC staff—including Massey and Beckett—reviewed this medical documentation. Despite that knowledge, the manner in which the information was handled and circulated contributed to increased stress for Plaintiff, subsequent flare-ups of his condition, and the need for repeated medical interventions.

### G.  External Misconduct Disclosures and Retaliatory Suspension (November 2022)

On or about November 8, 2022, Plaintiff submitted written complaints detailing alleged OSC misconduct to the U.S. Merit Systems Protection Board, the Office of the Inspector General, and the Federal Bureau of Investigation. Later, Plaintiff met with FBI agents in person in December 2022 to describe his claims in detail. These disclosures alleged falsified evaluations, improper dissemination of confidential medical data, threats, intimidation, and high-level coordinated retaliation against Plaintiff and other OSC staff members that not only included Plaintiff but other OSC staff. The complaint specifically accused OSC's legal staff of participating and/or allowing these activities and specifically named Susan Ullman, Kim Baxter, and Amy

Beckett. Plaintiff made these disclosures in his personal capacity, outside any assigned duty or job responsibility, using non-agency communication channels.

Three days later, on November 11, 2022, OSC issued a Notice of Investigative Leave (though Ahmad titled the document "Notice of Suspension") alleging Plaintiff had engaged in "unauthorized access" and "exceeded access" of OSC systems. The Notice claimed Plaintiff had accessed OSC employee emails. Internal agency records confirm that Plaintiff's access was allowed by his immediate manager (Exhibit V), already granted as a part of his email administration duties, and allowed by the agency in any effort to report evidence of waste, fraud, and abuse. Also, *Van Buren v. United States*, 141 S. Ct. 1648 (2021), invalidated criminalization of workplace-authorized access actions, but the OSC proceeded with these claims nonetheless. During MSPB testimony in January 2025, Ammar Ahmad stated that Amy Beckett directed the creation of the November 11, 2022 suspension notice and the associated investigative records. These records were generated shortly after Plaintiff submitted protected disclosures to the MSPB, USDA OIG, and FBI. Plaintiff was not afforded an opportunity to review or respond to the allegations before the suspension notice was issued.

Following Plaintiff's resignation on November 18, 2022, Beckett continued to advance allegations under 18 U.S.C. § 1030 in formal MSPB filings. Her descriptions of the supposed misconduct escalated over time. Early filings characterized the issue as "unauthorized access," later references described "exceeded access," and subsequent submissions alleged that Plaintiff had "penetrated" OSC systems. By the end of the MSPB proceedings, Beckett asserted that Plaintiff had "hacked" OSC systems outright. At no stage were contemporaneous emails, system logs, forensic reports, or investigative findings submitted to substantiate these allegations. In September 2022, Plaintiff accessed OSC systems in the course of his assigned duties as an email and system administrator. Following Plaintiff's resignation in November 2022, email correspondence provided to Amy

Beckett reflected that both Vance Hall and Ammar Ahmad stated they had no knowledge of this access and had not given prior approval. These statements were later cited in support of the November 11, 2022 suspension notice, which alleged unauthorized system access. OSC attorney In sworn MSPB testimony in January 2025, however, the same officials described the events differently. Hall testified that Plaintiff had, in fact, informed him in September 2022 about the access and that he relayed this information to Ahmad. According to Hall's testimony, Ahmad removed Plaintiff's access but subsequently restored it when the removal disrupted Plaintiff's ability to perform his assigned duties.

The record therefore shows that, while OSC staff later alleged that Plaintiff had "hacked" or "penetrated" highly sensitive systems, those same staff had repeatedly restored his access and required him to continue administering the very systems they claimed he had unlawfully entered. The inconsistency between alleging criminal hacking and simultaneously authorizing access for routine administrative duties underscores the lack of any consistent or substantiated basis for the suspension and related allegations. Similar claims appeared in April 2025 before the EEOC, when OSC legal counsel Hnin Khaing made statements attributing system intrusions to Plaintiff without citing supporting technical or investigative evidence.

### H.  Formal USDA OIG Complaints Under 5 U.S.C. § 1212(i) (June – November 2022)

Plaintiff submitted formal complaints pursuant to 5 U.S.C. § 1212(i) to the U.S. Department of Agriculture Office of Inspector General (USDA OIG) in both June and November 2022 (Exhibit N). These complaints detailed systemic misconduct at the U.S. Office of Special Counsel (OSC), including retaliatory scrutiny, falsification of official records, improper denial of workplace accommodations, and unauthorized dissemination of Plaintiff's confidential medical information. Both complaints were supported by detailed written submissions and documentary evidence,

including performance-related communications and records showing unauthorized disclosures and

improper system access restrictions. After these complaints were submitted, the Merit Systems

Protection Board (MSPB) declined jurisdiction (Exhibit C) over Plaintiff's claims specifically as a

result of the OSC representation of 1212(i) as the exclusive channel for raising internal misconduct

by OSC officials (Exhibits A and B). Following the June submission, Plaintiff received no

acknowledgment or communication from the USDA OIG for several months. After filing the

additional November complaint and submitting evidence, Plaintiff received a response from the

OIG in November 2022, confirming receipt of his complaints. On June 2, 2023, the OIG informed

Plaintiff via formal communication that the investigation remained open and ongoing but that no

projected timeline would be provided (Exhibit N. p. 91).

  In its MSPB filings, OSC stated that "Appellant's Initial Appeal did not attach a copy of a

closure letter from the designated Office of Inspector General informing him that he can pursue his

remedies at the MSPB" (Exhibit A). This statement indicates that OSC requires a written

notification from the USDA Office of Inspector General (OIG) before permitting current or former

OSC employees to seek review by the Merit Systems Protection Board.

  However, in June 2023, the USDA OIG informed Plaintiff in writing that it does not notify

complainants and that any findings or determinations under 5 U.S.C. § 1212(i) are transmitted

exclusively to the Office of Special Counsel—not to the individual who submitted the complaint.

The OIG further confirmed that it does not provide status updates, projected timelines, or outcome

notifications to complainants, and that no mechanism exists for individuals to request or obtain

such findings (Exhibit N. pp. 91-92). OSC has not published any policy informing employees of

this process, and no provision in OSC Directive 57—which governs internal disclosures and

complaints by OSC employees—describes any right to notice, acknowledgment, or eligibility to

pursue further remedies based on an OIG determination. Exhibits A and B reflect OSC's position

that access to administrative review depends on obtaining a document that complainants cannot request, receive, or compel. Neither USDA OIG nor OSC has published any legal authority or regulatory framework authorizing the OIG to determine whether an OSC employee may access the Merit Systems Protection Board. No statute or policy grants OSC the power to delegate that function to another agency, and no written procedure exists describing how employees may satisfy this requirement or challenge a referral that results in silence.

Despite this, Plaintiff was later contacted by USDA OIG personnel in December 2023 regarding the content and context of the misconduct allegations. Plaintiff provided documentary evidence and context for the complaints and reaffirmed the allegations of retaliation and record falsification. However, following this, Plaintiff received no further communication initiated by the USDA OIG. The last substantive update from the OIG occurred on June 2, 2023 (Exhibit N. p. 92). Plaintiff contacted the IG regarding the matter and OIG personnel informed Plaintiff in writing that the investigation into his complaints remained open but that there would be no further updates, timelines, or status notifications provided to him. The OIG explicitly stated that any final report or findings would be sent exclusively to the U.S. Office of Special Counsel—not to Plaintiff as the complainant. The OIG further advised Plaintiff that it was up to the OSC to decide whether or not to take action as a result of the report. This June 2023 notification, coupled with the absence of any subsequent communication after, confirmed that Plaintiff was categorically denied access to any resolution, findings, or corrective relief resulting from his submissions. As of the present date, neither OSC nor the USDA OIG has provided Plaintiff with any formal acknowledgment of the the completion of an investigation, wrongdoing, issued findings, implemented corrective measures, or in response to the complaints. The USDA OIG's June 2023 statement that any results would be withheld from Plaintiff constitutes an official notice that no further participation or recourse would be made available to him, rendering the investigative process effectively closed to the complainant

despite remaining formally pending. The agency's failure to establish or follow any process for resolving § 1212(i) complaints, combined with the OIG's stated refusal to provide the complainant with any status update or resolution, deprived Plaintiff of any meaningful redress mechanism. This systemic inaction and non-responsiveness constitute constructive final agency action under the standards set forth by the Administrative Procedure Act. See Norton v. S. Utah Wilderness All., 542 U.S. 55, 61–62 (2004) (final agency action may include agency inaction where the agency has failed to take a discrete action that it is required to take); see also Cobell v. Norton, 240 F.3d 1081, 1095–96 (D.C. Cir. 2001) (judicial review appropriate where agency delay amounts to effective denial of statutory right or remedy). This view is supported by a 2018 report by the U.S. Government Accountability Office (Exhibit U: GAO-18-400) which concluded that the U.S. Office of Special Counsel lacks an effective and transparent process for addressing internal misconduct by its own employees. The GAO found that OSC's reliance on external referral mechanisms, such as 5 U.S.C. § 1212(i), offers no clear procedures for enforcement, no guarantees of remedial action, and no assurance that complainants will be informed of investigative outcomes. The report specifically criticized OSC's failure to provide internal accountability mechanisms and noted that employees reporting misconduct often received no feedback or resolution, creating a system with limited oversight and no meaningful avenue for redress. This was after the 1212i came into effect as it passed through the legislature in 2017.

Thus, while Plaintiff has complied with all statutory and procedural requirements for internal reporting, the absence of any accessible remedy or outcome under the current § 1212(i) framework (for either official complaint) rendered the process ineffective, violated Plaintiff's due process rights, and caused ongoing harm.

## I.   Equitable Tolling and Continuing Violation of Statutory and Constitutional Rights

OSC's misconduct and structural failures resulted in injuries that were not fully

knowable—or legally actionable—until long after statutory deadlines began to run. Plaintiff filed

an administrative claim under the Federal Tort Claims Act (FTCA), which OSC formally denied

on October 23, 2024, triggering the six-month period under 28 U.S.C. § 2401(b). However, at that

time, Plaintiff's complaints and attempts to secure redress were still being processed exclusively

through OSC's internal referral mechanism under 5 U.S.C. § 1212(i), which OSC had designated

as the sole channel for complaints of internal misconduct, retaliatory scrutiny, and record

falsification. That process diverted Plaintiff's claims to the USDA Office of Inspector General

(OIG) and left Plaintiff without any adjudication, findings, or correction of ongoing harms.

On June 2, 2023, the USDA OIG informed Plaintiff that its investigation remained pending

and that no findings or reports would be shared with Plaintiff. This confirmed that the § 1212(i)

process was effectively a "black hole" and that Plaintiff would receive no remedy or procedural

closure. OSC's deliberate maintenance of this opaque process, combined with its instruction to use

§ 1212(i) instead of any other statutory or judicial avenue, reasonably delayed Plaintiff's ability to

seek judicial redress and supports equitable tolling. See *Irwin v. Dep't of Veterans Affairs*,

498 U.S. 89, 96 (1990) (tolling appropriate where a diligent plaintiff is delayed by extraordinary

circumstances); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998)

(equitable tolling warranted where agency action contributes to delay).

In addition, Plaintiff explicitly notified this Court in March 2024 of the intent to amend the

complaint to include FTCA claims, and the Court issued a scheduling order requiring filing by

April 28, 2024. Plaintiff complied with that order. Defendant now argues that FTCA claims are

time-barred by a four-day gap beyond the six-month mark, but Plaintiff's timely notice, reliance on

the Court's order, and the intervening delays caused by OSC's § 1212(i) scheme weigh strongly in favor of equitable tolling.

OSC's misconduct continues. The agency maintains false records—including fabricated AWOL charges, probationary status, and misconduct allegations—and has used these records internally and externally to perpetuate reputational harm. OSC also continues to hold over Plaintiff the threat of criminal referral under 18 U.S.C. § 1030 (Exhibit L), despite having no supporting referral to the Attorney General under 5 U.S.C. § 1214(e), and despite having knowledge of exculpatory evidence (Exhibit V) including Hall explicit approval, notice that OSC systems are authorized for the "disclosure of information a employee who reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety"; additionally, Patel sent Plaintiff a list of assigned tasks that required email administrator access.

These threats chill Plaintiff's First Amendment rights, deter further protected disclosures, and intensify the reputational, emotional, and physical harm resulting from the hostile and coercive workplace conduct.

Importantly, OSC officials—including Massey, Ahmad, Beckett, Baxter, and Kammann—reviewed Plaintiff's reasonable accommodation request in 2022, which included medical documentation explaining that his condition was aggravated by stress. Massey later testified that she and Beckett specifically researched the disease and were fully aware that stress could trigger painful flare-ups. Despite this knowledge, OSC escalated scrutiny, denied medical accommodations, and enabled retaliatory conditions that exacerbated Plaintiff's medical condition. These actions caused prolonged physical pain and inflammation, which remain ongoing. The continuing injury to Plaintiff's health, rights, and career prospects supports tolling of all claims.

Throughout the events described, OSC officials acted in ways that violated clearly established statutory and regulatory duties. When Plaintiff's accommodation request and supporting medical documentation were circulated among unauthorized staff—including Beckett, Ullman, and Baxter—OSC failed to comply with the Privacy Act's prohibition on unauthorized disclosures under 5 U.S.C. § 552a(b), its safeguard requirements under § 552a(e)(10), and OSC's own Directive 52 and System of Records Notice OSC-3 and OSC-4 (85 Fed. Reg. 44854). When OSC maintained unverified, disputed records—including a backdated evaluation and false AWOL designations—after Plaintiff's resignation, it failed to meet the accuracy and relevance standards set by § 552a(e)(5)–(6) and unlawfully reused these materials without ensuring their integrity. Finally, when OSC diverted Plaintiff's internal misconduct complaints into the USDA Inspector General process under 5 U.S.C. § 1212(i), and later relied on that diversion to argue a lack of jurisdiction or recourse, it failed to perform any independent review or disclose the outcome. That omission constituted final agency inaction under the APA, 5 U.S.C. § 706(1), and insulated OSC's structural failures from judicial oversight in violation of § 706(2)(C). Each of these acts and omissions breached specific, enforceable legal duties.

Finally, Plaintiff's harm is cumulative and self-perpetuating. On July 1, 2025, Plaintiff was compelled to disclose false and damaging information during a federal background investigation under penalty of perjury. This included unresolved misconduct allegations and erroneous employment records. OSC's refusal to retract or correct the records ensures that these harms will recur with each future federal employment or clearance review. These facts invoke both the equitable tolling and continuing violation doctrines across the FTCA, Privacy Act, APA, and constitutional claims.

### J.   Post-Resignation Retaliation and Background Investigation (December 2022 – Present)

Following Plaintiff's coerced resignation from the U.S. Office of Special Counsel in November 2022, OSC officials continued to maintain and disseminate false and stigmatizing records concerning Plaintiff's conduct, including ongoing and increasingly severe allegations of unauthorized access to government systems. These allegations escalated over time, despite the lack of any new factual basis or supporting evidence. Internal OSC communications obtained during post-resignation proceedings revealed that agency staff—specifically Amy Beckett, Susan Ullman, and Ammar Ahmad—continued to characterize Plaintiff's prior approved system access as unauthorized, even after conceding during MSPB testimony and document production that Plaintiff had performed those actions pursuant to prior written approval and in furtherance of assigned IT responsibilities.

In May 2023, Plaintiff formally requested that OSC rescind these harmful records/claims. In response, OSC agency attorney Erik Snyder refused to withdraw or correct the accusations (Exhibit L). Snyder stated that the agency intended to preserve its ability to revive these allegations "in case circumstances change," despite having no new factual basis and having been made aware of contradictory evidence—including contemporaneous approval emails, system audit logs, and sworn admissions by OSC officials. The agency's refusal to correct or retract these known falsehoods established that the allegations were no longer maintained for legitimate operational purposes, but instead as a form of reputational control and retaliatory leverage.

These uncorrected allegations have since been publicized in multiple forums. OSC circulated the suspension notice and related accusations internally and in formal filings before the Merit Systems Protection Board (MSPB), where Plaintiff was subjected to adversarial proceedings that relied in part on these disputed claims. The records containing the suspension rationale and alleged

misconduct remain accessible to OSC staff across departments, with no limiting controls or disclaimers, thereby increasing the risk of further dissemination to other federal entities. OSC has not implemented any system or process to prevent the future transfer of these materials to federal agencies reviewing Plaintiff's employment or security credentials.

In addition to the May 2023 correction request, Plaintiff previously sought correction of a June 2022 AWOL designation in September 2022 and was told to the matter had been waived. At every point, OSC refused to acknowledge errors, with agency counsel and officials affirmatively stating that the disputed AWOL, probationary, and misconduct records contained 'no errors' and would remain unaltered. OSC was aware that these records, permanently associated with Plaintiff's federal employment history, would be subject to disclosure in every future background investigation and suitability review, including the July 1, 2025 investigation. OSC's categorical refusal to correct or expunge the records has forced Plaintiff to repeatedly self-disclose false allegations in litigation and administrative forums, undermining his professional credibility and ability to secure employment.

In January 2025, Ammar Ahmad, Vance Hall, and Leigh Ann Massey stated under oath in another forum that they were not trained on any OSC-specific management policies including the management of medical and reasonable accommodation records, anti-harassment policy, OSC's 1212i preclusion policy, and many others.

In April 2025, OSC defense attorney Hnin Khaing submitted a set of internal records in a separate proceeding involving Plaintiff. The submission was intended to cure a procedural defect in the agency's prior discovery response. These records included internal communications and tracking documents created by OSC staff, including Nicole Brightbill, Ammar Ahmad, Leigh Ann Massey, and Vance Hall, concerning Plaintiff's sick leave usage between August and November 2022. This started immediately after the Ahmad's designation of Plaintiff as being on "probation"

on September 8, 2022. One record confirmed that Plaintiff notified OSC in advance of his September 13, 2022 sick leave. Despite this, Plaintiff was designated AWOL without any documented inquiry or factual basis. After the AWOL designation collapsed, the records show that OSC officials—specifically General Counsel Susan Ullman and Assistant General Counsel Amy Beckett—directed a shift in strategy. Ullman instructed Massey to forward leave records communications to OSC leadership, and Beckett directed Ahmad to recast approved sick leave as improper. Ahmad, with Hall's participation, created spreadsheet records tracking all of Plaintiff's leave from August through November 2022 outside of the official timekeeping system (Paycheck8) so that it could be hidden. These spreadsheets mischaracterized approved and medically justified absences as improper, despite their prior approval and compliance with OSC policy. These records were never disclosed to Plaintiff during his employment and were absent from the contemporaneous administrative record. They provide evidence of coordinated efforts by OSC's legal and managerial staff to reframe legitimate leave usage as misconduct for purposes of supporting adverse action, following the enactment of the probation.

Between November 2022 and this filing date, the OSC has shared these disputed records with the U.S. Attorney's Office for DC, the DOJ, EEOC, MSPB, and potentially others. On July 1, 2025, Plaintiff was interviewed as part of a federal background investigation associated with a sensitive employment opportunity. During this interview, Plaintiff was required under penalty of perjury to disclose all pending litigation, prior federal employment disputes, and any records or findings that could bear on his professional suitability. Follow-ups to provide further information are ongoing (Exhibit O) In accordance with federal suitability protocols, Plaintiff disclosed the existence of this litigation against OSC and, for the first time, was compelled to recount OSC's allegations of unauthorized access and misconduct to a third-party federal agency. Plaintiff provided supporting documentation, including OSC emails demonstrating approval of his system

access (Exhibit V). Despite this, the presence of such allegations—regardless of their validity—required internal investigation and would be weighed in any suitability determination.

OSC's continued maintenance of false records has had severe and ongoing consequences for Plaintiff. The agency's records include a falsified AWOL entry from June 3, 2022, which remains uncorrected. The falsified suspension notice from November 11, 2022, continues to appear in OSC's administrative files, falsely asserting that Plaintiff committed unauthorized acts when access had been formally approved by his supervisor (in addition to having previously been granted to perform job duties). These documents have severely damaged Plaintiff's professional reputation, limiting his ability to secure federal or federal-adjacent employment. They have also introduced legal uncertainty and professional stigma into ongoing employment considerations, which now require Plaintiff to explain and rebut false government records as part of background and suitability evaluations for access to federal resources.

The psychological and physical toll of these continuing agency actions has also been significant. The stress of persistent reputational attacks, forced disclosures, and medical-related insinuations—such as improper dissemination of Plaintiff's disability documentation—has directly exacerbated Plaintiff's chronic inflammatory condition. As a result, Plaintiff has experienced worsening symptoms, increased medical interventions, and long-term scarring. The cumulative effect of OSC's false accusations, refusal to correct the record, and continued dissemination of inaccurate materials has resulted in ongoing emotional distress, financial loss, medical deterioration linked to stress-induced disease recurrence, and substantial harm to Plaintiff's ability to maintain and pursue a professional career within or adjacent to the federal government.

### K. Violations of Federal Statutes, Regulatory Policy, and Institutional Integrity Requirements

OSC officials and staff—including Amy Beckett, Susan Ullman, Kim Baxter, Nicole Brightbill, Ammar Ahmad, and others acting as agents of the United States—engaged in conduct that violated multiple statutory, regulatory, and ethical mandates governing the lawful operation of federal agencies. These acts went beyond retaliation and instead reflected systemic disregard for legal safeguards designed to ensure the impartiality, transparency, and integrity of OSC's internal functions. Although Plaintiff asserts no private right of action under the statutes cited below, they establish the legal context in which OSC's conduct occurred and support Plaintiff's broader claims under the APA, FTCA, Privacy Act, and Constitution. All factual allegations are incorporated by reference.

Between June and November 2022, OSC staff created, retained, and disseminated materially false records—including a backdated performance plan, fabricated AWOL designations, and false system access allegations—that lacked factual basis and violated agency policy. These records were not only used to justify improper internal actions but were also transmitted outside the agency to harm Plaintiff's career and legal standing. OSC officials continued to maintain and rely on these records after Plaintiff's resignation on November 18, 2022, including during post-resignation attempts to accuse Plaintiff of criminal conduct under 18 U.S.C. § 1030.

Plaintiff's supervisor, Vance Hall, rarely exercised independent decision-making. Instead, his manager, Ammar Ahmad, acted as the operative agent of OSC executives Beckett, Ullman, Baxter, and Brightbill, despite their lack of supervisory authority over Plaintiff. These individuals directed and controlled key decisions—including the November 11, 2022 suspension—using Ahmad to conceal the true source of authority. Ahmad also coordinated with Leigh Ann Massey, who similarly lacked supervisory authority but participated in critical decisions that adversely affected

Plaintiff's employment status and working conditions. These internal acts were unauthorized and undertaken by staff outside the lawful chain of command.

The false and harmful information was disseminated internally within OSC to justify escalating measures and to generate a paper trail to obscure misconduct. It was also disseminated externally to the DOJ, EEOC, MSPB, and federal background investigators. As a result, Plaintiff was repeatedly compelled to explain and disclose the content of these records during sworn proceedings, despite their demonstrable inaccuracy and the absence of procedural safeguards required by law. These acts caused continuing harm to Plaintiff's employment prospects, physical health, and eligibility for future public service, and violated Plaintiff's legal rights under federal statutes and regulations.

These actions also violated a range of controlling policies, internal agency directives, and binding regulatory obligations, including:

- OSC Directive 52 (Reasonable Accommodation) – which prohibits disclosure and unauthorized use of medical documentation.

- OSC Directive 202 (Performance Management) – which requires that performance plans be provided at the start of the rating period, prohibits retroactive appraisals, and outlines lawful supervisory authority.

- OSC Directive 206 (Overtime) – which outlines procedures for approving overtime.

- OSC Directive 58 (Anti-Harassment Policy) – which prohibits harassment based on any non-merit factor as well as the creation of a hostile work environment

- OSC Directive 57 (Procedures For Processing Complaints And Disclosures By Office Of Special Counsel Employees) – Forced employees into the 1212i process with no recourse

- 5 C.F.R. Part 293 and 5 C.F.R. § 293.303 – governing system of records handling and restricted access to confidential or evaluative records.

- 5 C.F.R. § 2635.101 – ethical conduct standards, including the duty to act impartially, avoid misuse of position, and maintain public trust.

- 31 U.S.C. § 3512(b) – requiring federal agencies to maintain internal controls sufficient to prevent abuse, fraud, and waste of public resources.

These statutory and regulatory breaches are not limited to improper record maintenance. They include coercive conduct, abuse of process, denial of procedural due process, misuse of supervisory authority, and  or reckless disregard for established federal policies and safeguards. OSC's actions also constitute violations of Plaintiff's protected constitutional interests in due process, privacy, and petitioning the government, and fall squarely within the actionable scope of the FTCA and APA. By engaging in conduct that caused foreseeable injury, failed to comply with binding policy, and denied Plaintiff the legal protections owed to federal employees, OSC violated its statutory duties under 5 U.S.C. §§ 701–706 and 28 U.S.C. §§ 1346(b), 2671–2680.

These actions violated multiple statutory and ethical provisions, including:

- 18 U.S.C. § 1001 – Submission and use of false statements within the jurisdiction of the federal government.

- 18 U.S.C. § 1002 – Possession and use of false documents to defraud the United States.

- 18 U.S.C. § 1030 – Fabricated post-resignation accusations of unauthorized access to federal systems.

- 18 U.S.C. § 1038 – False information suggesting fictitious criminal threats or conduct.

- 18 U.S.C. § 1519 – Alteration, falsification, or concealment of records in contemplation of investigations.

- 18 U.S.C. § 241 – Conspiracy to deprive constitutional and statutory rights.

- 18 U.S.C. § 654 – Unauthorized use of government property and systems.

- 18 U.S.C. § 1343 – Fraud through wire or electronic communication.

- 5 C.F.R. § 2635.101(b)(11) – Obligation to act impartially and protect public confidence in government.

- 31 U.S.C. § 3512(b) – Requirement to maintain effective systems of internal control to detect waste, fraud, and abuse.

- 5 U.S.C. § 1214(a) – Obligation of OSC to investigate prohibited personnel practices without bias or delay.

- 5 U.S.C. § 1214(e) – Requirement to refer criminal violations to the Attorney General when warranted.

OSC's misconduct occurred in the shadow of pending protected disclosures. Plaintiff's June and November 2022 submissions under 5 U.S.C. § 1212(i) named Beckett and Ullman for misconduct and for allowing retaliation and misuse of records. Despite being directly implicated, neither Beckett nor Ullman recused themselves and continued to direct unlawful action through subordinates. After Plaintiff's resignation, OSC continued to pursue unsupported criminal allegations using falsified records, further compounding the legal violations and institutional harm. Although these statutes do not create a private cause of action, they confirm the broader legal and structural violations supporting Plaintiff's APA (Counts 4 and 18), FTCA (Count 2), Privacy Act (Count 1), and constitutional claims (Count 3). The agency's ongoing maintenance and use of these records, disregard for supervisory boundaries, and failure to enforce lawful internal controls represent systemic breaches of law and ethics.

Plaintiff seeks declaratory and injunctive relief recognizing that OSC's internal practices violated statutory requirements under 5 U.S.C. §§ 1214 and 1212(i), ethical standards under 5 C.F.R. § 2635.101, internal control requirements under 31 U.S.C. § 3512, and criminal provisions governing record falsification and obstruction. Plaintiff further requests that these violations be

referred for institutional correction, oversight review, and potential enforcement action by
Congress, the Office of Inspector General, and the Department of Justice.

### L.  Plaintiff's Medical Condition

In 2015/2016, Plaintiff was diagnosed with a chronic, incurable skin disease known to be
triggered and exacerbated by psychological stress. From 2018 until September 2022, Plaintiff's
condition remained in remission. That changed when OSC officials subjected Plaintiff to sustained
retaliation, harassment, and continued threats, including false probationary designation, improper
AWOL markings despite valid medical documentation, denial of accommodation, concealed
surveillance, and threats of criminal prosecution under 18 U.S.C. §§ 1030. These threats were not
only unsupported but deeply destabilizing. In September 2022, Plaintiff began living in daily fear
for his job, safety, liberty, and future—while attempting to comply with unwritten and shifting
expectations imposed without due process or transparency. This psychological strain initiated the
reactivation of Plaintiff's condition, which had been dormant for four years.

By mid-September 2022, Plaintiff began to feel a growing lesion on his right shoulder. The
skin began to tear apart beneath the surface as inflamed tissue expanded, triggering visible
swelling, sensitivity, and pain. Over the following months, the lesion continued to grow—slowly
and painfully tearing skin layers, intensifying discomfort and itching. By June /July 2023, the
lesion had reached a size of approximately 3 inches in length. The pain was constant, the itching
relentless, and the pressure in the affected tissue grew worse each week, interfering with sleep and
daily functioning. During the same period, Plaintiff suffered major depressive symptoms—

including hopelessness, insomnia, depression, and dramatic weight loss—losing approximately 40 pounds between September 2022 and early 2023. He remains in therapy to this day.

Ultimately, the lesion required multiple steroid injections and surgical intervention. However, due to Plaintiff's coerced resignation from OSC in November 2022 and the lack of available leave in his new position, he could not undergo full surgical excision in a hospital. Instead, the procedure was performed under local anesthesia in a physician's office. Plaintiff remained awake, traumatized as he watched the surgeon slice into the diseased tissue, smelled the burning of his own flesh as cauterization began, and felt his skin sutured while he remained in pain. He continues to experience pain, residual itching, and long-term psychological trauma and anxiety from the event. The wound has not fully healed and a permanent scar remains. It was treated again as recently as June 2025.

Plaintiff lives in ongoing fear and anxiety of recurrence. That fear began in September 2022 and persists today. Plaintiff's illness is a progressive illness, and Plaintiff has been told by treating physicians that only three options are available if the disease worsens: (1) repeated surgical excision involving removal of tissue layers, permanent scarring, and potential skin grafts, (2) radiation treatments at the lesion site, or (3) indefinite use of immunosuppressants. Plaintiff now lives with the continuing trauma of knowing that the actions by his former employer not only altered his professional future (and will likely continue to do so) and reactivated a debilitating and disfiguring disease.

45

**M. Integrated Factual Account of Recordkeeping, Supervisory, Oversight, and**
**Procedural Failures**

From June through November 2022, OSC's internal controls did not prevent unauthorized record-creation and misuse that materially affected Plaintiff's employment status, reputation, and health. The sequence is straightforward.

In June 2022, while Plaintiff was on medically documented sick leave, timekeeping and status entries reflected "AWOL," notwithstanding contemporaneous approvals. The same period saw complaints to management concerning internal conduct and documentation practices. After the Chief Information Officer role transitioned in July 2022, Plaintiff's day-to-day oversight shifted in practice to personnel who were not his assigned supervisor of record.

On September 9, 2022, Plaintiff was informed he was on "probation" and was directed to report in person on a set schedule. No personnel action effectuating a probationary period existed, and the designation was inconsistent with Plaintiff's service timeline. On September 13, 2022, an "AWOL" classification appeared again while medical documentation and prior approvals remained in place. During this same period, Plaintiff submitted sensitive medical/RA documentation describing a stress-reactive condition; those materials were routed by email to multiple management and legal officials who were not identified RA decision-makers, without segregation or access restrictions specific to RA records.

Between August and November 2022, OSC officials compiled off-system leave tracking spreadsheets that re-characterized approved sick leave as absenteeism and were shared with legal staff. These spreadsheets did not originate from the official time-and-attendance system, were not disclosed to Plaintiff during employment, and were later produced in litigation.

On or about October 19, 2022, a performance plan was created after the performance year had closed. The plan was not provided to Plaintiff, and it later supported a November 2022

evaluation. The documentary trail does not reflect prospective communication of standards, supervisor certification, or a performance-improvement opportunity consistent with OPM rules.

On November 11, 2022, OSC issued a suspension notice asserting "unauthorized" or "exceeding" access to OSC systems. The terms mirror the Computer Fraud and Abuse Act's statutory language. The notice relied on statements that management had not approved the September 2022 access. After Plaintiff's resignation, those statements were repeated and then escalated in administrative filings (described as "penetration" and "hacking"), even as no forensic report or contemporaneous technical finding was produced. In January 2025 sworn testimony, however, Plaintiff's supervisor acknowledged prior notice in September 2022 and explained that access was removed and then restored so Plaintiff could complete assigned system-administration duties. Meanwhile, OSC's own login banner stated that "authorized use" includes protected EEO activity and disclosures of waste, fraud, and abuse.

Post-resignation, OSC did not correct or withdraw the criminal-style allegations. In May 2023, senior counsel stated the agency would not withdraw them "in case circumstances change." Disputed records—including the off-system leave spreadsheets and the November 2022 access allegations—continued to appear in administrative proceedings and, by July 1, 2025, required Plaintiff to disclose and explain them during a federal background investigation. The same records will predictably recur in future suitability reviews so long as they remain uncorrected.

Across these events, the common features are: record creation outside authorized systems or timelines; use of records authored by personnel lacking supervisory authority over Plaintiff; circulation of medical/RA information beyond the RA decision-making channel; reliance on criminal-style access characterizations that conflicted with undisputed authorization and restoration; and the absence of managerial remediation after notice. The resulting harms include reputational damage, ongoing suitability-related disclosures, significant emotional distress, and

medically documented flare-ups requiring interventions and surgery after resignation. These facts are presented as the integrated context for the Privacy Act claims, APA claims, FTCA negligence claims, and constitutional claims already pled; they also explain why jurisdiction and timeliness are sustained by continuing injury and ongoing dissemination.

## VI. CAUSES OF ACTION

Plaintiff incorporates by reference all preceding factual allegations as if fully set forth herein. Plaintiff seeks all forms of relief available at law or in equity for each Count, including declaratory, equitable, injunctive, corrective, and monetary relief, to the fullest extent permitted by each Count's underlying statute, constitutional provision, or common-law theory. Nothing in this Complaint shall be construed to limit the scope of available remedies or damages based on the dismissal or survival of any individual Count. Plaintiff further alleges that Defendant's misconduct constitutes a continuing violation causing reputational, professional, and economic harm, including compelled disclosure of false and stigmatizing records during generally and during federal background investigations. This ongoing harm establishes a live case or controversy and supports both prospective and corrective relief.

### Count 1: Privacy Act Violations

Plaintiff reasserts and incorporates the full factual allegations above and states a claim under the Privacy Act of 1974, 5 U.S.C. § 552a. The U.S. Office of Special Counsel (OSC), an agency of the United States, operates multiple systems of records within the meaning of § 552a(a)(5) and is legally obligated to ensure the accuracy, integrity, lawful dissemination, and proper maintenance of records pertaining to Plaintiff. Between June 2022 and the present, OSC officials and employees acting within the scope of their federal employment created, maintained, and disseminated records about Plaintiff that were materially false, incomplete, and obtained or used in violation of statutory

safeguards. Despite receiving formal objections and supporting documentation, OSC failed to amend or annotate the records, failed to implement required access controls, and unlawfully disclosed sensitive information internally and externally. These actions and omissions violated multiple provisions of the Privacy Act and resulted in significant reputational harm, professional impairment, emotional distress, and recurring injury to Plaintiff's legal and employment interests. Each violation described below constitutes a separate and actionable breach of the Privacy Act.

### A.  Knowing Creation and Maintenance of False Records

### (5 U.S.C. § 552a(e)(5); 5 U.S.C. § 552a(g)(1)(C); APA: 5 U.S.C. § 706(2)(A))

Between June 2022 and November 2022, OSC or recklessly created and maintained materially false records concerning Plaintiff's work status and conduct. On September 8, 2022, OSC official Ammar Ahmad informed his colleague Vance Hall via email that Plaintiff was on probation and needed to report in person. Plaintiff was not lawfully on probation at that time, and the probation designation appeared nowhere in official appointment documentation. Ahmad repeated the claim in performance-related records throughout September 2022. OSC also recorded Plaintiff as absent without leave (AWOL) on September 13, 2022, despite contemporaneous email sent to Hall for sick leave that day. In October 2022, OSC staff began drafting a performance plan and shadow leave records documenting Plaintiff's activities. The performance plan dates were set October 19, 2022 for a period that ended on October 31, 2022. On November 1, 2022, OSC began drafting a backdated performance evaluation, containing criticisms and referencing a plan that had never been shared with Plaintiff. These records, created and sustained by officials including Ahmad, Hall, Baxter, Massey, and Beckett, were materially inaccurate and were retained in OSC's systems, in violation of the statutory requirement to ensure accuracy, timeliness, and completeness.

### B. Maintenance of Inaccurate or Misleading Records Affecting Employment Determinations
### (5 U.S.C. § 552a(e)(5), (e)(6); § 552a(g)(1)(C); APA: 5 U.S.C. § 706(2)(A))

Between September and October 2022, multiple OSC officials, including Ammar Ahmad, Kim Baxter, and Leigh Ann Massey, generated and circulated records that cast Plaintiff in an unfavorable light. These records included written statements and spreadsheets suggesting that Plaintiff had misused leave, failed to comply with supervisory instructions, and demonstrated performance deficiencies. At the same time, Plaintiff had submitted contemporaneous medical documentation supporting the use of sick leave.

On September 13, 2022, Vance Hall, Plaintiff's direct supervisor, authorized Plaintiff's remote work and system access by email. Despite this documented approval, OSC records subsequently reflected that Plaintiff was absent without leave (AWOL). That designation was included in internal spreadsheets overseen by Ahmad and Massey. The spreadsheets compiled attendance data in a manner that treated ordinary use of approved sick leave as a pattern of leave abuse, even though applicable OPM regulations allow post-approval of sick leave with medical certification.

In October 2022, OSC staff expanded these records by creating off-system attendance tracking spreadsheets and drafting a performance plan dated October 19, 2022. The plan was generated after the close of the performance period and therefore did not comply with the requirements of OSC Directive 202, §§ 7.3 and 9.1, or with OPM performance regulations requiring that standards be established at the start of a performance period. The draft plan and attendance spreadsheets were subsequently referenced in internal communications and used as the basis for increased scrutiny of Plaintiff's work. These materials remain in OSC's possession and have not been corrected or withdrawn.

After Plaintiff's resignation in November 2022, the disputed records continued to be maintained in OSC systems. On July 1, 2025, during a federal background investigation, Plaintiff was questioned under oath regarding these materials. Because the records had not been amended or annotated to reflect their inaccuracy, Plaintiff was required to address the allegations as if they were valid. This created professional risk and reputational damage in a setting where credibility determinations directly affected Plaintiff's suitability for federal employment.

### C. Improper Disclosure of Confidential Medical and Accommodation Information (5 U.S.C. § 552a(b), (e)(10); OSC Directive 52; OSC SORN OSC-3, 86 Fed. Reg. 67462 (Nov. 26, 2021))

In September 2022, Plaintiff submitted a reasonable accommodation request supported by medical documentation describing a chronic, stress-sensitive medical condition. The submission was directed only to the officials identified as appropriate points of contact: Leigh Ann Massey in her role as Disability Coordinator, Jessica McDaniels in human resources, and Plaintiff's immediate supervisor, Vance Hall.

Despite these limitations, the medical information was disseminated beyond the officials authorized under OSC policy. Massey shared Plaintiff's accommodation request with Amy Beckett, who in turn disclosed it to General Counsel Susan Ullman. Separately, Ammar Ahmad circulated the information to Kim Baxter and Chief Operating Officer Karl Kammann. None of these officials had a designated role under OSC Directive 52 to process accommodations or under the published System of Records Notice (SORN OSC-3) to manage or access medical records. The disclosures occurred over ordinary agency email chains that were not secured for medical or confidential data. These email exchanges contained discussions that were not limited to the processing of the accommodation request. In later sworn testimony, Massey confirmed that Plaintiff's direct supervisor was not authorized to decide accommodation requests, further

demonstrating that disclosures to supervisory and disciplinary officials were outside policy. As a

result, Plaintiff's diagnosis, functional restrictions, and leave requirements were made available to

officials who exercised authority over performance oversight and discipline.

OSC did not segregate the medical information, restrict its access, or store it in the repository

designated by SORN OSC-3 for medical accommodation records. The broad dissemination of

Plaintiff's diagnosis and functional limitations violated both the Privacy Act, 5 U.S.C. § 552a(b)

and (e)(10), and OSC's own internal rules. Directive 52 and OSC-3 expressly limit the use and

disclosure of accommodation records to staff involved in disability processing and require secure

maintenance.

The consequences of these disclosures extended beyond administrative irregularities. By

circulating information about Plaintiff's condition to officials responsible for discipline and

performance oversight, OSC created foreseeable risks of prejudice in day-to-day management. The

exposure of medical data also intensified Plaintiff's stress, which the documentation had

specifically identified as a medical trigger. The resulting flare-ups required medical intervention,

including multiple surgeries, and caused permanent scarring. These injuries occurred in a context

where OSC officials had knowledge of the risk from the medical documentation itself, yet failed to

take the measures required by statute, policy, and published SORNs to prevent unauthorized

disclosure.

### D. Failure to Amend or Expunge Disputed Records Following Formal Objections

### (5 U.S.C. § 552a(d)(2), (d)(3), (e)(5); APA: 5 U.S.C. §§ 706(1), 706(2)(A))

Between September and November 2022, Plaintiff submitted objections to multiple inaccurate

records maintained by OSC personnel, including Ammar Ahmad (Chief Information Officer),

Leigh Ann Massey (Human Capital Officer), and Amy Beckett (Deputy General Counsel). The

disputed records included: a September 13, 2022 AWOL designation entered despite

contemporaneous sick leave submissions; a probationary status classification initiated by Ahmad that was inconsistent with OSC policy; and misconduct allegations initiated in the November 2022 that were unsupported by evidence as well as continued allegations after resignation. Plaintiff provided corroborating documentation, such as system logs and medical records, to establish the inaccuracies. Despite these objections, OSC officials neither corrected nor annotated the records, and no written denial or notice of appeal rights was issued as required by § 552a(d)(3). The agency's failure to act constituted unlawful inaction under § 706(1), arbitrary treatment of a statutory request under § 706(2)(A), and a violation of OSC's duty under § 552a(e)(5) to maintain records with accuracy, relevance, timeliness, and completeness when used in determinations affecting individuals.

### E. Improper Internal and External Dissemination of Disputed Records
### (5 U.S.C. § 552a(b), (e)(6); APA: 5 U.S.C. §§ 706(2)(A), 706(2)(C))

From September 2022 through at least April 2025, OSC personnel including Beckett, General Counsel Susan Ullman, agency counsel Erik Snyder, and Deputy Special Counsel Kim Baxter distributed disputed records concerning Plaintiff's attendance, conduct, and medical status to individuals within OSC without a valid need-to-know, and externally to the DOJ, the U.S. Attorney's Office, the MSPB, and the EEOC. Disseminated records included false AWOL designations created by Patel in June 2022 and Ahmad in September 2022, misclassification of Plaintiff as probationary, unverified misconduct claims, and criminal allegations. The Privacy Act requires verification of accuracy before disclosure, § 552a(e)(6), and prohibits dissemination without consent or proper routine-use authority, § 552a(b). The records were not verified or flagged as contested before disclosure, rendering the agency's conduct arbitrary and outside its authority under §§ 706(2)(A) and (C).

### F. Reckless Retention of False Records with Foreseeable Suitability Consequences
### (5 U.S.C. § 552a(e)(5); § 552a(g)(1)(C))

OSC officials including Patel, Ahmad, and Beckett generated and retained records falsely indicating misconduct, leave abuse, and improper system access. These included Patel's June 3, 2022 AWOL entry, Ahmad's September 2022 AWOL and probationary entries, and the November 2022 suspension notice advanced by Beckett. Despite receiving documentary proof of inaccuracies, OSC continued to maintain these records without correction. On July 1, 2025, Plaintiff was required to explain and defend against these records in a federal background investigation. By retaining records known to be inaccurate, OSC violated § 552a(e)(5), which mandates maintenance of accurate and timely records used to make determinations about individuals, causing foreseeable reputational and professional harm.

### G. Failure to Segregate or Restrict Access to Disputed Records Prior to Background Review
### (5 U.S.C. § 552a(e)(6), (e)(10))

Following Plaintiff's formal requests in September 2022 and May 2023, OSC personnel including Snyder, Massey, and Beckett did not flag or isolate disputed records from ordinary access. Records at issue included disciplinary narratives, misclassified probationary entries, and the November 2022 suspension. Without annotation or restriction, these records remained available to internal staff and external suitability reviewers. This practice violated § 552a(e)(6), which requires agencies to ensure accuracy before dissemination, and § 552a(e)(10), which mandates safeguards against unauthorized access. On July 1, 2025, Plaintiff's background investigation included direct questioning about these records, demonstrating the foreseeable harm caused by OSC's failure to segregate them.

### H. Maintenance of Unauthorized and Unpublished Systems of Records

### (5 U.S.C. § 552a(e)(4)–(5), (e)(10); 5 U.S.C. § 301; OSC Directive 52 and OSC-3)

OSC maintained unauthorized systems of records containing Plaintiff's medical and employment data without publishing or securing them in accordance with law. Plaintiff's accommodation request, medical documentation, performance materials, and attendance data were retained in informal email chains and unsecured repositories rather than in the systems identified in published SORNs OSC-2, OSC-3, and OSC-4 (86 Fed. Reg. 67462, Nov. 26, 2021). Personnel including Massey and Ahmad used these informal repositories rather than the designated secure system. By doing so, OSC deprived Plaintiff of statutory protections under § 552a(e)(4), including the right to know the system location and purpose, and violated § 552a(e)(5) and (e)(10), which require accuracy, relevance, and safeguards. The use of unpublished systems prevented Plaintiff from seeking amendment or correction and facilitated unauthorized disclosures.

### I. Arbitrary and Capricious Internal Dissemination of False Records

### (5 U.S.C. § 552a(b), (e)(10); APA: 5 U.S.C. § 706(2)(A))

Between September 2022 and early 2023, OSC officials including Ahmad, Massey, and Beckett distributed disputed records internally to administrative staff and attorneys without a statutory need-to-know. These records included the September 13, 2022 AWOL entry, attendance monitoring spreadsheets, and a backdated October–November 2022 performance evaluation. Dissemination to individuals outside supervisory or accommodation roles violated the Privacy Act's access restrictions in § 552a(b) and OSC's obligation to maintain adequate safeguards under § 552a(e)(10). The broad internal spread of disputed information contributed to reputational damage and professional isolation within OSC's small workforce.

### J. Arbitrary and Capricious External Dissemination Without Accuracy Verification

### (5 U.S.C. § 552a(e)(6); APA: 5 U.S.C. § 706(2)(A), (2)(C))

From November 2022 through July 2025, OSC personnel including Snyder and Beckett disseminated disputed records—such as the November 2022 suspension—to outside agencies and adjudicatory bodies. The disclosures occurred in litigation filings, administrative referrals, and inter-agency communications. OSC did not verify the records for accuracy or annotate them as disputed despite knowledge of Plaintiff's objections. This violated § 552a(e)(6), which requires agencies to confirm accuracy prior to disclosure. Disseminating contested records without verification constituted arbitrary conduct under § 706(2)(A) and exceeded statutory authority under § 706(2)(C), causing external decision-makers to receive inaccurate information about Plaintiff's conduct.

### K. Unlawful Agency Inaction Forcing Compelled Self-Disclosure
### (5 U.S.C. § 552a(d)(2); APA: 5 U.S.C. §§ 706(1), 706(2)(A))

OSC staff—including Beckett and Ullman—failed to respond to Plaintiff's repeated objections to the accuracy of misconduct and performance records. By refusing to annotate or correct these entries, OSC left Plaintiff with no choice but to disclose and explain false allegations during litigation and a July 1, 2025 federal background investigation. Plaintiff's disclosures under oath included AWOL allegations, probationary status, and uncorrected records of a falsified suspension. OSC's failure to act on multiple formal amendment requests violated § 552a(d)(2), constituted unlawful inaction under § 706(1), and perpetuated reputational injury in violation of § 706(2)(A).

### L. Failure to Implement Safeguards to Prevent Record Use in Suitability Investigations
### (5 U.S.C. § 552a(e)(10); 5 C.F.R. § 1302.9(b); APA: 5 U.S.C. §§ 706(1), 706(2)(A))

Between November 2022 and July 2025, OSC officials including Snyder, Massey, and Beckett failed to implement safeguards to prevent known false records from being accessed in government-wide suitability reviews. Records such as the disputed November 2022 suspension and fabricated

probationary status were maintained without annotation or restriction and remained available for external review. This practice violated § 552a(e)(10) and the safeguard requirements of 5 C.F.R. § 1302.9(b). On July 1, 2025, Plaintiff was questioned about these records during a federal background investigation, demonstrating direct harm caused by OSC's inaction. Maintaining uncorrected false records foreseeably forces Plaintiff to confront them in all future suitability determinations, creating ongoing professional and reputational injury.

### M. Misuse of OSC Directive 52 to Justify Improper Medical Record Handling
### (5 U.S.C. § 552a(b), (e)(10); OSC Directive 52 §§ 4, 6; APA: 5 U.S.C. §§ 706(2)(A), (C))

In October 2022, Human Capital Officer Massey collected Plaintiff's medical documentation supporting a request for accommodation of Plaintiff's chronic condition. Directive 52 requires that such information be processed by the disability coordinator and supervisor, and be securely maintained. Instead, Massey shared the records with Beckett and Ahmad, who were not authorized under Directive 52 or OSC-3 to access or process medical documentation. The distribution occurred via unsecured email without Plaintiff's consent or a documented need-to-know. These actions violated § 552a(b) and (e)(10), breached internal policy, and constituted arbitrary and ultra vires conduct under §§ 706(2)(A) and (C).

### N. Denial of Access to Amendment Rights and Related Records
### (5 U.S.C. § 552a(d)(1), (d)(2); APA: 5 U.S.C. §§ 706(1), 706(2)(A))

Between November 2022 and May 2023, Plaintiff submitted repeated written and oral requests to amend, annotate, or inspect records being used in litigation and investigations. These requests identified AWOL designations, negative performance characterizations, and allegations of unauthorized access as inaccurate. OSC personnel including Beckett and Snyder did not issue a response acknowledging the requests, nor did they provide a denial with notice of appeal rights

under § 552a(d)(3). This complete failure to respond denied Plaintiff access rights under § 552a(d)(1)–(2) and amounted to agency inaction under § 706(1). The refusal to engage with statutory amendment procedures perpetuated the harm caused by disputed records and constituted arbitrary conduct under § 706(2)(A).

### O. Use of Disputed Records to Interfere with Future Employment Opportunities (5 U.S.C. § 552a(e)(5), (e)(6); APA: 5 U.S.C. §§ 706(1), 706(2)(A))

OSC officials, including Erik Snyder and Amy Beckett, continued to maintain and rely on records that had been formally disputed by Plaintiff, including a backdated performance narrative, a fabricated September 13, 2022 AWOL entry, and the November 2022 suspension that cited "unauthorized access." Despite Plaintiff's repeated objections and submission of contrary documentation, the records were not verified for accuracy or annotated as contested, and they remained active through mid-2025. On July 1, 2025, Plaintiff was compelled to explain these entries during a federal suitability interview. This reliance violated § 552a(e)(5) (requiring agencies to maintain records with accuracy and timeliness when used in determinations about individuals) and § 552a(e)(6) (requiring verification prior to disclosure), and constituted unlawful inaction under § 706(1) and arbitrary conduct under § 706(2)(A). The failure to intervene directly caused reputational injury, compelled disclosure of inaccurate information, and created barriers to future federal employment opportunities.

### P. Systemic Deficiencies in OSC's Record Safeguards and Oversight (5 U.S.C. § 552a(e)(10); 5 C.F.R. § 1302.9(b); APA: 5 U.S.C. § 706(2)(A))

Between 2022 and 2025, OSC did not implement technical or administrative safeguards sufficient to prevent improper access to or dissemination of Plaintiff's records. Materials including AWOL allegations, probation designations, medical documentation, and performance data were retained in

ordinary email chains, shared drives, and tracking spreadsheets without encryption, password protection, or access controls. OSC's Directive 52 and OMB Circular A-130 require secure handling of medical and personnel-related data, and § 552a(e)(10) requires safeguards to prevent unauthorized use. By failing to institute or enforce such measures, senior officials including Massey, Beckett, and Ahmad permitted unauthorized access and dissemination. These systemic lapses violated § 552a(e)(10) and 5 C.F.R. § 1302.9(b), and constituted arbitrary and capricious inaction under § 706(2)(A).

## Q. Use of False and Incomplete Records in Agency Litigation Without Verification (5 U.S.C. § 552a(e)(5), (e)(6); APA: 5 U.S.C. §§ 706(2)(A), (C))

Between November 2022 and June 2025, OSC officials including Snyder, Ullman, and Beckett submitted records they knew to be inaccurate or incomplete in agency filings and litigation responses. These included entries originated by Patel and Ahmad that had never been verified, such as AWOL designations, probation misclassifications, criminal conduct allegations and performance evaluations. Despite Plaintiff's formal objections and provision of documentary evidence, the records were neither annotated as disputed nor corrected prior to use. Section 552a(e)(5)–(6) requires agencies to maintain accurate records and verify them before dissemination. OSC's reliance on uncorrected materials in official proceedings violated these duties, constituted arbitrary conduct under § 706(2)(A), and exceeded statutory authority under § 706(2)(C). Use of the records in litigation also exceeded the scope of routine uses published in OSC-2, OSC-3, and OSC-4, which limit disclosures to individuals with a defined role in accommodation or personnel decisions. The reliance on unverified records in adjudicatory settings amplified reputational harm and risked repeated dissemination.

**R. Breach of OSC's Published Routine Use Limitations (5 U.S.C. § 552a(b), (e)(4)(D); OSC SORNs)**

OSC transmitted Plaintiff's records to internal staff, external agencies, and investigative entities outside the scope of the "routine use" provisions in its published SORNs, including OSC-3. The Privacy Act permits routine use disclosures only where they are compatible with the purpose for which the records were collected, and § 552a(e)(4)(D) requires agencies to publish those uses in advance. OSC shared disputed and confidential records in contexts that did not meet the statutory standard of necessity or the compatibility requirement. By exceeding the boundaries of its published SORNs, OSC violated § 552a(b) and (e)(4)(D) and disseminated Plaintiff's records in circumstances not authorized by law.

**S. Denial of Access Logs and Accounting of Disclosures in Violation of 5 U.S.C. § 552a(c)**

Under § 552a(c)(1)–(3), agencies must maintain an accounting of disclosures made from a system of records, including internal disclosures outside routine use. When Plaintiff sought to determine the extent of internal and external dissemination of records related to medical information, leave, misconduct allegations, and suitability reviews, OSC did not provide any accounting or access logs. This refusal prevented Plaintiff from identifying the scope of dissemination or seeking correction in all relevant locations. The absence of disclosure accounting denied Plaintiff the transparency guaranteed by § 552a(c) and impeded statutory rights to challenge improper disclosures, compounding reputational injury and undermining the ability to obtain redress.

**T. Failure to Conduct or Publish a Privacy Impact Assessment for Sensitive Systems (5 U.S.C. § 552a(r); E-Government Act of 2002 § 208, 44 U.S.C. § 3501 note)**

The Privacy Act, § 552a(r), and § 208 of the E-Government Act of 2002 require agencies to conduct and publish Privacy Impact Assessments (PIAs) for systems that collect, use, and

disseminate sensitive information. Between 2022 and 2025, OSC processed Plaintiff's medical documentation, accommodation requests, and internal complaints through email systems and tracking tools not covered by a PIA. No published PIA described the handling of Plaintiff's records in these systems. As a result, Plaintiff lacked notice about how the information would be stored, shared, or retained. The absence of a PIA created risks of unauthorized access and impaired oversight. This failure facilitated disclosures of Plaintiff's medical and employment data, hindered legal defenses, and contributed to reputational and emotional harm.

### U. Pattern and Practice of Systemic Privacy Act Noncompliance Warranting Declaratory Relief (5 U.S.C. §§ 552a(g)(1)(D), 552a(e)(10))

OSC's conduct from 2022 to 2025 demonstrates a systemic pattern of noncompliance with the Privacy Act. The agency repeatedly refused to amend or annotate false records despite formal objections; disseminated disputed information internally and externally without statutory authority; maintained records in unpublished or unauthorized systems; failed to implement required safeguards or conduct a Privacy Impact Assessment; and relied on inaccurate records in litigation and suitability reviews. These practices collectively establish institutional disregard for the requirements of the Privacy Act, including § 552a(e)(10)'s mandate for safeguards. The continuing maintenance and dissemination of disputed records creates an ongoing risk that Plaintiff's information will be used in future suitability determinations. Given this sustained pattern, declaratory and injunctive relief is warranted under § 552a(g)(1)(D) to prevent further violations and protect Plaintiff's statutory rights, professional reputation, and eligibility for federal employment.

## V. Fabricated CFAA Records and Dissemination of False Criminal Allegations

The United States, acting through OSC, created and disseminated records falsely alleging that Plaintiff violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, by engaging in "unauthorized" or "exceeding" access to government computer systems. These records included a November 11, 2022 suspension notice and subsequent litigation filings in which OSC officials, including Amy Beckett and Hnin Khaing, escalated their accusations from "unauthorized access" to "penetrating" or "hacking" OSC systems.

Such records were inaccurate and incomplete within the meaning of 5 U.S.C. § 552a(e)(5), as Plaintiff accessed OSC systems solely in the course of his assigned duties as an email and system administrator, with contemporaneous approval from his supervisor. In sworn testimony before the MSPB in January 2025, Vance Hall admitted that Plaintiff informed him of the access, that he relayed this to Ahmad, and that Ahmad temporarily revoked and then restored Plaintiff's access to permit completion of assigned work.

Despite this evidence, OSC maintained and disseminated the fabricated CFAA allegations in litigation before the MSPB, EEOC, and DOJ, and through disclosures to federal background investigators on July 1, 2025. By failing to verify these records before dissemination, OSC violated 5 U.S.C. § 552a(e)(6), which requires agencies to ensure the accuracy, completeness, and relevance of records before disclosure outside the agency. The unlawful retention and dissemination of these records has caused Plaintiff continuing reputational injury, impaired employment prospects, and compelled disclosure of false criminal allegations in federal suitability investigations.

## X. Fabricated Probationary Designation and Backdated Performance Records

OSC officials fabricated a probationary designation in September 2022 and a performance plan in October 2022, both of which were unsupported by any valid authority. The probationary status,

imposed by Ammar Ahmad and affirmed by OSC leadership, contradicted Plaintiff's completed

probationary period and was used to justify daily in-person reporting and escalated oversight.

The October 2022 performance plan, backdated after the close of the performance period, violated

OSC Directive 202 and OPM regulations at 5 U.S.C. § 4302(b)(1). This plan, never shared with

Plaintiff, was subsequently used to produce a November 2022 performance evaluation outside of

any lawful process.

These records were inaccurate and incomplete under 5 U.S.C. § 552a(e)(5). They were also

maintained and used without providing Plaintiff any opportunity to contest them, in violation of §

552a(d)(2). OSC failed to mark these records as disputed despite multiple correction requests and

allowed them to remain active in official systems where they continued to affect Plaintiff's

employment opportunities. Their unlawful maintenance and use constitute actionable Privacy Act

violations, resulting in reputational harm, compelled disclosure during suitability investigations,

and continuing stigma.

## Y. Improper Creation and Use of Extraneous Leave Records

Between August and November 2022, OSC staff created extraneous leave tracking spreadsheets

outside of the official time and attendance system. These records, developed by Vance Hall and

Ammar Ahmad and circulated internally to Beckett and Ullman, reframed Plaintiff's approved sick

leave as absenteeism or misconduct.

Such records violated 5 U.S.C. § 552a(e)(5) because they misrepresented accurate leave usage

documented in the official system of record. They also violated § 552a(e)(10), which requires

agencies to maintain safeguards against the creation and dissemination of unauthorized records.

The spreadsheets were concealed from Plaintiff during his employment and later introduced during

EEOC litigation in April 2025.

OSC disseminated these records without verifying their accuracy, in violation of § 552a(e)(6), and without Plaintiff's consent, in violation of § 552a(b). These records had a direct and adverse effect on Plaintiff's employment by being used to justify adverse scrutiny and a suspension notice, and by requiring disclosure during subsequent federal background investigations.

### Count 2: Federal Tort Claims Act Violations

Plaintiff realleges and incorporates by reference the factual allegations in Count 1 and the preceding factual background as if fully set forth herein, solely to identify the negligent acts and omissions of the United States acting through its agency, the U.S. Office of Special Counsel (OSC). None of the claims asserted herein involve libel, slander, defamation, or misrepresentation, but are grounded in administrative negligence and breach of nondiscretionary regulatory duties. The United States, acting through its agency the U.S. Office of Special Counsel (OSC), is liable for the negligent acts and omissions described herein pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and is The United States is the proper defendant for purposes of this Count under the FTCA. At all relevant times, the individuals engaged in the misconduct described herein were employees of the United States acting within the scope of their employment. 2671–80. The United States owed Plaintiff a non-discretionary duty of care under applicable statutes, regulations, internal directives, and recognized principles of agency operation, including but not limited to the Privacy Act of 1974 (5 U.S.C. § 552a), the Rehabilitation Act of 1973 (29 U.S.C. § 791 et seq.), OSC Directives 52, 57, and 202, and published System of Records Notices (SORNs). This duty included, inter alia, the obligation to: (a) accurately create and maintain personnel, performance, and medical records; (b) safeguard those records from unauthorized use or dissemination; (c) correct or expunge false information when notified of its inaccuracy; and (d) prevent foreseeable harm caused by the negligent retention of false records.

The United States breached these duties by negligently retaining and using known false AWOL designations, fabricated probationary status, and unsupported performance deficiencies in Plaintiff's official file. These false records were allowed to remain even after Plaintiff formally requested correction in September 2022 and after repeated agency statements that 'there are no errors' made clear OSC had no intention of acting.

The government knew or should have known these records would be compelled in any future federal background investigation, yet it took no action to segregate or correct them. On July 1, 2025, Plaintiff was required under penalty of perjury to disclose the false AWOL and probationary records during a federal suitability interview, causing foreseeable reputational injury, professional stigma, emotional distress, and economic loss independent of any misrepresentation or defamation. The negligent failure to prevent this harm constitutes actionable tortious conduct under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80.

The United States is liable for the following acts of negligence:

**A.  Negligent Supervision, Training, Retention, and Oversight (28 U.S.C. §§ 1346(b), 2671–2680)**

The United States, acting through the U.S. Office of Special Counsel ("OSC"), owed Plaintiff nondiscretionary duties of supervision, training, and oversight in addition to compliance with statutory requirements and binding internal directives. OSC owed Plaintiff nondiscretionary duties imposed directly by statute and regulation—including the Privacy Act, 5 U.S.C. § 552a; OPM's leave and performance regulations under 5 U.S.C. § 4302 and 5 C.F.R. pt. 630; and federal internal control requirements under 31 U.S.C. § 3512—to maintain accurate records, safeguard confidential information, and conduct performance management in compliance with law. In addition, OSC had a derivative duty to supervise, train, and oversee its employees to ensure these statutory obligations were met. By failing to comply directly with these legal mandates, and by

failing to implement and enforce supervisory systems necessary to prevent violations, the United States acted negligently and proximately caused Plaintiff's injuries.

OSC Directive 52 requires all personnel with responsibilities for handling reasonable accommodation requests to be trained in the Rehabilitation Act's mandates, 29 U.S.C. § 791, and EEOC regulations, including the interactive process obligations codified at 29 C.F.R. § 1630.2(o)(3). OSC Directive 202 imposes similar nondiscretionary obligations regarding performance appraisals and the lawful creation and use of performance documentation, which are further required under 5 U.S.C. § 4302(b)(1).

Despite these clear mandates, the United States failed to train or supervise OSC staff— including Leigh Ann Massey, Ammar Ahmad, Kim Baxter, Susan Ullman, Nicole Brightbill, Amy Beckett, and Vance Hall—before delegating to them critical responsibilities relating to Plaintiff's medical accommodations, work location, and performance evaluation. OSC leadership did not assess whether these individuals were legally qualified to make such determinations, nor did they provide any oversight to prevent misuse of accommodation requests or performance documentation.

By failing to supervise or train these staff, the United States allowed unauthorized employees to impose medically harmful in-person reporting requirements, misapply attendance rules, and create inaccurate performance records. These negligent failures enabled a chain of unlawful actions that foreseeably caused Plaintiff reputational harm, physical injury through aggravation of his chronic skin disease, and severe emotional distress.

**B. Negligent Records Management and Breach of Confidentiality (28 U.S.C. §§ 1346(b), 2671–2680; 5 U.S.C. § 552a(e)(5))**

The United States, acting through OSC, negligently created, retained, and disseminated inaccurate and confidential records concerning Plaintiff's employment, in violation of statutory

and regulatory requirements. The Privacy Act requires agencies to maintain records with accuracy, relevance, timeliness, and completeness to ensure fairness, 5 U.S.C. § 552a(e)(5), and mandates safeguards to prevent unauthorized disclosure, 5 U.S.C. § 552a(e)(10). OSC's published System of Records Notices (OSC-3 and OSC-4) incorporate these requirements.

On or about June 3, 2022, OSC staff member Smita Patel entered an AWOL designation against Plaintiff despite OSC's possession of contemporaneous medical documentation establishing that Plaintiff was on authorized sick leave. This was unknown to Plaintiff at the time it occurred. This inaccurate record was negligently created and later retained, even after Plaintiff notified OSC of its falsity. OSC also failed to conduct the audits required by Directive 202 §§ 7.3, 9.1, and 9.2 to verify the integrity of performance records.

In addition, OSC personnel—including Massey and Ahmad—improperly transmitted Plaintiff's confidential medical and accommodation records via unsecured email and disclosed those records to administrative staff with no legitimate role in the accommodation process. This violated OSC Directive 52 and the Privacy Act's "need to know" rule, 5 U.S.C. § 552a(b). By negligently managing Plaintiff's records and breaching confidentiality safeguards, the United States inflicted foreseeable reputational damage, forced Plaintiff to disclose stigmatizing records in subsequent federal background investigations, and exacerbated his physical and emotional harm.

C. **Negligent Administrative Delegation and Procedural Malfeasance (28 U.S.C. §§ 1346(b), 2671–2680)**

The United States, acting through OSC, unlawfully delegated core administrative responsibilities—including disciplinary planning, performance tracking, and accommodation enforcement—to OSC employees who lacked supervisory authority and/or proper training. Ammar Ahmad, Amy Beckett, Leigh Ann Massey, Kim Baxter, Susan Ullman, and Nicole Brightbill collectively acted as Plaintiff's supervisor despite them either or both lacking supervisory authority

and/or supervisory training. They were permitted to direct actions relating to Plaintiff's performance, probation status, and attendance despite lacking legal authority. On September 9, 2022, Ahmad required Plaintiff to report in person based on a claimed probation status that was factually and legally unsupported.

OSC also permitted the creation of a fabricated performance plan on or after October 19, 2022, after the performance year had started over 75 days earlier and without informing Plaintiff of its details. The plan was neither reviewed with Plaintiff nor signed by him and/or anyone purporting to be his manager, in direct violation of Directive 202 § 7.3. This plan was later used by OSC staff Massey and Ahmad as a basis for creating secret leave records outside of the system of record to reclassify normal approved leave use as abusive using a spreadsheet that Ahmad circulated by email on November 1, 2022.

By failing to restrict core administrative functions to qualified personnel and Plaintiff's official manager as well as neglecting to train staff on their legal obligations, the United States caused tangible harms, including reputational injury, denial of benefits, and severe stress that aggravated Plaintiff's chronic skin disease. These failures are actionable under the FTCA for negligent procedural malfeasance and unlawful delegation of federal duties.

**D. Negligent Retaliatory Misuse of Probation Designation (28 U.S.C. §§ 1346(b), 2671–2680)**

The United States inflicted foreseeable and medically harmful emotional distress on Plaintiff by allowing OSC staff to repeatedly disregard medical documentation and retaliate based on a probation it had no evidence existed.

Plaintiff was falsely designated as being on probation by OSC staff member Ammar Ahmad on or around September 8, 2022, despite Plaintiff having already completed the applicable probationary period. Ahmad, acting as an agent of the United States and without legal or supervisory authority, conveyed this designation to Plaintiff and used it to justify the imposition of

in-person reporting requirements, revocation of telework eligibility, and intensified attendance scrutiny. This designation was not supported by any official personnel action, documentation, or OPM authority, and it contradicted OSC's own onboarding timeline. OSC officials, including Beckett, Brightbill, Ullman, and Massey, were aware of this misuse but failed to correct it.

The probation claim was later used to initiate intense adverse scrutiny, coercive monitoring that included leave records that reclassified approved leave as abusive, a backdated performance plan with secret performance standards, system access restrictions, and an eventual a suspension. This fabricated probationary status was a central factual basis used to circumvent OSC's Directive 202 (Performance Management), Directive 52 (Reasonable Accommodation), and Directive 51 as well as federal leave regulations under 5 C.F.R. Part 630. The agency's failure to train or supervise its managers and counsel on lawful probationary designations, and its negligence in allowing the misuse of probation status to facilitate retaliation, directly harmed Plaintiff's physical health, mental well-being, and employment security.

The United States, acting through the U.S. Office of Special Counsel (OSC), failed to maintain any functional system of internal oversight, supervisory review, or enforcement of binding agency policies between June and November 2022. This failure allowed OSC employees—including Smita Patel, Ammar Ahmad, Vance Hall, Leigh Ann Massey, Amy Beckett, and Susan Ullman—to engage in procedurally improper conduct against Plaintiff without intervention or accountability. Despite receiving a formal complaint on June 2, 2022 through the required 1212(i) process, alleging that Patel had fabricated misconduct allegations and misused performance documentation in retaliation for Plaintiff's protected EEO activity, OSC took no corrective action or performed any investigation. Other June 2022 records by Patel—developed while she was CIO—falsely accused Plaintiff of being absent without leave (AWOL) and included a fabricated unsatisfactory evaluation, even though Plaintiff was on medically documented sick

leave at that time. These records were later reused by Beckett and shared with Ahmad after he replaced Patel to support further scrutiny by Ahmad.

Following Patel's departure in June 2022, Ahmad, Baxter, Beckett, Massey, and Ullman to unlawfully assumed direct authority over Plaintiff's duties, time/attendance, and performance without supervisory designation and began developing new records against Plaintiff, including a backdated and secret evaluation in coordination with supervisor Vance Hall and secret leave records that as ought to reclassify approved leave as abusive. This second evaluation used undisclosed performance standards and dates, was never shared with Plaintiff, and was created without a valid performance plan, in violation of OSC Directive 202, § 8 and OPM regulations at 5 U.S.C. § 4302(b)(1).

OSC leadership also failed to monitor or enforce compliance with OSC Directive 52 (reasonable accommodation), Directive 202 (performance management), Directive 206 (overtime), Directive 58 (anti-harassment), and Directive 57 (internal misconduct reporting). Directive 57 explicitly prohibits retaliation against employees who report internal misconduct and restricts OSC employees—including Plaintiff—to reporting waste, fraud, and abuse through an investigative channel under 5 U.S.C. § 1212(i) or the Council of Inspectors General on Integrity and Efficiency (CIGIE). These systems provide no access to CSRA-style remedies, no investigatory transparency, and no judicial review, creating structural barriers to resolution and protection.

Next, the government negligently allowed the named staff, acting without supervisory appointment, to impose retaliatory scrutiny, develop unauthorized leave records with Hall to reclassify approved leave as abusive, casting Plaintiff's leave from August through November 2022 as misconduct to facilitate the issuance of a November 2022 suspension while Plaintiff was still employed. These acts were coordinated with Beckett and Ullman, who issued instructions to recast approved sick leave as improper and to forward all related correspondence to OSC

themselves. The internal controls required under 31 U.S.C. § 3512(b) (federal internal control standards) and OSC's ethical conduct rules at 5 C.F.R. § 2635.101(b)(11) were entirely absent or disregarded.

Rather than implement corrective supervision or investigate obvious procedural violations, the United States, acting through OSC, enabled a pattern of conduct that included: (1) the retaliatory fabrication of documentation, (2) unlawful reassignment of performance oversight to Ahmad, Baxter, Massey, Beckett, and Ullman (3) concealment of records and performance standards, (4) misuse of medical and timekeeping systems, and (5) abusing investigative authority through coercive and deceptive tactics, (5) forming a de facto retaliatory administrative regime. The failure to detect and prevent this policy violations foreseeably caused Plaintiff reputational harm, emotional distress, and a serious health deterioration that later required surgical intervention—all compensable injuries under 28 U.S.C. § 1346(b).Had routine policy checks or supervisory review occurred, these violations could have been caught and reversed before causing lasting harm. Instead, the government's failure to oversee its employees enabled a pattern of retaliation, false documentation, and health-endangering stress, all of which are compensable under the FTCA.

**E. Negligent Dissemination of False Information to Internal and External Entities (28 U.S.C. §§ 1346(b), 2671–2680; 5 U.S.C. § 552a(e)(6); 5 U.S.C. § 706(2))**

The United States, acting through OSC, negligently disseminated unverified and false records concerning Plaintiff to both internal and external entities without following statutory verification requirements. The Privacy Act mandates that before disseminating records about an individual, agencies must ensure the information is accurate, relevant, timely, and complete. See 5 U.S.C. § 552a(e)(6). The Administrative Procedure Act separately prohibits arbitrary and capricious dissemination of materially false records. See 5 U.S.C. § 706(2).

Despite these requirements, OSC staff—including Susan Ullman and Ammar Ahmad—internally circulated secret leave records reframing medically documented sick leave as absenteeism. Externally, OSC transmitted and relied on records containing fabricated AWOL designations, unsupported probationary claims, and allegations of misconduct under 18 U.S.C. § 1030. These records were shared with the U.S. Department of Justice, the U.S. Attorney's Office, the Equal Employment Opportunity Commission, and the Merit Systems Protection Board. This negligent dissemination directly caused Plaintiff to be subjected to negative agency findings, including a suspension notice dated November 11, 2022, and compelled him to repeatedly explain stigmatizing falsehoods in subsequent federal proceedings and suitability reviews, including an April 2025 EEOC matter. These injuries were foreseeable consequences of OSC's failure to apply statutory safeguards. Because the harms flowed from negligence, not deceit, they are compensable under the FTCA and not barred by 28 U.S.C. § 2680(h).

## F. Negligent Creation and Use of False Supervisory Authority (28 U.S.C. §§ 1346(b), 2671–2680)

The United States, through OSC, negligently failed to enforce its own restrictions on supervisory authority, thereby enabling unauthorized personnel to exercise control over Plaintiff's employment. Under OSC Directive 202, only officially designated supervisors may establish performance standards, direct daily reporting, or initiate disciplinary scrutiny. OPM regulations at 5 U.S.C. § 4302(b)(1) impose similar requirements for valid supervisory authority.

Between July and November 2022, multiple OSC officials—including Kim Baxter, Amy Beckett, Susan Ullman, Ammar Ahmad, and Leigh Ann Massey—undertook supervisory functions over Plaintiff despite lacking lawful delegation of authority. These individuals directed Plaintiff's reporting requirements, initiated disciplinary and performance-related actions, approved or denied system access, and created or oversaw attendance records later used to support adverse action.

Leigh Ann Massey, in her role as Chief of Human Resources, reinforced this arrangement by treating the named staff as Plaintiff's supervisors in official communications, even though Plaintiff's official supervisor of record remained Vance Hall. Hall's role was reduced to ministerial tasks such as approving leave requests, while substantive oversight, performance documentation, and disciplinary preparations were generated by the named staff and other legal officials who had no supervisory designation or authority under OSC Directive 202 or applicable OPM standards.

By failing to supervise its staff and enforce its own rules governing personnel authority, the United States, acting through OSC, negligently permitted employees without supervisory designation to exercise powers reserved by law and regulation to assigned supervisors.

The absence of oversight allowed these improperly designated officials to create and rely upon records that were inaccurate, incomplete, or fabricated, including probationary designations, AWOL charges, and a backdated performance plan. These records became embedded in OSC's systems, were transmitted to external agencies, and were later compelled for disclosure in a 2025 federal background investigation. Because no internal supervisory review or quality control was enforced, inaccurate documentation remained uncorrected and continued to affect Plaintiff's employment prospects.

The negligent allowance of unauthorized supervisory authority produced foreseeable harms: procedural injury from reliance on invalid records, reputational injury from dissemination of unverified allegations, emotional injury from repeated accusations, threats, and surveillance, and physical injury from stress-aggravated flare-ups of Plaintiff's chronic condition. These harms were the direct product of the government's failure to train, monitor, and restrict OSC staff to their lawful roles. Such failures constitute negligence actionable under the FTCA, 28 U.S.C. § 1346(b), because they arose from breaches of nondiscretionary duties of supervision and record management, not from  misconduct.

### G. Negligent Escalation Following Protected Disclosures (28 U.S.C. §§ 1346(b), 2671–2680)

The United States, acting through OSC, negligently failed to protect Plaintiff from retaliatory escalation after he engaged in protected disclosures. On June 2, 2022, Plaintiff submitted a formal complaint alleging that then-Chief Information Officer Smita Patel engaged in retaliatory conduct and created false documentation. OSC policy, including Directive 58 (Anti-Harassment), requires impartial investigation of such complaints and prohibits retaliatory action. Federal law similarly protects employees from adverse action in response to protected disclosures, including under 5 U.S.C. § 2302(b)(8).

Instead of neutral review, OSC officials—including Massey, Beckett, Ahmad—tightened scrutiny of Plaintiff's daily activities, increased monitoring, and facilitated the creation of additional adverse records between June and November 2022. These actions included the imposition of probationary restrictions without legal basis, the initiation of surveillance spreadsheets to track attendance, and the issuance of a suspension notice without investigation of Plaintiff's complaints.

The government's failure to ensure neutral handling of Plaintiff's protected disclosures was a negligent breach of its duty to apply anti-harassment and whistleblower protection policies. This negligence foreseeably caused Plaintiff psychological stress, reputational damage, and medical aggravation of his chronic condition, all of which are compensable injuries under the FTCA.

### H. Negligent Retention of Unverified and Inaccurate Records Despite Correction Requests (28 U.S.C. §§ 1346(b), 2671–2680; 5 U.S.C. § 552a(d)(2), (e)(5))

The United States, through OSC, negligently retained unverified and inaccurate records concerning Plaintiff, despite repeated correction requests. Under the Privacy Act, agencies must amend or annotate records upon an individual's request, or provide a written denial. See 5 U.S.C. § 552a(d)(2), (e)(5). Agencies must also ensure records are accurate, relevant, timely, and complete.

Beginning in September 2022 and continuing through 2025, Plaintiff submitted multiple requests to correct or remove false records, including: (1) a September 13, 2022 AWOL designation, (2) a fabricated probationary status created by Ahmad in September 2022, and (3) a suspension notice dated November 11, 2022. OSC officials—including Massey and Beckett—took no action to mark these records as contested or to reconcile them with contrary evidence already in OSC's possession, including sick leave certifications, telework authorizations, and contemporaneous email approvals.

The negligent retention of false records ensured that these inaccuracies were repeatedly available to background investigators, external officials, and administrative bodies. Plaintiff was compelled to self-disclose and explain these disputed materials during federal background checks, sustaining continuing reputational and career harm.

## I. Negligent Failure to Supervise and Train Regarding Medical Records and Known Health Risks (28 U.S.C. §§ 1346(b), 2671–2680)

The United States, acting through the U.S. Office of Special Counsel (OSC), had actual knowledge of Plaintiff's chronic medical condition and its stress-related triggers. In September 2022, Plaintiff submitted medical documentation with his request for reasonable accommodation explaining that his condition was aggravated by stress and required consistent telework. OSC officials, including Leigh Ann Massey and Amy Beckett, reviewed this documentation and independently researched the condition, as later confirmed by testimony. At that point, the United States had clear notice that unmanaged stressors in Plaintiff's workplace environment created foreseeable risk of physical harm.

Despite this knowledge, the United States failed to implement mandatory safeguards required under OSC Directive 52 (Procedures for Employees with Disabilities), the Privacy Act (5 U.S.C. § 552a(e)(10)), and federal internal control standards (31 U.S.C. § 3512(b)). No training was

provided to OSC supervisors or staff regarding their obligations to securely manage medical documentation, to prevent misuse of accommodation-related records, or to minimize workplace conditions known to aggravate a documented medical restriction.

The absence of supervision and training enabled OSC staff—including Ammar Ahmad, Massey, Beckett, and others—to create and circulate unauthorized documentation portraying Plaintiff's approved sick leave and telework as misconduct. This included a September 13, 2022 AWOL designation, a fabricated probationary status, and a suspension notice dated November 11, 2022 that contained an unsupported criminal allegation under 18 U.S.C. § 1030. These records were prepared and distributed even though OSC management had direct access to medical documentation confirming Plaintiff's restrictions and telework approval.

The government's failure to enforce training and oversight obligations foreseeably exposed Plaintiff to repeated stress-inducing conditions, including being labeled AWOL while on medical leave, being subjected to extra-record surveillance of his attendance through secret spreadsheets, and being accused of criminal misconduct despite contemporaneous written authorization of his system access. These stressors directly triggered flare-ups of Plaintiff's condition, resulting in physical injury, permanent scarring, and the need for multiple medical interventions, including surgery in 2023 and again in June 2025.

The United States is liable under the Federal Tort Claims Act for negligently failing to train, supervise, and control OSC personnel in the handling of medical records and known health risks. By disregarding nondiscretionary obligations to implement medical safeguards, internal controls, and recordkeeping protections, OSC allowed foreseeable harm to occur, causing Plaintiff compensable physical and emotional injury.

**J. Negligent Infliction of Emotional Distress Through Failure to Supervise, Train, and Verify**

**Records** (28 U.S.C. §§ 1346(b), 2671–2680; 31 U.S.C. § 3512; 5 C.F.R. § 2635.101(b)(11); OSC

Directives 51, 52, 57, 202)

From June 2022 through Plaintiff's resignation in November 2022, and continuing afterward, the

United States, acting through the Office of Special Counsel (OSC), failed to exercise required

supervisory oversight, staff training, and verification of records related to Plaintiff's employment.

This failure enabled OSC staff—including Smita Patel, Ammar Ahmad, Leigh Ann Massey, Amy

Beckett, Kim Baxter, and Susan Ullman—to generate and circulate multiple inaccurate or

unauthorized records, including AWOL designations, a fabricated probationary status, and a

November 11, 2022 suspension notice that alleged criminal misconduct under 18 U.S.C. § 1030

without factual basis.

Federal internal control standards (31 U.S.C. § 3512(b)) and ethics obligations (5 C.F.R. §

2635.101(b)(11)) required OSC leadership—including Special Counsel Henry Kerner, Chief

Operating Officer Karl Kammann, and senior legal advisor Nicole Brightbill—to establish

training, oversight, and verification mechanisms to ensure records were accurate, lawfully created,

and properly authorized before use in employment or disciplinary contexts. OSC's own directives

reinforced these obligations: Directive 202 requires valid performance standards and supervisor

approval before evaluations are issued; Directive 206 mandates accurate time and attendance

designations; Directive 52 imposes safeguards for handling medical documentation; and Directive

57 prohibits retaliatory use of internal disclosures. Despite these mandates, OSC leadership neither

ensured adequate training for staff handling these matters nor verified the accuracy and lawfulness

of the disputed records before they were relied upon.

By failing to supervise personnel, train staff on compliance with statutory and policy requirements,

and verify the accuracy of records prior to use or disclosure, OSC management permitted

unqualified and unauthorized employees to create records with serious reputational and legal consequences. The foreseeable result was that Plaintiff experienced severe emotional distress, including anxiety over false allegations, humiliation from being depicted as insubordinate, fear of criminal referral under 18 U.S.C. § 1030, and worsening of his chronic medical condition due to stress.

The United States' liability under the FTCA arises from its negligent failure to supervise, train, and verify the use of employment and medical records as required by law. These omissions caused Plaintiff compensable injuries, including emotional distress, reputational damage, and aggravation of a documented medical condition, all of which were the foreseeable outcome of the government's failure to exercise the controls and oversight demanded by statute and regulation.

### K. Negligent Injury to Professional Reputation and Future Employment Prospects (28 U.S.C. §§ 1346(b), 2671–2680)

The United States negligently caused foreseeable damage to Plaintiff's professional reputation and future employment prospects by creating, retaining, and disseminating false records in violation of mandatory statutory and regulatory requirements.

OSC employees—including Beckett, Massey, and Ullman—created, retained, and disseminated false records portraying Plaintiff as absent without leave, placed on probation, and suspended for alleged unauthorized system access. These records were not verified for accuracy as required under 5 U.S.C. § 552a(e)(5)–(6) and 5 C.F.R. § 293.303, nor restricted in disclosure under § 552a(b). These internal records, including the retaliatory suspension notice circulated by Beckett, Ahmad, and Ullman circulated became part of Plaintiff's employment history despite contrary evidence confirming authorized sick leave and approved system access. ""Among the most damaging documents were unauthorized leave records that Ammar Ahmad and Amy Beckett created and circulated outside the official timekeeping system and beyond the supervisory chain of

command. These records—maintained in spreadsheet form—recast Plaintiff's approved sick leave as absenteeism and were used to justify later adverse actions, including the November 11, 2022 suspension notice. Because they were generated and circulated by personnel who were not Plaintiff's supervisors of record, the leave records violated OPM's rules under 5 C.F.R. Part 630 and OSC Directive 202, which limit performance monitoring to official systems and designated supervisors. Their creation and use outside the lawful chain of command rendered them both unauthorized and unreliable, yet OSC management failed to detect, correct, or prevent their continued use, contrary to internal control obligations under 31 U.S.C. § 3512 and statutory duties of accuracy under 5 U.S.C. § 552a(e)(5)–(6).

Critically, OSC disseminated these same records after Plaintiff had filed suit alleging Privacy Act violations based on their falsity and mishandling. Even after being formally placed on notice of the disputed records, OSC transmitted them to DOJ, the U.S. Attorney's Office, EEOC, MSPB, USDA OIG, and federal background investigators. By proceeding with dissemination after litigation had commenced, OSC acted with heightened negligence. The Privacy Act requires agencies to take "reasonable steps to assure the accuracy of records before dissemination" (5 U.S.C. § 552a(e)(6)), and OMB's implementing guidelines stress that dissemination of known-inaccurate records constitutes a continuing violation.

On July 1, 2025, Plaintiff was required to disclose and explain these false allegations during a federal background investigation. Plaintiff will be compelled to disclose the same information in future suitability and clearance proceedings, and the public record of this case will foreseeably be reviewed by agencies evaluating Plaintiff's fitness for employment. OSC's failure to apply statutory safeguards under the Privacy Act, verification obligations under 5 C.F.R. § 293.303, and its own Directives 202 and 206 foreseeably caused reputational harm, diminished career opportunities, and stigma in federal service.

These injuries arose from the government's negligent recordkeeping, verification, and disclosure practices—not from defamation—and are therefore actionable under the FTCA. See Siegert v. Gilley, 500 U.S. 226, 234 (1991) (reputational injury from government records may give rise to independent claims); Doe v. Chao, 540 U.S. 614, 618–19 (2004) (Privacy Act requires accuracy and prohibits unauthorized disclosure).

### L. Negligent Administration of Required Training and Oversight Programs (28 U.S.C. §§ 1346(b), 2671–2680)

The United States, acting through OSC, negligently failed to design, administer, and enforce training and oversight programs necessary to ensure compliance with nondiscretionary statutory and regulatory obligations. Federal agencies are required to maintain effective internal controls and compliance programs to prevent the mishandling of employee records, accommodation requests, and performance appraisals. See 31 U.S.C. § 3512(b) (requiring agency heads to establish and maintain systems of internal control); 29 U.S.C. § 791(g) (mandating affirmative disability programs, including training of staff); and 5 U.S.C. § 552a(e)(10) (requiring safeguards against unauthorized disclosure of records).

OSC had binding duties to implement such programs through its own directives, including Directive 52 (requiring training and procedural safeguards in the handling of medical accommodation records), Directive 57 (governing the handling of internal complaints and retaliation protections), and Directive 202 (requiring formal performance planning and supervisor-led evaluations). OMB Circular A-130 likewise imposes government-wide requirements for training staff in safeguarding sensitive information.

Despite these mandates, OSC did not establish or administer adequate training programs to ensure that its managers, attorneys, and staff understood their responsibilities under federal law and internal directives. Nor did it implement oversight systems to detect and correct violations. As a

result, staff without supervisory authority were permitted to create secret leave records, fabricate

probationary statuses, and circulate backdated performance plans, all without managerial

intervention or verification. Likewise, medical documentation was transmitted without restriction

or safeguards, in violation of Directive 52 and the Privacy Act.

OSC leadership, including Special Counsel Henry Kerner, Chief Operating Officer Karl

Kammann, and senior legal advisor Nicole Brightbill, were responsible for establishing agency-

wide compliance and oversight systems. Their failure to do so allowed repeated violations by

subordinates—including Ahmad, Beckett, Massey, and Ullman—to go unchecked. This systemic

failure to create and enforce training and oversight programs foreseeably led to Plaintiff's

reputational harm, denial of statutory protections, emotional distress, and physical aggravation of a

documented medical condition.

The United States is liable under the FTCA for failing to administer required training and oversight

programs designed to ensure compliance with statutory and regulatory safeguards. These

omissions represent negligence at the agency management level, not discretionary choices, and

caused compensable injury to Plaintiff.

### M. Negligent Enabling of Harmful Conduct by Delegating Employment Decisions to Unauthorized Staff (28 U.S.C. §§ 1346(b), 2671–2680)

The United States, acting through OSC leadership, negligently failed to restrict the exercise

of supervisory authority to lawfully designated officials. Federal internal control standards, 31

U.S.C. § 3512(b), and OSC Directive 202 required management to establish systems ensuring that

only assigned supervisors of record could direct employee performance, issue evaluations, or

impose attendance and reporting requirements.

Despite these obligations, OSC leadership—including Special Counsel Henry Kerner, COO

Karl Kammann, and senior legal advisor Nicole Brightbill—took no action to prevent unauthorized

staff from exercising supervisory power over Plaintiff. They permitted Ammar Ahmad, Kim

Baxter, Susan Ullman, Amy Beckett, and Leigh Ann Massey to act in supervisory roles despite

lacking formal appointment, and allowed Vance Hall's official supervisory role to be improperly

displaced. The result was a shadow chain of command that operated outside lawful structures,

creating unauthorized records such as probationary designations, secret leave records, and

performance documentation without valid supervisory approval.

This negligence was not limited to the improper acts of subordinates (addressed in Section

F), but arose from OSC leadership's own failure to design and enforce internal controls that would

have prevented unauthorized personnel from assuming supervisory powers. By failing to confine

authority within proper limits, OSC leadership enabled the creation of false and harmful records,

producing foreseeable reputational, emotional, and physical injuries.

### N.  Negligent Use of Administrative Practices in Disregard of Known Medical Risks (28 U.S.C. §§ 1346(b), 2671–2680)

By September 2022, OSC officials—including Massey and Beckett—had reviewed

Plaintiff's medical documentation submitted with his accommodation request. That documentation

explained Plaintiff's chronic skin disease, its stress-related triggers, and the medical restrictions

required. Despite this knowledge, OSC personnel imposed administrative practices incompatible

with Plaintiff's condition, including daily in-person attendance, intensified performance

monitoring, and the use of secret leave records created outside official systems to reclassify

approved leave as misconduct.

Unlike the systemic failures described in Section I, which focus on OSC's failure to

implement training and safeguard programs, the negligence here arose from day-to-day misuse of

administrative authority by OSC staff who acted with knowledge of Plaintiff's medical

vulnerabilities. This misuse contravened OSC Directive 52, which required adherence to

established processes for managing medical documentation and prohibited administrative actions inconsistent with disclosed medical restrictions.

OSC leadership, including Kerner, Kammann, and Brightbill, had an affirmative duty under 31 U.S.C. § 3512 to ensure that once medical information was received, subordinate staff did not apply policies in ways that predictably endangered employee health. Their failure to enforce that obligation allowed subordinates to use administrative tools not as neutral management devices but in ways foreseeably harmful to Plaintiff's health.

This negligence directly caused flare-ups of Plaintiff's condition, leading to permanent scarring and medical interventions, as well as emotional distress linked to fear of worsening symptoms and reputational damage from false records. These harms were the result of negligent oversight of administrative practices, not  discrimination, and are actionable under the FTCA.

## O. Negligent Institutional Failure to Identify or Respond to Patterns of Misconduct (28 U.S.C. §§ 1346(b), 2671–2680)

The United States, acting through OSC, negligently failed to detect, investigate, or correct recurring patterns of administrative misconduct by its leadership and staff. Despite Plaintiff's formal complaints in June and September 2022 alleging falsified documentation, retaliatory leave treatment, and procedural violations, OSC took no meaningful action. These failures contravened the agency's obligations under OSC Directive 57, which required impartial investigation of internal misconduct reports, and OSC Directive 58, which required OSC to act promptly to prevent harassment and retaliation once complaints were raised.

Leadership—including Special Counsel Henry Kerner, COO Karl Kammann, and senior legal advisor Nicole Brightbill—had statutory duties under 31 U.S.C. § 3512(b) to implement effective internal controls and ethical obligations under 5 C.F.R. § 2635.101(b)(11) to ensure agency processes remained impartial and free from abuse. Yet OSC allowed non-supervisory staff,

including Ahmad, Massey, Beckett, and Ullman, to fabricate probationary status, conceal

performance standards, backdate appraisals, and compile improper leave records without any

neutral oversight.

The government's failure to intervene created an institutional environment where misconduct was

normalized, grievances were ignored, and employees were left vulnerable to unchecked

administrative abuse. This systemic negligence directly enabled continued violations that caused

foreseeable reputational, physical, and emotional harm to Plaintiff.

### P. Negligent Exacerbation of a Medical Condition Through Retaliatory Practices and Failure to Act (28 U.S.C. §§ 1346(b), 2671–2680)

In September 2022, Plaintiff submitted medical documentation with his accommodation request

explaining a chronic skin disease aggravated by stress. OSC officials—including Massey and

Beckett—reviewed the physician's note and confirmed their understanding of the medical

limitations. Despite this notice, OSC imposed administrative requirements that predictably

worsened Plaintiff's condition. These included requiring in-person attendance four days per week,

refusing situational telework during flare-ups, and imposing an AWOL designation on September

13, 2022.

By allowing staff to enforce requirements incompatible with known medical restrictions, the

United States breached its duty under OSC Directive 52 (requiring protection of employee medical

documentation and accommodations), 5 U.S.C. § 552a(e)(10) (requiring safeguards for sensitive

information), and 31 U.S.C. § 3512 (requiring controls to prevent harm from negligent

administration).

These failures foreseeably exacerbated Plaintiff's condition, leading to flare-ups that required

medical intervention and caused permanent scarring. The United States is liable under the FTCA

because the harm flowed directly from negligent continuation of administrative practices after management had actual notice of medical risks.

**Q. Negligent Failure to Enforce Medical Privacy Protocols in Agency-Wide Communications**

The United States, acting through OSC, negligently failed to enforce medical privacy protocols in its internal communications. Following Plaintiff's September 2022 submission of medical documentation, Massey, acting as disability coordinator, transmitted the records to Beckett and Ahmad and Hall. Ahmad then forwarded them to Baxter and Kammann. None of these recipients were designated decision-makers (other than Hall), and most lacked any lawful role in the accommodation process.

This dissemination violated OSC Directive 52, which limited disclosure to the assigned supervisor; the Privacy Act's restrictions under 5 U.S.C. § 552a(b) and safeguard obligations under § 552a(e)(10); and the scope of routine use described in SORNs OSC-3 and OSC-4, which limit access to individuals directly responsible for adjudicating accommodation requests.

OSC failed to segregate Plaintiff's medical information, failed to label it as restricted, and allowed it to circulate across management and legal channels, where it was referenced in connection with attendance and performance scrutiny. These negligent disclosures foreseeably caused humiliation, stigma, and stress-related aggravation of Plaintiff's medical condition.

**S. Negligent Use of Administrative Tools to Monitor and Target Plaintiff Outside Formal Oversight Channels**

The United States, acting through OSC, negligently permitted the creation, maintenance, and use of records and administrative tools that were improper on their face and carried no lawful basis under statute or regulation. These included:

1. Improper leave records in the form of secret spreadsheets compiled by Ahmad and Hall between September and November 2022. These documents reclassified Plaintiff's pre-

approved sick leave as absenteeism, despite contemporaneous approvals from Hall himself, and were developed outside OSC's official timekeeping systems. Their purpose was not neutral attendance tracking but to construct a record of misconduct for use in disciplinary action.

2. Fabricated probationary designation created and imposed by Ahmad on September 8, 2022. This designation contradicted Plaintiff's service record and OPM's probationary requirements and was not supported by any lawful personnel authority. Nonetheless, OSC staff relied on this false probationary status to justify increased monitoring, daily in-office reporting, and the development of adverse records.

3. Backdated and invalid performance evaluation created in November 2022 by Massey, Beckett, and Ahmad, with Hall's nominal involvement, despite the absence of a valid performance plan under 5 U.S.C. § 4302(b)(1) and OSC Directive 202. This evaluation relied on undisclosed standards and was never provided to Plaintiff. Its creation violated OPM regulations requiring advance communication of performance expectations and OSC Directive 202, which prohibits retroactive evaluation.

Each of these documents and actions was inherently improper: the leave spreadsheets were concealed and manipulated, the probationary designation was fabricated without legal authority, and the November 2022 evaluation was invalid because it lacked lawful standards. OSC's own policies—Directive 202 (performance management), Directive 52 (reasonable accommodation), and Directive 58 (anti-harassment)—explicitly barred such practices, and federal statutes required accuracy and impartiality in records used for employment determinations. See 5 U.S.C. § 552a(e)(5)–(6); 5 C.F.R. § 2635.101(b)(8), (11).

OSC leadership, including Kammann, Baxter, Brightbill, and Ullman, were aware of these improper records and actively participated in their use, yet no corrective safeguards were imposed.

The United States failed to implement internal controls required under 31 U.S.C. § 3512 to prevent the fabrication and circulation of false administrative documents.

The foreseeable harms from these improper acts included reputational injury, emotional distress, and physical health deterioration caused by the stress of fabricated disciplinary proceedings. Because these records and administrative acts were not merely unauthorized but invalid and unlawful at their inception, their creation and use constitute negligence attributable to the United States under the FTCA.

### T. Negligent Post-Resignation Retaliatory Use of Records in Violation of Federal Records Act Standards

Following Plaintiff's resignation in November 2022, OSC negligently continued to use and disseminate disputed records, including fabricated AWOL designations and performance materials, without marking them as contested or reviewing them under proper Federal Records Act (FRA) procedures. These records were used in communications with DOJ, USDA OIG, and other oversight bodies in 2023, despite Plaintiff's pending requests for correction.

The United States failed to comply with 44 U.S.C. §§ 3101 and 3106, which require agencies to create and maintain accurate records and to safeguard against unlawful use, and § 3301, which requires records to be retained only as long as necessary for lawful government purposes. Plaintiff's correction requests under 5 U.S.C. § 552a(d)(2) were disregarded, and the records continued to circulate unamended.

The negligent post-resignation use of these records foreseeably damaged Plaintiff's reputation and career prospects, compelled repeated self-disclosure during background investigations, and caused emotional harm by perpetuating false accusations. These harms flowed directly from OSC's failure to comply with FRA and Privacy Act requirements after Plaintiff's separation from service.

### U. Negligent Failure to Implement Safeguards After Notice of Improper Delegation and Retaliation

On October 27, 2022, Plaintiff notified OSC management—via email to Vance Hall—that Ahmad, Massey, and other OSC personnel were engaging in retaliatory conduct, including unauthorized leave tracking, improper disclosure of medical information, and coercive restrictions on telework. This notice gave OSC leadership actual knowledge of ongoing violations.

Despite this, the United States, acting through OSC, failed to implement corrective safeguards or review the misconduct as required by OSC Directive 58, which mandates impartial investigation and corrective measures when retaliation is alleged. OSC also failed to act under 31 U.S.C. § 3512 (internal controls) and 5 U.S.C. § 301 (agency authority to regulate conduct). No remedial action was taken to limit Ahmad's or Beckett's influence, to cease the use of secret leave records, or to protect Plaintiff's medical information from further dissemination.

The negligent failure to act after actual notice allowed the misconduct to continue unchecked, culminating in the November 11, 2022 suspension notice based on false claims of unauthorized system access. The United States' inaction foreseeably caused Plaintiff reputational injury, emotional distress, and health-related deterioration.

Moreover, by failing to correct the false records after receiving actual notice, the United States ensured that Plaintiff would continue to face harm long after leaving OSC. Plaintiff was compelled to disclose these records during a federal suitability investigation on July 1, 2025, under penalty of perjury, and will face the same obligation in every future background check. The foreseeable and continuing nature of these harms underscores the negligence in OSC's failure to implement corrective safeguards after being placed on direct notice of misconduct.

### V. Negligent Handling of System Access and Investigatory Records
### (28 U.S.C. §§ 1346(b), 2671–2680; 5 U.S.C. § 552a(e)(5))

In September 2022, Plaintiff accessed OSC systems in the ordinary course of his duties as an email and system administrator. Following Plaintiff's resignation in November 2022, OSC staff produced email correspondence in which Vance Hall and Ammar Ahmad stated they had no knowledge of this access and had not given prior approval. These statements were later cited in support of the November 11, 2022 suspension notice, which alleged unauthorized system access.

However, in sworn MSPB testimony in January 2025, Hall admitted that Plaintiff had, in fact, informed him of the access in September 2022 and that Hall relayed this information to Ahmad. According to Hall's testimony, Ahmad initially removed Plaintiff's access but then restored it when the removal interfered with Plaintiff's ability to perform assigned system administration duties.

The United States, acting through OSC, negligently relied on inaccurate and incomplete records, failed to reconcile contradictory accounts, and used unverified material as the basis for a suspension notice. This conduct violated OSC's duty under 5 U.S.C. § 552a(e)(5) to maintain accurate, relevant, and timely records, and it breached the duty of care owed under the FTCA to verify allegations before acting on them. The dissemination of unverified allegations of "unauthorized access" caused foreseeable reputational injury, compelled disclosure during subsequent background investigations, and inflicted emotional distress on Plaintiff.

## X. Negligent Escalation of Criminal Allegations Post-Resignation

### (28 U.S.C. §§ 1346(b), 2671–2680)

After Plaintiff's resignation on November 18, 2022, OSC officials continued to assert progressively more severe allegations under 18 U.S.C. § 1030. Beckett's MSPB filings shifted from claims of "unauthorized access" to "exceeded access," then to "penetration," and ultimately to assertions that Plaintiff had "hacked" OSC systems. Hnin Khaing repeated similar claims before the EEOC in April 2025.

These post-resignation allegations were advanced without evidentiary support, were inconsistent with prior testimony acknowledging authorized access, and were not subject to internal verification. OSC leadership, including Henry Kerner, Karl Kammann, and Nicole Brightbill, failed to supervise or restrain this escalation despite their responsibility to ensure accurate filings and prevent misuse of legal proceedings.

By permitting unsupported allegations to continue after Plaintiff left the agency, the United States negligently caused foreseeable reputational harm, impaired Plaintiff's ability to obtain federal employment, and inflicted emotional distress through the recurring threat of criminal liability. Furthermore, these threats are ongoing and the agency has continued to make said allegations to other federal agencies. Because the claim rests on negligent failure to supervise and verify—not on defamation or deceit—it is cognizable under the FTCA and not barred by 28 U.S.C. § 2680(h).

## Z. Systemic Negligence and Institutional Failure of Oversight

**(28 U.S.C. §§ 1346(b), 2671–2680; 31 U.S.C. § 3512(b); OMB Circular A-123; 5 U.S.C. § 552a(e)(5), (e)(6), (e)(10); 5 U.S.C. § 4302(b)(1); 5 C.F.R. § 430.207; 5 C.F.R. § 2635.101(b)(8), (11); 5 C.F.R. pt. 630)**

The United States, acting through the U.S. Office of Special Counsel ("OSC"), owed Plaintiff a duty to implement effective internal controls, to supervise and train personnel responsible for creating and maintaining records tied to employment and reputation, to ensure accuracy and verification of records before use or disclosure, and to safeguard sensitive medical/RA information in accordance with law. These duties derive from:

- Federal internal control requirements (31 U.S.C. § 3512(b); OMB Circular A-123);

- Privacy Act obligations of accuracy, verification, and safeguards (5 U.S.C. § 552a(e)(5), (e)(6), (e)(10));

- Statutory and regulatory requirements for valid performance systems (5 U.S.C. § 4302(b)(1); 5 C.F.R. § 430.207);

- Government-wide ethics standards requiring impartiality and integrity in official processes (5 C.F.R. § 2635.101(b)(8), (11)); and

- Federal leave administration rules (5 C.F.R. pt. 630).

OSC's published directives—including Directive 202 (Performance Management), Directive 52 (Reasonable Accommodation), and Directive 58 (Anti-Harassment)—implemented these duties and required leadership oversight to ensure compliance.

Between June and November 2022, OSC repeatedly failed to meet these duties. At least four categories of records exemplify this breakdown:

1.  Improper Personnel and Performance Records. In June 2022, Smita Patel fabricated an AWOL entry while Plaintiff was on medically documented sick leave. In September 2022, Ammar Ahmad designated Plaintiff as on "probation" despite no lawful basis. In October 2022, a performance plan was fabricated after the performance year had ended and never delivered to Plaintiff. In November 2022, an evaluation relying on that backdated plan was issued and retained. These records contravened 5 U.S.C. § 4302(b)(1) and 5 C.F.R. § 430.207, which mandate prospective, supervisor-issued standards and opportunity for improvement.

2.  Improper Leave Records Created Outside Official Systems. Ahmad and Hall, under legal direction from Beckett and Ullman, developed and circulated spreadsheets outside the official time-and-attendance system that recast Plaintiff's approved and medically

documented leave as misconduct. These "shadow" records were never disclosed during employment, later surfaced in litigation, and violated OSC's duty to confine record creation to official systems, contrary to 5 U.S.C. § 552a(e)(5) and federal internal control requirements.

3.  Improper Dissemination of Medical/Accommodation Records. In September 2022, Plaintiff submitted medical documentation supporting a reasonable accommodation request. Instead of being restricted to the designated decision-maker (Hall) as required by OSC Directive 52 and OSC-3 SORN, Massey and Beckett disseminated these records by email to Ahmad, Baxter, Kammann, and Ullman. These disclosures violated the Privacy Act's safeguards (§ 552a(b), (e)(10)) and created stigma by placing health details into performance and disciplinary deliberations unrelated to medical decision-making.

4.  CFAA-Styled Allegations Without Verification. On November 11, 2022, OSC issued a suspension notice alleging "unauthorized" or "exceeding access" to government systems— terms invoking the Computer Fraud and Abuse Act (18 U.S.C. § 1030). These allegations rested on emails generated after Plaintiff's resignation stating Hall and Ahmad had not approved the access. Yet in January 2025 testimony, Hall admitted Plaintiff had informed him of the access in September 2022, that he relayed this to Ahmad, and that Ahmad revoked and then restored the access to allow Plaintiff to perform his assigned duties as email and system administrator. Despite this contradiction, OSC did not withdraw or correct the CFAA-styled allegations. In May 2023, senior OSC attorney Erik Snyder explicitly stated the agency would not withdraw the allegations "in case circumstances change."

Senior OSC officials—including Special Counsel Henry Kerner, COO Karl Kammann, and legal advisor Nicole Brightbill—were aware of these actions. Brightbill directly supervised several

officials involved in record creation and had an affirmative duty to ensure compliance. Yet

leadership failed to act: no audit of the probation designation or backdated plan was undertaken, no

privacy review was conducted after improper RA disclosures, no reconciliation of the CFAA

claims to the authorization timeline or OSC's own login banner (which expressly permitted

protected disclosures), and no neutral review of the shadow leave records was performed.

The predictable result of these systemic failures was lasting harm. Plaintiff was compelled to

disclose and explain these records in a federal background investigation on July 1, 2025, and will

face the same disclosure burden in every future suitability review. The continued retention and

dissemination of false records has stigmatized Plaintiff, diminished career prospects, inflicted

emotional distress, and exacerbated a stress-sensitive medical condition that OSC knew of from

September 2022 documentation. These were foreseeable consequences of OSC's failure to

implement and enforce statutory and regulatory safeguards.

Because these harms flowed from negligence in supervision, training, verification, and oversight—

not from  defamation—the United States is liable under the FTCA. The same facts also establish

Privacy Act violations (§ 552a(e)(5), (e)(6), (e)(10)), arbitrary and capricious conduct under the

APA, and constitutional deprivations actionable under 28 U.S.C. § 1331.

### Count 3: Increased Damages Justification Under 28 U.S.C. § 2675(b):

Plaintiff seeks an increase in the amount of damages originally presented in the

administrative tort claim pursuant to 28 U.S.C. § 2675(b), which permits a higher sum when "the

increased amount is based upon newly discovered evidence not reasonably discoverable at the time

of presenting the claim to the federal agency, or upon allegation and proof of intervening facts."

After submission of the FTCA claim, Plaintiff learned of several material developments and

obtained critical evidence that was not reasonably discoverable at the time of filing. These include:

(1) that Plaintiff was compelled to disclose false and uncorrected misconduct records during a federal background investigation on July 1, 2025, resulting in reputational and professional harm that could not have been anticipated earlier; (2) that Plaintiff experienced a stress-induced medical crisis tied to the agency's conduct, culminating in a surgical procedures and new physical injury not previously included in the administrative claim (July 2025) ; (3) that OSC officials fabricated Plaintiff's probationary status and relied on this false designation to deny procedural protections and impose retaliatory scrutiny (April 2025); (4) that OSC mischaracterized Plaintiff's approved sick leave as improper conduct (April 2025), and when the September 2022 AWOL designation failed, escalated its efforts through covert surveillance strategies—such as tracking and spreadsheet monitoring—intended to justify removal or discipline (April 2025); and (5) that these actions were not merely administrative decisions, but were directed or approved by OSC's legal staff, including General Counsel Susan Ullman, Assistant General Counsel Amy Beckett, and Deputy Special Counsel Kim Baxter, as part of a broader effort to manufacture a record of misconduct (April 2025). These facts, most of which were confirmed through discovery, sworn testimony, and documentary evidence well after the FTCA claim was filed, materially affect the scope of Plaintiff's injuries and support an increased damages claim under § 2675(b).

**Count 4: Retaliation and Suppression of First Amendment-Protected Activity**

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. Defendant U.S. Office of Special Counsel (OSC) violated the First Amendment by retaliating against Plaintiff for engaging in protected speech concerning matters of significant public concern.

On or about November 8, 2022, Plaintiff submitted reports of misconduct to the U.S. Merit Systems Protection Board (MSPB) and the Federal Bureau of Investigation (FBI). These disclosures detailed improper recordkeeping, abuse of OSC's internal personnel authorities, and

the use of retaliatory administrative actions unsupported by lawful procedures. Plaintiff submitted these reports using personal means and without direction from OSC, acting in his personal capacity as a citizen. Plaintiff's official duties as an Information Technology Specialist did not include communication with oversight bodies or the reporting of misconduct. These external disclosures were not part of any work-assigned function and were made outside OSC's command structure.

Two days after those disclosures, on November 11, 2022, Plaintiff received a Notice of Proposed Suspension. The notice alleged that Plaintiff had engaged in "unauthorized access" or "exceeded access" of OSC systems while teleworking on November 3, 2022. However, contemporaneous records showed that Plaintiff's telework request had been authorized and that system access was configured by OSC's IT department. The standard OSC log-in screen displayed to Plaintiff at the time of access contained no prohibition on the type of activity performed. Instead, it stated: "You are accessing a U.S. Government information system, which includes this computer, network, and all attached devices. You are authorized to use this system for official business. By using this system, you consent to monitoring. Unauthorized use is prohibited and may subject you to disciplinary or criminal action."

Plaintiff's use of the system fell within his assigned duties and was authorized by Vance Hall's contemporaneous approval email on September 13, 2022, as well as OSC IT's own system configuration. There were no audit log discrepancies, and the cited activity was consistent with Plaintiff's responsibilities.

During sworn testimony before the MSPB on May 17, 2023, OSC Chief Information Officer Ammar Ahmad confirmed that the proposal to suspend Plaintiff had been initiated "at the request of" OSC attorney Amy Beckett. This establishes that senior OSC legal staff triggered a disciplinary process immediately after Plaintiff disclosed the agency's misconduct to external oversight bodies.

The suspension proposal was accompanied by other negative actions closely timed with Plaintiff's protected disclosures, including creation of a backdated performance plan never provided to Plaintiff, and the imposition of coercive, unpaid after-hours remedial training. These measures were used to build a pretextual justification for discipline. In violation of OSC Directive 58 (Exhibit H), agency officials also failed to initiate any inquiry into Plaintiff's complaints of retaliation or harassment, including the June 2, June 6, and October 27, 2022 complaints naming Ahmad. Directive 58 expressly prohibits non-merit-based actions against employees and requires protective measures in such contexts.

Plaintiff's external reports addressed matters of public concern—abuse of the reasonable accommodation process, falsification of records to facilitate harassment, and systemic failures in OSC's internal reporting scheme. These were not internal disagreements about policy but issues central to government accountability and compliance with federal law.

Under Lane v. Franks, 573 U.S. 228 (2014), and Garcetti v. Ceballos, 547 U.S. 410 (2006), public employees retain First Amendment protection when they speak as private citizens on matters of public concern and when the speech is not pursuant to their official duties. Plaintiff's disclosures meet both conditions. The close temporal proximity between the disclosures and OSC's retaliatory suspension proposal provides a strong inference of retaliatory motive.

OSC has continued to maintain the false records supporting the November 2022 suspension and allegations of "unauthorized access," using them to imply potential criminal conduct in communications to other federal entities, including the MSPB and EEOC through April 2025. OSC has further stated that it would not remove the claims "in case circumstances change." If OSC truly believed a federal crime had occurred, 5 U.S.C. § 1214(e) required referral to the Attorney General, but no such referral was ever made.

The allegations also conflict with Supreme Court precedent in Van Buren v. United States, 593

U.S. 374 (2021), which held that 18 U.S.C. § 1030 (the Computer Fraud and Abuse Act) applies

only when a user obtains information they are not entitled to access at all. Plaintiff's system access

was explicitly authorized, and the OSC log-in screen and contemporaneous records confirm this

fact.

By maintaining and disseminating these allegations, implying criminal liability without lawful

basis, and refusing to correct or withdraw the records, OSC has perpetuated a credible threat of

criminal referral, inflicted reputational harm, and chilled Plaintiff's ability to exercise his First

Amendment rights to speak on matters of public concern and to petition the government.

### Count 5: Administrative Procedure Act Violations

Plaintiff reasserts and incorporates the full factual allegations set forth above and states a

claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Defendant OSC, a

federal agency subject to APA review, engaged in unlawful agency action and failed to act where

required by statute, regulation, or internal policy. Specifically, OSC created, maintained, and relied

upon fabricated or unsupported records to take enforcement actions against Plaintiff without

factual basis or adherence to governing procedures. It failed to correct or expunge disputed records

following formal objections, unlawfully disclosed sensitive and inaccurate information to internal

and external parties, and denied Plaintiff legally mandated process in the administration of

performance evaluations and accommodation requests. OSC also unlawfully invoked 5 U.S.C.

§ 1212(i) to divert internal complaints to an external entity lacking adjudicative authority, thereby

depriving Plaintiff of any meaningful resolution or judicial review. These actions and omissions

constitute both final agency action and actionable agency inaction within the meaning of §§ 704

and 706(1)–(2), and resulted in continuing legal, professional, reputational, and health-related

harm to Plaintiff. OSC's continued refusal to amend, investigate, or provide resolution to

Plaintiff's formal complaints and amendment requests constitutes final agency action under 5 U.S.C. § 704 and is reviewable under § 706(1) and (2). Each subsection below identifies a separate basis for APA review attached to a specific non-discretionary law and/or regulation.

## A. Arbitrary and Capricious Fabrication of Misconduct Allegations (5 U.S.C. § 706(2)(A)– (D); 5 U.S.C. § 552a(e)(5); 18 U.S.C. §§ 1001, 1002, 1038)

OSC generated and circulated records between October and November 2022 that described Plaintiff's conduct as unauthorized system access and framed it in terms suggesting criminal misconduct. These records included internal tracking documents and email communications produced by staff including Ammar Ahmad and Susan Ullman. The records were not preceded by any internal investigation, supervisory review, or contemporaneous fact-finding process.

On October 26, 2022, OSC supervisor Vance Hall sent an email explicitly confirming Plaintiff's system access and telework authorization. This authorization directly contradicted later records alleging that Plaintiff's access on that date was unauthorized. Despite the contradiction, the allegations were entered into OSC's internal documentation and used to support proposed disciplinary action, including a suspension notice advanced in November 2022.

The records referencing unauthorized access were retained and disseminated within OSC systems as if they were substantiated, and later appeared in materials connected to suitability assessments following Plaintiff's resignation. At no point were these allegations adjudicated or corrected, despite Plaintiff's formal objections and supporting documentation.

By maintaining records that implied violations of federal criminal statutes, including 18 U.S.C. §§ 1001, 1002, and 1038, without verifying their accuracy or subjecting them to review, OSC failed to comply with the Privacy Act's accuracy mandate, 5 U.S.C. § 552a(e)(5). Reliance on these records to propose discipline and to circulate misconduct claims in suitability and background contexts

constitutes agency action "not in accordance with law," "without observance of procedure required by law," and "in excess of statutory authority" under 5 U.S.C. § 706(2)(A)–(D).

## B. Failure to Observe Required Legal and Procedural Safeguards (5 U.S.C. § 706(2)(D); 5 U.S.C. § 552a(e); 44 U.S.C. § 3101)

OSC did not comply with statutory and internal safeguards in handling Plaintiff's performance, leave, and medical documentation. Confidential medical information was circulated outside the defined chain of responsibility. Disciplinary records were retained despite documented inaccuracies. Plaintiff was denied timely access to review and contest these materials. These practices contravened 5 U.S.C. § 552a(e)(5), (6), and (10), which require accuracy, verification, and safeguards, as well as 44 U.S.C. § 3101, which obligates agencies to maintain records that adequately document decisions and protect individual rights. OSC's Directives 52 and 202 required contemporaneous documentation, supervisory clearance, and role-based access, but these requirements were not followed. As a result, inaccurate records circulated without check, depriving Plaintiff of the procedures guaranteed under § 706(2)(D).

## C. Manipulation of Timesheet and Disciplinary Records to Fabricate Misconduct (5 U.S.C. § 706(2)(A)–(D); 5 C.F.R. § 630.1207)

In June and September 2022, OSC designated Plaintiff as AWOL despite contemporaneous medical certification and regulations permitting retroactive sick leave approval. 5 C.F.R. § 630.1207 authorizes agencies to approve sick leave after submission of documentation. Instead of processing leave under this rule, OSC staff including Ahmad and Massey created leave records reclassifying approved leave as misconduct and circulated the emails. These records were later used to justify investigative notices, HR referrals, and an unpaid suspension. Because they were inconsistent with medical documentation and statutory leave procedures, the records were arbitrary

and unsupported by substantial evidence under § 706(2)(A)–(C), and deprived Plaintiff of
protections guaranteed by law.

### D. Enforcement Actions in Excess of Statutory Authority and Without Substantial Evidence (5 U.S.C. § 706(2)(C); 5 U.S.C. §§ 4302(b)(1), 552a(e)(5))

OSC issued investigative threats and a proposed removal despite not having issued Plaintiff a valid
performance plan. Under 5 U.S.C. § 4302(b)(1) and OPM regulation 5 C.F.R. § 430.206,
performance expectations must be communicated at the start of the rating cycle. Instead, OSC
relied on records created after the period ended and unsupported by supervisor sign-off. These
performance records, inaccurate under § 552a(e)(5), were used to justify enforcement actions
outside OSC's statutory authority. Actions taken on such a basis exceeded jurisdiction under §
706(2)(C), were not in accordance with law under § 706(2)(A), and disregarded procedures
required by § 706(2)(D).

### E. Post-Resignation Retention and Dissemination of False Records Without Statutory Authority (5 U.S.C. § 706(2)(A)–(D); 5 U.S.C. § 552a(e)(5); OMB Circular A-108)

After Plaintiff's resignation in November 2022, OSC retained and disclosed disputed records
including AWOL charges, probationary status, and misconduct allegations. These records were
accessed in Plaintiff's July 1, 2025 federal background investigation. 5 U.S.C. § 552a(e)(5) and
OMB Circular A-108 require agencies to ensure records shared externally are accurate, relevant,
and timely. OSC did not update or remove disputed materials prior to disclosure, causing
reputational harm and impairing future employment. This continuing use of inaccurate records
constitutes final agency action reviewable under §§ 706(2)(A)–(D).

**F. Improper Invocation of 5 U.S.C. § 1212(i) to Divert Internal Complaints Without**

**Procedural Safeguards (5 U.S.C. § 706(2)(A)–(D); OSC Directive 57)**

In June and November 2022, Plaintiff submitted internal complaints regarding retaliation and falsified records. Rather than adjudicate these complaints under internal enforcement procedures, OSC invoked § 1212(i) and diverted them to the USDA Inspector General. OSC provided no notice of outcome or procedural rights. OSC Directive 57 does not authorize diversion in place of internal adjudication. GAO has repeatedly explained that OIG inquiries are investigatory only and provide no corrective channels. The use of § 1212(i) in this manner denied Plaintiff internal review and meaningful recourse, constituting arbitrary action, excess of authority, and denial of required procedures under §§ 706(2)(A), (C), and (D).

**G. Failure to Maintain a Lawful System of Records (5 U.S.C. § 706(2)(A)–(D); 5 U.S.C.**

**§ 552a(e)(4); OMB Circular A-108)**

OSC used informal mechanisms—email chains, spreadsheets, and ad hoc tracking files—to document Plaintiff's attendance, medical information, and alleged misconduct. These repositories were not listed in OSC's published SORNs as required by § 552a(e)(4) and OMB Circular A-108. Records stored in such informal channels evaded Privacy Act safeguards and denied Plaintiff notice, correction rights, and review. Actions such as proposed removal and suspension, which relied on these informal records, were unsupported by a lawfully maintained system and are unlawful under §§ 706(2)(A)–(D).

**H. Failure to Comply with Statutory Performance Documentation Obligations (5 U.S.C.**

**§ 706(2)(A)–(D); 5 U.S.C. § 4302(b)(1); 5 C.F.R. § 430.206)**

OSC did not issue Plaintiff a performance plan at the beginning of the rating period, as required by § 4302(b)(1) and § 430.206. Instead, a plan was drafted and dated October 19, 2022, after the

period had closed, and used to fabricate deficiencies. This plan was not provided to Plaintiff, lacked acknowledgment, and was inconsistent with Directive 202, which mandates pre-period collaboration. The failure to provide a lawful plan deprived Plaintiff of notice and opportunity to improve. Records generated under this process were unlawful under §§ 706(2)(A), (C), and (D).

## I. Unlawful Retention and Dissemination of False Records to Third Parties Without Safeguards (5 U.S.C. § 706(2)(A)–(D); 5 U.S.C. § 552a(e)(5), (10))

OSC disseminated false information concerning Plaintiff's leave, telework, alleged criminal conduct, and alleged misconduct to third parties, including background investigators and other federal agencies before and after Plaintiff's resignation. These records were not corrected or safeguarded as required by § 552a(e)(5) and (e)(10). Dissemination of inaccurate records, both internally and externally, contributed to stigma and impaired Plaintiff's employment opportunities. This constitutes unlawful agency action under §§ 706(2)(A)–(D).

## J. Structural Deprivation of Remedies Through Improper Use of § 1212(i) (5 U.S.C. § 706(2)(A)–(D); 5 U.S.C. § 1212(i))

OSC relied exclusively on § 1212(i) to process Plaintiff's misconduct complaints, even though § 1212(i) provides no adjudication, appeal, or corrective channels. Plaintiff's was forced to submit complaints to the USDA OIG, which confirmed it lacks authority to issue determinations to complainants and emphasizing that it works on behalf of the OSC. This diversion created a procedural void that foreclosed both internal and judicial review. The structural deprivation of remedies caused by this practice is arbitrary, contrary to law, and in excess of authority under §§ 706(2)(A)–(D).

**K. Failure to Correct or Expunge False Records (5 U.S.C. § 706(1); 5 U.S.C. § 552a(e)(5); OSC Directive 202; OMB Guidelines, 40 Fed. Reg. 28948 (July 9, 1975))**

False records—including AWOL designations, probationary status, and misconduct allegations—were distributed within OSC to staff and managers outside Plaintiff's chain of command, including attorneys and senior officials with no need-to-know. Under § 552a(b), internal dissemination must be limited to those with a legitimate purpose. OSC took no steps to restrict access or issue corrections, despite multiple requests. The circulation of these records in an agency of fewer than 200 employees created an environment of suspicion and isolation that damaged Plaintiff's professional relationships. The failure to contain dissemination is reviewable under § 706(2)(A) and (D).

**L. Arbitrary Creation and Use of Fabricated Probationary Status (5 U.S.C. § 706(2)(A)–(D); 5 C.F.R. § 315.801; OSC Directive 202)**

On September 8, 2022, OSC staff began referring to Plaintiff as a probationary employee even though Plaintiff had completed the probationary period and had not been placed in a new cycle under § 315.801. No SF-50 or formal notice was issued. Nonetheless, the probation designation was used to restrict telework, mandate in-person attendance, and justify heightened scrutiny. Because OSC lacked statutory authority to impose probationary status without lawful appointment procedures, the designation was arbitrary, exceeded authority, and denied required protections under §§ 706(2)(A)–(D).

**M. Failure to Prevent Entry of False Records into Suitability Investigations (5 U.S.C. § 706(1), § 706(2)(A); 5 U.S.C. § 552a(e)(5); OPM Suitability Guidelines, 5 C.F.R. Part 731)**

By July 1, 2025, OSC had not corrected or annotated fabricated AWOL entries, performance records, or probationary status. These materials were accessible to background investigators as part

of a federal suitability review under 5 C.F.R. Part 731. OSC had statutory obligations under §
552a(e)(5) to ensure accuracy before such determinations. Despite repeated requests, OSC took no
corrective steps. The entry of these records into a suitability investigation constitutes unlawful
withholding under § 706(1) and arbitrary action under § 706(2)(A).

### N. Failure to Correct False Performance and Conduct Records (5 U.S.C. §§ 706(1), 706(2)(A); 5 U.S.C. § 552a(e)(5); OSC Directive 202)

Plaintiff submitted evidence contradicting records describing work deficiencies, AWOL status, and
misconduct. Despite these objections, OSC retained the records uncorrected and available to
internal staff and investigators. Under § 552a(e)(5) and Directive 202, the agency was required to
ensure accuracy and respond to correction requests. Its refusal to do so constitutes unlawful
withholding under § 706(1) and arbitrary action under § 706(2)(A).

### O. Failure to Prevent Internal Dissemination of False Records Resulting in Reputational Harm (5 U.S.C. §§ 706(1), 706(2)(A); 5 U.S.C. § 552a(b); OSC Directive 202)

False records—including AWOL designations, probationary status, and misconduct allegations—
were distributed within OSC to staff and managers outside Plaintiff's chain of command, including
attorneys and senior officials with no need-to-know. Under § 552a(b), internal dissemination must
be limited to those with a legitimate purpose. OSC took no steps to restrict access or issue
corrections, despite multiple requests. The circulation of these records in an agency of fewer than
200 employees created an environment of suspicion and isolation that damaged Plaintiff's
professional relationships. The failure to contain dissemination is reviewable under § 706(2)(A)
and (D).

### P.  Procedural Violations in Handling Medical Accommodation and Records (Non-Discrimination Claim)

In 2022, Plaintiff submitted medical documentation in support of a telework request under OSC Directive 52. The records were circulated to officials not identified as accommodation processors and were not stored in OSC's designated medical repository. OSC did not issue a written determination or provide appeal rights. These actions violated Directive 52, 5 C.F.R. §§ 339.301–.306, and SORN OSC-3, which require secure storage, role-based access, and notice. By handling Plaintiff's medical records informally and denying the procedures guaranteed by regulation, OSC acted arbitrarily and without observance of procedure required by law under §§ 706(2)(A), (D). This claim does not allege discrimination but challenges unlawful recordhandling.

### Q. Failure to Prevent Entry of False Records into Suitability Investigations (5 U.S.C. § 706(1) and (2); 5 U.S.C. § 552a(e)(5))

Despite Plaintiff's objections, OSC did not remove or annotate a fabricated probationary designation, backdated performance evaluation, or false AWOL entries before July 2025. These records were accessible to suitability investigators and required Plaintiff to disclose and explain them. Under § 552a(e)(5), OSC had a duty to ensure accuracy in records relied on for suitability. Its failure to correct or prevent dissemination constitutes unlawful inaction under § 706(1) and arbitrary action under § 706(2)(A).

### R. Failure to Correct False Performance and Attendance Records (5 U.S.C. § 706(1) and (2); 5 U.S.C. § 552a(e)(5); 5 C.F.R. § 293.404(b))

Records created after the performance period, allegations of leave misuse unsupported by documentation, and AWOL designations despite medical certification were retained in OSC's systems. Plaintiff submitted objections and evidence demonstrating their inaccuracy. Under §

293.404(b) and § 552a(e)(5), OSC was required to ensure accuracy and correct errors. OSC's refusal to amend or expunge the entries constitutes unlawful withholding under § 706(1) and arbitrary reliance under § 706(2)(A).

### S. Failure to Prevent Internal Dissemination of False Records Resulting in Ongoing Reputational Harm (5 U.S.C. § 706(2)(A)–(D); 5 U.S.C. § 552a(b))

False records including probationary status, attendance spreadsheets, and misconduct allegations were distributed to officials without supervisory authority, including Massey, Beckett, Brightbill, and Baxter. This internal dissemination exceeded the Privacy Act's limits under § 552a(b). In a workforce of fewer than 200, circulation of these records created reputational stigma and professional isolation. OSC's failure to restrict or correct the dissemination constitutes arbitrary action and denial of statutory safeguards under §§ 706(2)(A)–(D).

### T. Procedural Violations in Handling Medical Records (5 U.S.C. §§ 706(2)(A), (D); 29 C.F.R. § 1614.203(d); 5 C.F.R. §§ 339.301–339.306; OSC Directive 52)

In 2022, Plaintiff submitted medical documentation in support of a workplace accommodation request. OSC Directive 52 and 5 C.F.R. §§ 339.301–.306 required that such information be processed through the Disability Program Manager, safeguarded in a secure medical repository, and reviewed only by designated staff. OSC instead circulated Plaintiff's documentation by email to senior managers and attorneys without defined roles in the process. No written determination or appeal rights were issued, and the records were not segregated in OSC's published system of records (OSC-3, 86 Fed. Reg. 67462). By processing accommodation materials outside published systems and safeguards, OSC failed to observe required procedures and acted "not in accordance with law" under § 706(2)(A) and (D).

## U. Retention and Reliance on Records Created Without Statutory Notice or Acknowledgment Procedures (5 U.S.C. §§ 706(2)(A), 552a(e)(4), 5 C.F.R. § 293.404(a))

OSC relied upon and maintained performance and conduct-related records that were never shared with Plaintiff, created without acknowledgment, and never certified through proper channels. These records include disciplinary tracking spreadsheets generated by management, informal performance assessments, and a fabricated performance appraisal that was backdated after the evaluation period and never delivered. 5 C.F.R. § 293.404(a) mandates that employees be allowed to review and acknowledge performance-related documents before they become part of an official record. OSC disregarded this requirement, resulting in Plaintiff's exclusion from key processes and the denial of opportunity to correct the record. These records were later used to justify disciplinary proposals and were disclosed to other federal agencies. Their creation and retention without procedural safeguards constitute arbitrary and capricious conduct under 5 U.S.C. § 706(2)(A), as well as a violation of § 552a(e)(4) and internal record maintenance rules.

## V. Failure to Document or Track Internal Investigations in Accordance with OSC Directive 57 (5 U.S.C. § 706(1) and (2); OSC Directive 57)

Between September and November 2022, Plaintiff submitted misconduct and retaliation complaints. OSC Directive 57 requires such complaints to be assigned, tracked, and documented with outcomes. In Plaintiff's case, OSC did not assign an investigator, did not maintain records of findings, and did not respond in writing. This omission left Plaintiff without any procedural recourse and allowed retaliation to escalate. The failure to track or respond constitutes agency inaction under § 706(1) and denial of procedural safeguards under § 706(2)(D).

## W. Improper Use of Informal Oral Instructions as Substitute for Statutory Performance Management Procedures (5 U.S.C. §§ 706(2)(A), 4302(b)(1); 5 C.F.R. § 430.206)

Supervisors and agency executives communicated shifting performance expectations, standards, and dates through emails and conversations rather than issuing a written plan at the start of the appraisal period. 5 U.S.C. § 4302(b)(1) and 5 C.F.R. § 430.206 require written performance plans with notice and opportunity to improve. Instead, OSC later attempted to backdate a plan after the period ended. This deprived Plaintiff of statutory protections and rendered reliance on the plan arbitrary under § 706(2)(A) and procedurally defective under § 706(2)(D).

X. Failure to Promulgate or Enforce Internal Procedural Standards Governing the Handling of Retaliation and Harassment Claims (5 U.S.C. §§ 706(1), (2); OSC Directives 52 and 57)

Plaintiff submitted multiple complaints beginning September 2022 regarding probation misclassification, falsified records, and denial of accommodation. Because implicated officials were senior managers or attorneys, OSC lacked an impartial mechanism to review them. Directive 57 requires tracking and assignment of retaliation complaints, but OSC took no such steps. This procedural void left Plaintiff without internal protection and constitutes unlawful inaction under § 706(1) and arbitrary action under § 706(2)(A).

## Y. Improper Delegation of Record Maintenance Responsibilities to Unauthorized Officials (5 U.S.C. §§ 706(2)(A), (C), (D); 5 C.F.R. §§ 293.302–.304; 5 C.F.R. § 339.302)

OSC improperly permitted non-supervisory staff and legal personnel—including Massey and Ullman—to access, maintain, and manipulate Plaintiff's performance and medical records without legal authority. 5 C.F.R. § 293.302–.304 requires that only properly designated officials with supervisory authority handle personnel record maintenance, and 5 C.F.R. § 339.302 requires strict access controls for medical documentation. OSC circumvented these protections by allowing

Massey to access and distribute confidential information and participate in performance oversight, even though she lacked managerial authority and had not been assigned as a designated accommodation official. The agency's failure to restrict record access to authorized individuals constitutes a breach of multiple regulatory duties and arbitrary agency conduct under 5 U.S.C. § 706(2)(A), (C), and (D).

### Z. Systemic Procedural Breakdown in Implementing 5 U.S.C. § 1212(i) Complaints from OSC Employees (5 U.S.C. § 706(1), (2)(A), (C), (D); 5 U.S.C. § 1212(i); OSC Directive 57)

Beginning in June 2022, Plaintiff submitted internal disclosures regarding retaliation and record falsification. OSC processed these under 5 U.S.C. § 1212(i) by referring them to the USDA OIG. OSC officials, including Amy Beckett and Susan Ullman, were aware of the disclosures and contemporaneously escalated scrutiny of Plaintiff. Despite statutory and internal policy requirements, OSC did not provide Plaintiff with notice of the referral, maintain records of the referral or outcome, or document investigative findings as required by OSC Directive 57. Plaintiff was denied access to any results and had no opportunity to respond. This failure to apply procedural safeguards left the disclosures without meaningful review, constituting agency inaction under § 706(1) and arbitrary, jurisdictionally defective process under § 706(2)(A), (C), and (D).

### AA. Unlawful Agency Action Based on Falsified or False Records (5 U.S.C. § 706(2)(A); 18 U.S.C. §§ 1001, 1519)

OSC created and retained records of alleged misconduct and performance deficiencies that were inconsistent with contemporaneous documentation. These included AWOL charges entered despite medical certification of leave, a probationary designation unsupported by any SF-50, and a performance appraisal backdated after the evaluation period. Federal regulations require accuracy and contemporaneous support for personnel records. See 5 U.S.C. § 552a(e)(5); 5 C.F.R. Part 293.

Federal law prohibits fabrication or concealment of official records (18 U.S.C. §§ 1001, 1519), underscoring the legal significance of such defects, though not privately enforceable here. OSC relied on these records to justify internal disciplinary planning and later provided them to suitability investigators in 2025. This reliance on unsupported and inaccurate records was not in accordance with law under § 706(2)(A).

## AB. Arbitrary and Retaliatory Agency Action Constituting Conspiracy to Violate Civil Rights (5 U.S.C. § 706(2)(A)–(D); 18 U.S.C. § 241)

OSC officials, including Beckett, Ullman, and Massey, jointly acted to mischaracterize Plaintiff's leave and performance status. These actions included circulating AWOL claims despite valid medical certifications and labeling Plaintiff "probationary" without statutory basis. Such conduct interfered with rights protected by 5 U.S.C. § 2302(b)(8)–(9) and resembled conduct prohibited by 18 U.S.C. § 241, which, while not privately enforceable, demonstrates that the actions were contrary to law. The combined effect was to deprive Plaintiff of statutory protections, constituting arbitrary agency action under § 706(2)(A), excess of statutory jurisdiction under § 706(2)(C), and failure to observe required procedures under § 706(2)(D).

## AC. Agency Use of False Information to Threaten Criminal Referral (5 U.S.C. § 706(2)(A); 18 U.S.C. §§ 1038, 872)

In November 2022, OSC issued a suspension notice citing unauthorized system access as misconduct, even though Vance Hall had contemporaneously authorized Plaintiff's access and telework on October 26, 2022. The suspension notice was framed in language implying criminal liability. Federal law prohibits dissemination of false criminal allegations (18 U.S.C. § 1038) and misuse of authority to compel compliance (18 U.S.C. § 872). While those provisions are not privately enforceable, they provide benchmarks showing OSC's notice was not in accordance with

law under § 706(2)(A). The use of unverified allegations in a manner suggesting criminal referral undermined Plaintiff's ability to exercise procedural rights and triggered medical stress-related injury.

### AD. Concealment and Selective Disclosure of Material Records Violating Legal Process (5 U.S.C. § 706(1), (2)(A), (2)(D); 18 U.S.C. § 2071)

OSC withheld records relevant to Plaintiff's defense, including internal leave spreadsheets and performance planning documents, during his employment and before the MSPB. These records were later disclosed in EEOC proceedings in 2025, revealing their prior nondisclosure. Directive 202 and § 552a(e)(10) require accurate accounting of records and safeguards against concealment. The concealment of documents parallels the prohibition in 18 U.S.C. § 2071 against destruction or concealment of official records. While not enforceable here, it demonstrates that OSC's omissions were contrary to law. The agency's failure to disclose records when relevant constitutes unlawful inaction under § 706(1) and procedural violation under § 706(2)(D).

### AE. Structural Reprisal for Protected Activity in Violation of 5 U.S.C. § 2302(b)(8)–(9) (APA §§ 706(2)(A), (C), (D))

Plaintiff engaged in protected activities, including accommodation requests, disclosures to the MSPB and OIG under § 1212(i), and internal harassment complaints. Following these, OSC imposed a fabricated probationary status, initiated false AWOL claims, and pursued disciplinary actions unsupported by evidence. Although § 2302(b)(8)–(9) ordinarily falls under MSPB enforcement, here the retaliation was carried out by OSC senior officials themselves, leaving Plaintiff with no viable internal forum. See Spagnola v. Mathis, 859 F.2d 223, 228 (D.C. Cir. 1988). These actions were not in accordance with law under § 706(2)(A), exceeded statutory jurisdiction under § 706(2)(C), and lacked required procedure under § 706(2)(D).

### AF. Failure to Implement Internal Controls to Protect PII in Violation of 5 U.S.C. § 301 and 44 U.S.C. § 3506 (APA §§ 706(1), (2)(A))

OSC did not implement adequate controls to safeguard Plaintiff's personally identifiable information, including medical data and leave records. Staff, including Massey and Ahmad, shared this information with personnel lacking a need-to-know, without audit logs or access safeguards. Agencies are required to establish and maintain procedures for safeguarding confidential information under 5 U.S.C. § 301, 44 U.S.C. § 3506, and OMB Circular A-130. OSC's absence of controls constitutes agency inaction under § 706(1) and arbitrary action not in accordance with law under § 706(2)(A), resulting in reputational and medical harm.

### AG. Improper Delegation of Supervisory and Investigative Authority Without Statutory Basis (5 U.S.C. § 706(2)(C), (D))

Authority to issue performance instructions and oversee accommodation processes is limited by statute and regulation. 5 U.S.C. § 4302(b) and 5 C.F.R. §§ 293.302–.304 require proper supervisory delegation, and Directive 52 limits handling of medical information to designated officials. OSC permitted Ahmad, who was not Plaintiff's supervisor, to impose probationary conditions and investigate performance; Massey and Ullman participated in medical decision-making despite lacking statutory authority. These actions exceeded OSC's jurisdiction under § 706(2)(C) and were undertaken without observance of required procedures under § 706(2)(D).

### AH. Pattern of Procedural Evasion Through Constructive Nonresponse (5 U.S.C. § 706(1))

Between August 2022 and July 2025, Plaintiff submitted multiple written and verbal requests to correct inaccurate records, investigate harassment, and enforce internal policy obligations. OSC did not provide written responses, issue determinations, or initiate corrective action. Under the Privacy Act, agencies must respond to amendment requests and provide procedures for appeal. See

5 U.S.C. § 552a(d), (f). OSC's failure to respond constituted unlawful withholding of required

action under § 706(1) and effectively denied Plaintiff access to statutory protections.

## AI. Failure to Segregate Medical Records and Maintain System Integrity (5 U.S.C. § 706(1); 44 U.S.C. § 3544, 5 U.S.C. § 552a(e)(10))

Directive 52 and § 552a(e)(10) require agencies to segregate medical records and maintain

safeguards. OSC did not isolate Plaintiff's health documentation from unrelated personnel systems.

Instead, Massey and Ahmad circulated HS-related medical details to unauthorized managers,

where they were later used in negative action planning. OSC's failure to segregate medical data

violated its statutory and regulatory duties, constituting unlawful inaction under § 706(1) and

resulting in improper discipline and reputational injury.

## AJ. Failure to Initiate Required Internal Investigations Following Harassment and Retaliation Reports (5 U.S.C. § 706(1); OSC Policy 57)

On June 2, 2022, Plaintiff reported harassment by Smita Patel, followed by disclosures of

retaliatory treatment. OSC Directive 57 requires tracking, assignment, and written outcomes for

such complaints. OSC did not assign an investigator, document findings, or provide written

responses. This omission violated the agency's duty under Directive 57 and contradicted statutory

whistleblower protection policies in 5 U.S.C. § 2302. The failure to act constitutes inaction

unlawfully withheld under § 706(1).

## AK. Arbitrary Use of Agency Resources for Unlawful Objectives (5 U.S.C. § 706(2)(A)–(D))

Between June and November 2022, OSC diverted staff time and resources toward activities

unsupported by law or regulation. This included designating Plaintiff as "probationary" without

basis, delaying issuance of a performance plan until after the appraisal period, and creating

backdated standards in violation of 5 U.S.C. § 4302(b)(1) and Directive 202. OSC staff also

pursued suspension based on unauthorized access allegations contradicted by contemporaneous approval emails from Vance Hall. Investigative resources were deployed without verification of evidence, contrary to Directive 57. Ahmad and Ullman further assigned duties outside Plaintiff's position of record without approvals required under Directive 206.

These actions redirected agency resources from legitimate functions to procedurally invalid objectives. They were arbitrary under § 706(2)(A), exceeded statutory jurisdiction under § 706(2)(C), failed to observe required procedures under § 706(2)(D), and constituted abuse of discretion under the APA.

### AL. Arbitrary and Capricious Use of Contradictory System Access Allegations (5 U.S.C. § 706(2)(A))

OSC's treatment of Plaintiff's system access allegations was arbitrary and capricious within the meaning of the Administrative Procedure Act. The agency first relied on email statements asserting that supervisors had no knowledge or approval of Plaintiff's access to justify a suspension notice. Later testimony by those same supervisors acknowledged both awareness of and authorization for the access, as well as its restoration when necessary for Plaintiff to complete his assigned duties.

By failing to maintain a consistent position, verify evidence, or provide Plaintiff notice and an opportunity to respond, OSC acted without rational basis. The shifting and contradictory characterizations of the same access event—from "unauthorized access" to "exceeded access," then "penetration," and eventually "hacking"—demonstrate an unstable and unsupported record of decision-making. Agency action based on irreconcilable accounts, without factual substantiation, is arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2)(A).

**AM. Arbitrary and Capricious Invocation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

The Office of Special Counsel fabricated and retained records alleging that Plaintiff committed criminal violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, by "unauthorized" or "exceeding" access to OSC computer systems. On November 11, 2022, OSC issued a suspension notice alleging that Plaintiff had engaged in unauthorized access, invoking CFAA terminology. These records were created after Plaintiff made disclosures to the MSPB, USDA OIG, and FBI regarding OSC misconduct.

OSC's own Directive 105, printed on every system login screen, confirms that use of OSC systems includes authorized access for job duties and for protected disclosures under OSC Directive 51. Plaintiff, as OSC's email and systems administrator, accessed systems within the scope of his duties and with contemporaneous approval from his direct supervisor, Vance Hall. Email correspondence provided to Amy Beckett in December 2022 confirmed that Hall and Ahmad initially denied prior knowledge of Plaintiff's access. However, in sworn testimony before the MSPB in January 2025, Hall admitted that he had, in fact, been informed by Plaintiff and had conveyed this to Ahmad, who temporarily revoked and then restored the access to allow Plaintiff to perform required duties.

Despite this evidence, OSC retained the November 2022 suspension notice and continued to escalate its language in subsequent litigation, with Beckett asserting that Plaintiff had "penetrated" OSC systems and "hacked" agency resources, and with OSC counsel Hnin Khaing repeating these accusations before the EEOC in April 2025. No effort was made to verify accuracy before dissemination to DOJ, MSPB, EEOC, or background investigators.

These actions were arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) and in excess of OSC's statutory jurisdiction under § 706(2)(C). They disregarded binding precedent in

Van Buren v. United States, 141 S. Ct. 1648 (2021), which held that "exceeds authorized access" does not encompass activity within the scope of ordinary job functions. OSC's reliance on fabricated records to invoke CFAA against Plaintiff had no basis in law and constitutes final agency action with ongoing legal and reputational consequences.

### AN. Fabricated Probation and Performance Periods Beyond Statutory Authority

OSC staff, including Ammar Ahmad and Leigh Ann Massey, created and enforced a probationary status for Plaintiff beginning September 8, 2022, despite Plaintiff having completed his formal probationary period months earlier. This fabricated probation was used to justify daily in-person reporting requirements, denial of telework, and escalated attendance scrutiny. OSC leadership—including Beckett, Brightbill, and Ullman—were aware of this designation but failed to correct it.

On October 19, 2022, OSC staff also fabricated a performance plan for a period that had already ended, contrary to OSC Directive 202 § 7.3 and OPM regulations at 5 U.S.C. § 4302(b)(1). This plan was never provided to Plaintiff, lacked required supervisor certification under 5 C.F.R. § 430.207, and was later used as the basis for a November 2022 evaluation created outside any lawful process.

By creating probationary designations and performance records outside the statutory and regulatory framework, OSC acted "in excess of statutory jurisdiction, authority, or limitations" within the meaning of 5 U.S.C. § 706(2)(C). The fabricated probation and retroactive evaluation deprived Plaintiff of procedural safeguards guaranteed under the CSRA and OPM regulations while subjecting him to unauthorized administrative burdens. These records continue to be maintained and disseminated by OSC, causing ongoing reputational harm.

**AO. Improper Creation of Extraneous Leave Records Outside Official Systems**

Between August and November 2022, OSC staff Vance Hall and Ammar Ahmad created spreadsheets tracking Plaintiff's leave usage outside of OSC's official time and attendance system. These extraneous records reframed legitimate, approved sick leave as evidence of absenteeism or misconduct. The spreadsheets were circulated internally among Beckett, Ullman, and other OSC officials and later disclosed in April 2025 during EEOC discovery, despite never having been shared with Plaintiff during his employment.

The use of extraneous leave records contravened OSC Directive 202, which requires official leave records to be maintained through the agency's designated system, and violated 5 U.S.C. § 552a(e)(5), which mandates that agencies maintain accurate, complete, and relevant records before using them in personnel actions. These records were also used in connection with the fabricated probationary designation and the backdated performance appraisal to support the November 2022 suspension notice.

The creation and use of these records was arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A), as well as in violation of OSC's statutory obligations to maintain records in an authorized and verifiable manner. Their concealment from Plaintiff during his employment and later use in litigation further demonstrates that the records were fabricated for retaliatory purposes rather than legitimate administrative need.

**Count 6: Facial Challenge to 5 U.S.C. § 1212(i) Under the Fifth Amendment Due Process Clause**

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. Plaintiff brings a facial constitutional challenge to 5 U.S.C. § 1212(i) as implemented by the U.S. Office of Special Counsel (OSC), asserting that the statute, on its face, violates the Fifth Amendment Due Process Clause by depriving OSC employees of any judicially

reviewable, constitutionally adequate process for reporting prohibited personnel practices (PPPs), misconduct, or abuse within their own agency.

Section 1212(i) authorizes OSC to obtain "investigative support" from an Inspector General (IG) but does not expressly authorize the delegation or elimination of OSC's statutory or constitutional responsibilities under 5 U.S.C. §§ 1214–1215. Nor does the statutory text authorize the substitution of the Inspector General's limited authority for the procedural guarantees embedded in the CSRA and WPA enforcement framework. Nonetheless, OSC applies § 1212(i) as an exclusive mechanism for handling internal complaints, bypassing its investigatory obligations and neutral review structures.

As implemented by OSC through non-public arrangements such as its Memorandum of Understanding with the USDA OIG, this statute creates a process that lacks any adjudicatory guarantees. Unlike the protections afforded to employees in other agencies, OSC employees are denied access to internal mechanisms or neutral review. The IG is not obligated to investigate, take action, provide findings, or even notify complainants. See 5 U.S.C. app. §§ 2, 7(b). These omissions render the scheme facially invalid under Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), which held that process must be "constitutionally fair" and cannot arbitrarily deprive individuals of redress.

Further, by placing PPP and whistleblower complaints into a process without statutory enforcement authority or review, OSC's structure forecloses judicial access, thereby violating separation of powers and the unconstitutional conditions doctrine. The Major Questions Doctrine, as reaffirmed in West Virginia v. EPA, 597 U.S. 697 (2022), and Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), bars agencies from assuming such transformative authority absent clear congressional authorization. Section 1212(i) contains no such authorization to

eliminate due process, remove judicial review, or substitute OSC's investigatory mandates with an ineffective third party.

### AP. Reliance on False Records in Violation of 18 U.S.C. §§ 1001 and 1018

### (5 U.S.C. §§ 706(2)(A), (C))

The Administrative Procedure Act requires courts to set aside agency actions that are arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Agency conduct also exceeds lawful authority when it rests on actions prohibited by federal statute. 5 U.S.C. § 706(2)(C). Federal criminal law bars federal officials from creating or using false statements or official writings in their official capacity. 18 U.S.C. § 1001 prohibits the making or use of materially false writings in matters within federal jurisdiction, and 18 U.S.C. § 1018 prohibits public officials from issuing false certificates or documents.

Between June and November 2022, OSC officials created, maintained, and disseminated documents that carried official weight but were materially inaccurate:

1. On June 3, 2022, former CIO Smita Patel entered an AWOL designation despite contemporaneous sick leave documentation permitting post-approval under OPM regulations.

2. In September 2022, CIO Ammar Ahmad circulated records classifying Plaintiff as probationary, even though Plaintiff's probationary period had ended under 5 U.S.C. § 3321 and 5 C.F.R. Part 315.

3. On October 19, 2022, OSC staff produced a performance plan dated after the close of the performance period, contrary to OSC Directive 202 and OPM rules requiring standards at the beginning of a cycle.

4. In October–November 2022, OSC officials drafted a performance evaluation based on that invalid plan, backdating it to suggest contemporaneous validity.

119

5.    In November 2022, Amy Beckett through Ammar Ahmad issued a suspension

notice alleging "unauthorized access." The allegation framed Plaintiff's actions as a

potential criminal violation of 18 U.S.C. § 1030, even though contemporaneous

email records show that Supervisor Vance Hall had explicitly authorized Plaintiff's

access and telework on or around September 27, 2022.

6.    Following Plaintiff's resignation, OSC staff including Beckett and Ahmad

transmitted internal referral materials under 5 U.S.C. § 1212(i) to the USDA Office

of Inspector General that incorporated these same false records, ensuring that they

were diverted into a process with no judicial review. Some of these referrals

characterized Plaintiff's system access and timesheet records in ways that suggested

criminal misconduct, despite contradictory evidence in OSC's possession.

Each of these documents was generated or transmitted as if it were an official record of

OSC, and each was disseminated internally and externally without verification or annotation

despite Plaintiff's formal objections. By relying on documents that carried the form of official

records but were materially inaccurate, and by framing ordinary administrative matters as potential

criminal conduct, OSC acted contrary to 18 U.S.C. §§ 1001 and 1018. Under the APA, this

constitutes agency action "not in accordance with law," 5 U.S.C. § 706(2)(A), and action "in

excess of statutory authority," 5 U.S.C. § 706(2)(C).

### Count 7: As-Applied Procedural Due Process Challenge to OSC's Implementation of § 1212(i)

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the

basis for this Count.

As applied to Plaintiff, the Office of Special Counsel's invocation of § 1212(i) deprived him of any

constitutionally adequate process following his internal complaints of Prohibited Personnel

Practices (PPPs). Plaintiff's submissions, which included falsification of records, retaliatory treatment, and unauthorized disclosure of medical information, were automatically referred to the U.S. Department of Agriculture Office of Inspector General (USDA OIG) under OSC Directive 57. This referral occurred without prior notice to Plaintiff, without disclosure of applicable standards, and without an opportunity for him to respond before an impartial decisionmaker.

The USDA OIG process, as implemented, lacked the basic attributes of due process. It provided no requirement to investigate, no timetable for resolution, no statutory authority to remedy PPPs, and no obligation to inform Plaintiff of results. Plaintiff submitted supporting documentation and was interviewed, but as of the filing date has received no findings or outcome. The last communication from USDA OIG occurred in June 2023, confirming no updates or findings would be given. (Exhibit N)

This structure placed Plaintiff in procedural limbo for more than two years, foreclosing the avenues of redress that Congress granted to all other federal employees under the Civil Service Reform Act (CSRA) and the Whistleblower Protection Act (WPA), including OSC's investigatory obligations under 5 U.S.C. § 1214 and review before the Merit Systems Protection Board (MSPB) under 5 U.S.C. § 7701. As applied to Plaintiff, OSC's invocation of § 1212(i) operated as a denial of due process, eliminating statutory rights and leaving false AWOL charges, fabricated probationary designations, and other stigmatizing records unreviewed and uncorrected. This continuing harm violates the Fifth Amendment's guarantee of procedural due process.

OSC's interpretation of 5 U.S.C. § 1212(i) is not entitled to judicial deference. In Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), the Supreme Court held that courts must exercise their independent judgment in interpreting statutes rather than defer to agency interpretations absent clear congressional authorization. Likewise, West Virginia v. EPA, 597 U.S. 697 (2022), reaffirmed that agencies may not assume broad powers of major significance without an express

grant from Congress. Here, § 1212(i) contains no language authorizing OSC to exclude its own employees from the remedial framework of the CSRA or WPA, nor to create a separate referral system devoid of notice, adjudication, or judicial review. OSC's expansive application of § 1212(i) exceeds its statutory authority and is inconsistent with controlling precedent.

The Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), underscores that courts cannot defer to agency constructions of statutes where Congress has not spoken clearly. In Plaintiff's case, OSC invoked § 1212(i) in a manner that deprived him of any procedural safeguards. Nothing in the statutory text authorizes OSC to eliminate notice, timetables, or adjudicatory rights for its own employees. By converting § 1212(i) into a mechanism for indefinite referral with no remedy, OSC assumed authority of major consequence without an express grant from Congress, a practice the Court prohibited in West Virginia v. EPA, 597 U.S. 697 (2022). As applied, OSC's construction of § 1212(i) is ultra vires and constitutionally infirm.

### Count 8: Facial Challenge to 5 U.S.C. § 1212(i) Under the Equal Protection Component of the Fifth Amendment

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count.

Plaintiff challenges 5 U.S.C. § 1212(i) on its face as inconsistent with the equal protection guarantee embodied in the Fifth Amendment's Due Process Clause. As interpreted and applied by OSC, § 1212(i) creates a classification that treats OSC employees differently from all other federal employees with respect to reporting, obtaining relief from, and seeking redress for PPPs, retaliation, and internal misconduct.

For federal employees generally, the CSRA and WPA provide a remedial framework that includes OSC's investigative duty (§ 1214), disclosure protections (§ 1213), MSPB review (§ 7701), and

judicial redress. OSC employees, by contrast, are diverted under § 1212(i) to the USDA OIG,

pursuant to a Memorandum of Understanding that is neither published nor transparent. The

Inspector General Act, 5 U.S.C. app., provides no adjudicatory mechanism, does not require

investigation, and under § 7(b) prohibits disclosure of investigative information to the

complainant. This diversion results in categorical denial of notice, neutral adjudication, or appeal

rights that similarly situated employees in every other federal agency enjoy.

Congress has, in some statutes, expressly excluded certain categories of employees from

CSRA/WPA remedies (e.g., FBI employees under 5 U.S.C. § 2303; TSA employees under 49

U.S.C. § 114(n)). No such exclusion exists for OSC employees. Section 1212(i) merely authorizes

OSC to "obtain investigative support" from an Inspector General; it does not authorize OSC to

replace the statutory remedial framework with an inferior track. OSC's interpretation thus creates

an exclusion that Congress never enacted.

This disparate treatment fails even rational basis review. There is no legitimate governmental

interest in denying OSC employees—the very officials charged with enforcing merit system laws

for others—the same protections afforded to all other civil servants. The resulting classification is

arbitrary, discriminatory, and unconstitutional on its face.

Under West Virginia v. EPA, 597 U.S. 697 (2022), an agency may not claim sweeping powers of

social or structural significance without unmistakable statutory direction. OSC's reading of §

1212(i) to exclude its own employees from the CSRA and WPA framework creates such a

structural disparity, yet the statute contains no textual basis for this exclusion. Loper Bright

Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), further establishes that courts must

independently interpret statutes rather than defer to agency policy choices. A facial reading of §

1212(i) provides only for OSC to seek investigative support; it does not empower OSC to create a

parallel, inferior system for its own staff. This unilateral interpretation imposes unequal treatment lacking rational basis and is constitutionally invalid.

**Count 9: As-Applied Equal Protection Violation via Implementation of 5 U.S.C. § 1212(i) (Violation of the Fifth Amendment to the U.S. Constitution)**

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count.

Defendant OSC, through its implementation of § 1212(i), subjected Plaintiff to a materially inferior and structurally deficient process for reporting misconduct, waste, abuse, and PPPs—one not imposed on similarly situated federal employees in other agencies. Plaintiff's disclosures, which would ordinarily fall within OSC's investigative duty under § 1214, were redirected to USDA OIG without notice, explanation, or opportunity for neutral adjudication. The OIG process produced no findings, set no deadlines, and offered no appeal or review. Plaintiff has received no substantive response since a May 2023 interview.

Other federal employees who submit comparable disclosures retain access to OSC's investigative remedies, MSPB review, and judicial oversight. Plaintiff, by contrast, was denied all such protections solely because he was employed at OSC. The disparate treatment deprived him of procedural rights, permitted the retention of false records without correction, and caused ongoing harm in federal background investigations and suitability reviews.

OSC's implementation of § 1212(i) creates an irrational and discriminatory classification, denying Plaintiff equal protection of the laws. Under Bolling v. Sharpe, 347 U.S. 497 (1954), the Fifth Amendment forbids the federal government from imposing arbitrary classifications that deprive individuals of statutory and constitutional rights. There is no rational basis for excluding OSC employees from the CSRA/WPA remedies Congress created for the entire civil service. As applied

to Plaintiff, OSC's implementation of § 1212(i) resulted in unequal treatment, denial of statutory protections, and ongoing reputational and professional injury, in violation of the Fifth Amendment.

In applying § 1212(i) to Plaintiff, OSC exercised discretion in a way that denied him equal access to statutory protections available to all other federal employees. As Loper Bright makes clear, courts owe no deference to such discretionary interpretations where the statute does not confer the claimed authority. And under West Virginia v. EPA, agencies cannot "discover" in ambiguous text the power to reshape major statutory schemes. OSC's reliance on § 1212(i) to divert Plaintiff into a process with no adjudication, no notice, and no review is precisely the kind of unauthorized expansion of agency power the Supreme Court has condemned. The resulting unequal treatment is not grounded in law, but in OSC's self-serving interpretation, which fails constitutional scrutiny.

### Count 10: Failure to Maintain Statutory Performance Documentation

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. The U.S. Office of Special Counsel (OSC) failed to comply with mandatory requirements governing federal performance management systems under 5 U.S.C. § 4302(b)(1) and implementing regulations at 5 C.F.R. §§ 430.205–.207. These provisions require agencies to establish performance plans at the start of each appraisal period, communicate expectations to the employee, and ensure that any evaluation is based on previously issued and acknowledged standards.

In Plaintiff's case, OSC did not establish a valid performance plan at the beginning of the performance year or at any time during the appraisal period. Only after the appraisal period had closed did OSC officials generate documentation purporting to be a performance plan. This document was never delivered to Plaintiff, never acknowledged, and was backdated outside the statutory timeframe, contrary to 5 C.F.R. § 430.206(b). The record indicates that this plan was

created after the fact to justify placement on a performance improvement track and anticipated removal.

Additionally, OSC staff unilaterally classified Plaintiff as "probationary," despite the absence of any lawful basis under 5 C.F.R. Part 315 or an SF-50 reflecting such status. This fabricated probationary designation was used to justify restrictions on telework, enhanced scrutiny, and disciplinary planning. By creating post hoc performance records and an unauthorized probationary status, OSC deprived Plaintiff of the statutory protections of notice, opportunity to improve, and evaluation against disclosed criteria.

The post hoc plan and fictitious probationary designation remain in OSC's files and were disclosed during Plaintiff's July 1, 2025 federal background investigation. Their continued maintenance violates the Privacy Act's accuracy requirement, 5 U.S.C. § 552a(e)(5), which obligates agencies to ensure records are accurate, relevant, timely, and complete before dissemination. Plaintiff's compelled disclosure of these inaccurate records during a suitability investigation caused professional stigma and reputational injury.

OSC's failure to comply with statutory performance documentation obligations thus violated 5 U.S.C. § 4302(b)(1); 5 C.F.R. §§ 430.205–.207; and 5 U.S.C. § 552a(e)(5)–(6). These lapses constitute unlawful agency action reviewable under the APA, 5 U.S.C. § 706(2)(A)–(D), and support Plaintiff's Privacy Act and FTCA claims.

### Count 11: Systemic Structural Due Process Violations Resulting from OSC's § 1212(i) Scheme

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. This Count challenges the structural deficiencies of OSC's reliance on 5 U.S.C. § 1212(i) to handle employee complaints. By policy and practice, OSC diverts complaints

of prohibited personnel practices (PPPs), retaliation, and internal misconduct to an external Inspector General—here, the USDA OIG—without providing notice of applicable standards, timetables for resolution, rights to respond, or neutral adjudication.

Plaintiff's complaints, submitted in June and November 2022, were referred to USDA OIG under OSC Directive 57. Although Plaintiff was interviewed in May 2023, no findings or results were ever provided. The OIG expressly disclaimed responsibility for resolving PPPs or disciplining OSC officials, leaving Plaintiff without any determination, remedy, or appeal rights. OSC's invocation of § 1212(i) thus foreclosed the ordinary protections available to other federal employees under the CSRA and WPA, including OSC's investigatory obligations under 5 U.S.C. § 1214(a), access to MSPB review, and judicial recourse.

This scheme consolidates investigative and enforcement discretion within OSC while simultaneously removing OSC employees from the statutory framework Congress created. The absence of standards governing how and when OSC must act under § 1212(i) creates an impermissible delegation of authority lacking intelligible principles. By depriving employees of established due process protections, OSC effectively imposes an unconstitutional condition on employment—requiring its own staff to surrender rights enjoyed by all other civil servants.

The Supreme Court has repeatedly rejected agency constructions that eliminate due process safeguards or assume transformative powers absent explicit statutory authorization. See Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) (procedural due process violated where statutory scheme foreclosed meaningful opportunity to be heard); West Virginia v. EPA, 597 U.S. 697 (2022) (agencies may not assert powers of major significance without clear congressional authorization); Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024) (rejecting judicial deference to agency interpretations absent statutory clarity). Section 1212(i) contains no

authorization for OSC to displace CSRA and WPA protections with a closed referral system devoid of adjudication or review.

As structured and applied, OSC's § 1212(i) scheme deprives OSC employees—including Plaintiff—of neutral review, meaningful process, and equal statutory protections, in violation of the Fifth Amendment's Due Process Clause.

### Count 12: Violations of Legal Duties, Public Integrity Standards, and Supporting Statutory Framework

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. In addition to the statutory claims asserted under the Privacy Act, the Administrative Procedure Act (APA), and the Federal Tort Claims Act (FTCA), Plaintiff alleges that OSC officials and agents of the United States acted in systemic violation of binding statutory and regulatory duties governing integrity, records management, accommodation handling, and investigative conduct. These violations were not limited to retaliation or personnel disputes but reflect broader institutional misconduct, including misuse of federal authority, unlawful records activity, and breach of nondiscretionary obligations under law and policy.

Plaintiff's 2022 disclosures under 5 U.S.C. § 1212(i) included allegations that OSC officials Amy Beckett and Susan Ullman initiated retaliatory and procedurally improper actions, including suspension without supervisory authority. These officials were directly accused in Plaintiff's disclosures to the MSPB and USDA Inspector General of violating 18 U.S.C. § 1001 and other federal statutes, and had actual knowledge of the pending complaints. Despite this, they continued to direct OSC staff to pursue adverse actions and unsupported criminal allegations against Plaintiff—including baseless claims of computer misuse under 18 U.S.C. § 1030—after Plaintiff's resignation.

OSC officials relied on falsified and incomplete records, backdated performance documents, and improper access restrictions in executing these actions. Ammar Ahmad, though not Plaintiff's immediate supervisor, acted on behalf of OSC executives Beckett, Ullman, Baxter, and Brightbill in carrying out these measures. Leigh Ann Massey, who also lacked supervisory authority, assisted in imposing further restrictions, including medical leave limitations and investigatory spreadsheets. These actions were carried out without observance of official chain-of-command protocols and in violation of nondiscretionary federal obligations.

This section supports the claims already asserted and does not seek relief under any criminal statute. However, the statutory violations below illustrate the scope and gravity of the misconduct and provide a supporting legal framework warranting injunctive relief, declaratory findings, and institutional referral.

### A. Violated Non-Discretionary Statutory and Regulatory Duties

OSC and its agents violated the following specific nondiscretionary legal obligations:

- 5 U.S.C. § 552a(e)(5) – Failed to maintain complete, timely, and accurate records; retained and relied on fabricated documents, including a backdated performance plan and false AWOL allegations.

- 5 U.S.C. § 552a(e)(6) – Shared inaccurate and incomplete records internally and externally during background investigations and internal reviews.

- 5 U.S.C. § 552a(b) – Disclosed records containing sensitive medical and misconduct-related content without proper consent or Privacy Act exemption.

- 5 U.S.C. § 552a(e)(10) – Failed to implement adequate safeguards to prevent unauthorized access and use of Plaintiff's confidential medical documentation and internal records.

- 5 U.S.C. § 1214(a)(1)(A) – Failed to investigate Plaintiff's allegations of prohibited practices in accordance with statutory obligations; acted to suppress or retaliate instead.

- 5 U.S.C. § 1214(e) – Failed to refer potential violations of 18 U.S.C. § 1001 and § 1519 to the Attorney General as required after internal knowledge of falsification.

- 5 U.S.C. § 1212(i)(1) – Improperly outsourced OSC's statutory oversight duties to USDA IG while retaining decision-making authority, nullifying procedural safeguards.

- 5 C.F.R. § 293.302 – Relied on and maintained unofficial and post hoc documentation not conforming to official performance records standards.

- 5 C.F.R. §§ 339.301–302 – Mishandled Plaintiff's medical accommodation records in violation of federal medical confidentiality rules and regulatory standards.

- 5 C.F.R. § 2635.101(b)(11) – Failed to act impartially and misused official positions to pursue retaliatory and punitive actions under color of law.

- OSC Directive 52, §§ 6.2, 6.5, 6.9 – Mishandled Plaintiff's accommodation requests and associated medical data outside authorized channels, disclosing them without a lawful need-to-know.

- OSC Directive 57, §§ 6.3, 6.4 – Created and enforced performance standards after the period ended, in violation of established procedural safeguards and the right to a valid evaluation plan.

- OMB Circular A-130, Appendix I, § 4(e) – Failed to ensure adequate data integrity and confidentiality of personally identifiable information.

- Federal Records Act, 44 U.S.C. §§ 3101 & 3106 – Created and preserved fabricated or unofficial records; failed to prevent unlawful documentation practices.

- 31 U.S.C. § 3512(b) – Failed to maintain effective internal controls to prevent the unauthorized conduct, concealment, and mismanagement that led to Plaintiff's harm.

- EEOC Management Directive 110, Chs. 5 & 9 – Mishandled the interactive accommodation process and failed to prevent reprisal after protected activity.

- 29 C.F.R. § 1614.102(a)(6) – Interfered with Plaintiff's protected rights under anti-discrimination law and failed to implement safeguards against improper agency conduct.

- 5 U.S.C. § 4302(b)(1) – Failed to initiate a valid performance plan at the beginning of the period; relied on non-existent or post hoc evaluations.

- 5 U.S.C. § 4304(b)(1) – Used fabricated records to support retaliatory performance conclusions outside authorized procedures.

- 18 U.S.C. § 1001 – Made or relied on materially false statements in official OSC proceedings and federal suitability processes.

- 18 U.S.C. § 1519 – Created and retained false records relevant to federal investigations and OSC's internal response to protected disclosures.

- 18 U.S.C. § 654 – Used or disseminated protected government records without authority or lawful purpose.

## B. Resulting Injuries and Continuing Harm

The above violations directly and foreseeably caused the following concrete, non-speculative harms:

- Economic Loss: Plaintiff lost wages, benefits, and promotional eligibility due to improper restrictions and an invalid performance record.

- Compelled Disclosures: Plaintiff was forced to reveal inaccurate and stigmatizing records during a federal suitability investigation, causing reputational and employment injury.

- Reputational Harm: False and misleading information was disseminated internally and externally, harming Plaintiff's professional credibility and standing.

- Psychological Injury: Coercive and unauthorized investigatory tactics, false accusations, and workplace hostility contributed to ongoing mental distress.

- Physical Harm: OSC's reckless disregard for Plaintiff's known medical triggers, including stress as an exacerbating factor for his chronic condition, led to a severe flare-up that became a lesion requiring multiple medical interventions, including surgery.

- Denial of Procedural Rights: Plaintiff was denied the opportunity for a fair accommodation review, impartial review of complaints, and valid performance feedback.

- Institutional Harm: OSC's refusal to correct or investigate misconduct perpetuated a systemic failure to uphold statutory duties and agency integrity requirements.

- Irreparable Injury: The stigma and damage caused by continued reliance on false records and retaliatory processes cannot be undone, including long-term career and health consequences.

### Count 13: Violation of the Constitutional Right to Privacy under the Fourth and Fifth Amendments

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. This Count asserts that Defendant U.S. Office of Special Counsel ("OSC") violated Plaintiff's constitutional right to informational privacy, as recognized under the Fourth and Fifth Amendments, by disclosing sensitive medical information without authorization, failing to implement required safeguards, and embedding such information into internal records in ways that caused lasting stigma and professional harm.

On or about October 14, 2022, OSC officials—including Leigh Ann Massey (then Human Capital Officer) and Ammar Ahmad (CIO)—circulated Plaintiff's confidential medical condition and his pending reasonable accommodation request to OSC attorneys and managers who had no lawful role in the accommodation process. These disclosures occurred outside the boundaries of OSC Directive 52, which expressly limits access to disability-related documentation, and violated the regulatory requirement that medical information be maintained in secure, segregated files. See 5

C.F.R. § 293.504(b). No notice was provided to Plaintiff, and he was denied any opportunity to object or to prevent the information from being used in unrelated employment determinations. OSC officials subsequently used these unauthorized disclosures to justify restrictions on Plaintiff's attendance, the imposition of a fabricated "probationary" designation, and heightened managerial scrutiny. The medical information—initially submitted in confidence to support a reasonable accommodation—was instead transformed into a basis for retaliation and disciplinary planning. The records remain uncorrected and were later treated as part of Plaintiff's employment file, ensuring their persistence beyond his resignation.

The harm extended well beyond Plaintiff's tenure at OSC. On July 1, 2025, during a federal background investigation, Plaintiff was compelled to disclose and explain this sensitive medical history and the related records under oath. This compelled disclosure amplified the reputational stigma attached to the improper records and impaired Plaintiff's ability to compete for federal employment opportunities.

The Supreme Court has recognized that the Constitution protects an individual's right to avoid disclosure of highly personal matters absent sufficient justification. See Whalen v. Roe, 429 U.S. 589 (1977) (acknowledging privacy interest in avoiding disclosure of personal health information); NASA v. Nelson, 562 U.S. 134 (2011) (assuming constitutional protection for informational privacy). OSC's actions here lacked any compelling or even legitimate governmental interest, were not narrowly tailored, and were taken without implementing mandatory safeguards such as secure storage, need-to-know limitations, or notice to the individual.

By disclosing Plaintiff's medical information outside of authorized channels, embedding it in stigmatizing records, and perpetuating its use in contexts beyond OSC's statutory authority, Defendant deprived Plaintiff of his right to informational privacy under the Fourth and Fifth

Amendments. The absence of procedural safeguards or compelling justification renders OSC's conduct unconstitutional.

### Count 14: Systemic Violation of Statutory, Regulatory, And Policy Obligations

### (For Declaratory Relief, Correction of Records, and Damages under the APA, FTCA,

### and Privacy Act)

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. The Office of Special Counsel (OSC), through the concerted actions and omissions of its supervisory, legal, and administrative staff, engaged in a pattern of conduct that violated multiple statutory, regulatory, and policy-based obligations intended to safeguard employee rights, promote transparency, and ensure the lawful creation, handling, and correction of official records. The violations were not isolated or technical, but instead reflect systemic disregard for binding rules that govern OSC's own performance, particularly with respect to the handling of personnel actions, protected medical and performance information, and retaliatory practices taken in response to lawful protected disclosures.

The agency's actions, described in detail throughout the complaint and supporting exhibits, violated the following laws and regulations:

1. Privacy Act of 1974

   o 5 U.S.C. § 552a(e)(5) – Failure to maintain records with accuracy, relevance, timeliness, and completeness, including personnel, medical, and investigative records.

   o 5 U.S.C. § 552a(e)(6) – Dissemination of inaccurate records without reasonable efforts to ensure accuracy, including during a federal background investigation.

- o 5 U.S.C. § 552a(b) – Unauthorized disclosure of information from a system of records, including medical details and performance claims, via email and oral statements.

2. Federal Records Act

- o 44 U.S.C. § 3101 – Failure to create and maintain adequate and proper documentation of OSC activities.

- o 44 U.S.C. § 3102 – Failure to establish and maintain an active records management program.

- o 44 U.S.C. § 3106 – Unlawful concealment, removal, or destruction of federal records, including failure to maintain accurate performance plans and concealment of documents during litigation.

3. Performance Management Regulations

- o 5 U.S.C. § 4302(b)(1) – Requirement that performance standards be communicated at the beginning of an appraisal period. OSC failed to issue or share a valid performance plan prior to, or during, the rating period.

- o 5 C.F.R. §§ 430.205–430.207 – Governing the establishment, communication, and use of performance plans. OSC's fabrication and retroactive application of a plan violated these provisions.

4. Medical Privacy and Reasonable Accommodation Rules

- o 42 U.S.C. § 12112(d)(3)(B), (4)(C) – Unlawful disclosure and mishandling of confidential medical information in violation of the Americans with Disabilities Act.

- o 5 C.F.R. § 293.504(b) – Failure to segregate and protect medical records from unauthorized access.

- o 29 C.F.R. § 1630.14(b) – Requirement that reasonable accommodation documentation and related medical documentation be kept in a separate, confidential location. OSC transmitted such records through unsecured channels and failed to implement any formal storage or protection.

5. OSC Internal Policy and Ethics Regulations

- o 5 C.F.R. § 2635.101(b)(11) – Obligation of federal employees to avoid conduct that undermines integrity or public confidence. OSC maintained false AWOL allegations, concealed internal planning emails, and used unverified accusations to attempt removal.

- o OSC Directives 52, 57, and 58 – Require coordinated internal enforcement of prohibited personnel practices and performance plan issuance. These directives were disregarded or circumvented entirely.

6. Misuse of Investigative Referral Mechanism

- o 5 U.S.C. § 1212(i) – Although cited by OSC as authority to refer Plaintiff's protected disclosures to the USDA IG, OSC relied on this provision as a means to frustrate internal accountability and judicial review, and unlawfully chilled First Amendment-protected reporting.

7. Fiscal Integrity and Oversight Requirements

- o 31 U.S.C. § 3512(b) – Imposes a duty on agency heads to prevent waste, fraud, and abuse through effective systems of internal control. OSC failed to prevent timekeeping falsification, performance record manipulation, and retaliatory activity despite internal reporting.

8. Federal Criminal Statutes (As Supporting Evidence of Agency Misconduct)

o   18 U.S.C. § 1001 – falsifying and concealing material facts in official records, including performance plans and timesheet justifications.

o   18 U.S.C. § 641 – Unauthorized use and potential conversion of government resources through manipulation of leave systems and performance documentation to facilitate unpaid labor or unjustified discipline.

o   18 U.S.C. § 1343 – Wire fraud, where OSC staff electronically transmitted false records to internal decisionmakers or external investigators (e.g., background investigators), potentially affecting Plaintiff's legal rights and employability.

OSC's misconduct, described, would constitute violations of multiple federal criminal statutes (e.g., 18 U.S.C. §§ 1001, 1519, 1030) if proven. References to criminal statutes in this Count (e.g., 18 U.S.C. §§ 1001, 1519) are provided solely to illustrate the seriousness nature of OSC's misconduct and to support Plaintiff's APA, FTCA, Privacy Act, and constitutional claims. Plaintiff is not asserting a private right of action under these statutes.

OSC's systemic failure to adhere to these statutes has caused direct and continuing injury to Plaintiff's professional reputation, economic opportunities, constitutional rights, and mental health. These violations were coordinated and committed with reckless disregard for the binding legal framework governing the agency's obligations. The breadth of violations, and the interrelationship between the various statutes, confirms the sufficiency of Plaintiff's claims under the APA, FTCA, and Privacy Act, and supports injunctive relief, declaratory relief, and compensatory damages under all relevant legal theories.

### Count 15: Violation of the Unconstitutional Conditions Doctrine and Systemic Procedural Due Process Violations (Outside Personnel Judgment)

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations). OSC conditioned Plaintiff's continued employment and ability to seek redress on the surrender of

constitutional and statutory protections. Through its implementation of 5 U.S.C. § 1212(i) and

OSC Directive 57, Plaintiff and similarly situated OSC employees were compelled to forfeit access

to neutral adjudication, due process safeguards, and judicial review in order to report misconduct

or Prohibited Personnel Practices (PPPs). This violates the unconstitutional conditions doctrine,

which bars the government from requiring individuals to surrender constitutional rights as a

condition of public employment. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *Agency for

Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013).

Instead of adjudicating Plaintiff's complaints internally, OSC diverted them to USDA OIG—a

body with no statutory authority to investigate or remedy PPPs—while simultaneously preventing

Plaintiff from accessing CSRA, WPA, or Privacy Act protections available to all other federal

employees. As in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433–34 (1982), the denial of any

procedural mechanism to vindicate recognized rights constitutes a direct due process violation.

### Count 16: Violation of the Federal Records Act (FRA) and Related Recordkeeping Obligations

Plaintiff incorporates the relevant factual allegations from Section V. OSC failed to comply with its

statutory duty under the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101–3107, which requires

agencies to "make and preserve records" that accurately and completely document agency

functions and decisions. See 44 U.S.C. § 3101.

Instead of maintaining accurate records in its designated systems, OSC fabricated a performance

plan after the appraisal period had already ended, falsely designated Plaintiff as probationary, and

recorded AWOL status despite contemporaneous medical documentation authorizing leave. These

actions violated both the FRA and OMB Circular A-130, which requires that agency records

systems be "sufficient to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities."

OSC also used informal email exchanges and spreadsheets as its de facto repository for sensitive performance and medical documentation. This practice contravened OSC's published SORNs, including OSC-3, and violated OMB Circular A-108, which mandates that agencies identify all systems of records subject to the Privacy Act. By storing and disseminating fabricated and confidential materials through unauthorized channels, OSC obstructed Plaintiff's ability to exercise his rights to access, correct, and challenge records.

Plaintiff seeks equitable relief compelling OSC to: (1) identify and remove fabricated records from both official and informal systems; (2) bring its practices into compliance with the FRA, OMB Circulars A-108 and A-130, and its own SORNs; and (3) notify all federal entities that received false or incomplete records.

### Count 17: Unauthorized Use of Investigative Authority and Structural Due Process Violations

Plaintiff incorporates the relevant factual allegations from Section V. OSC misused its investigative authority under 5 U.S.C. § 1212(i) and related agency powers by diverting Plaintiff's complaints to the USDA OIG, which lacks statutory jurisdiction to adjudicate or remedy Prohibited Personnel Practices ("PPPs") committed within OSC itself. The Inspector General Act, 5 U.S.C. app. § 3(a), authorizes Inspectors General to investigate fraud, waste, and abuse, but does not empower them to adjudicate PPPs or to provide relief to employees. Moreover, § 7(b) of the Act explicitly restricts disclosure of investigative information, ensuring that complainants receive no notice of outcomes.

By relying on USDA OIG to handle Plaintiff's complaints, OSC deprived Plaintiff of basic procedural protections guaranteed under *Mathews v. Eldridge*, 424 U.S. 319 (1976), including

notice of charges, an opportunity to respond, and a neutral decisionmaker. The referral system provided no statutory timelines, no obligation to investigate, and no right to appeal or judicial review, leaving Plaintiff in procedural limbo for years.

This misuse of authority also violates separation of powers principles. By insulating its internal misconduct from judicial review and foreclosing statutory remedies under the CSRA and WPA, OSC unlawfully consolidated investigative and adjudicative power in a manner Congress never authorized. The result was the denial of due process protections that every other federal employee is entitled to under law.

### Count 18: Violation of the Non-Delegation Doctrine and Separation of Powers Principles

Plaintiff incorporates the relevant factual allegations from Section V. OSC's implementation of § 1212(i) represents an unlawful delegation of policymaking authority that lacks intelligible principles or congressional authorization. Through internal directives, OSC has interpreted § 1212(i) as excluding its own employees from CSRA and WPA protections, channeling complaints to USDA OIG without statutory basis.

The statutory text of § 1212(i) permits OSC to "obtain investigative assistance" from an Inspector General; it does not authorize OSC to create a parallel process that strips employees of procedural and judicial rights. By transforming this provision into a categorical exclusion for OSC employees, the agency arrogated to itself powers reserved to Congress. The Supreme Court has made clear that agencies cannot adopt transformative interpretations of statutes without explicit legislative authorization. *See West Virginia v. EPA*, 597 U.S. 697 (2022); *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).\*

OSC's scheme further violates separation of powers by insulating itself from review: employees cannot access MSPB adjudication, compel OSC action under § 1214(a), or obtain judicial review. By creating a structurally self-policing framework, OSC consolidated investigatory, adjudicative, and enforcement powers in violation of constitutional principles.

### Count 19: Equitable Tolling and Continuing Violation Doctrine (All Claims)

Plaintiff incorporates the relevant factual allegations from Section V. Plaintiff's FTCA claims are timely under equitable tolling and continuing violation principles.

The Court ordered Plaintiff to amend by April 28, 2024, and Plaintiff complied in good faith. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). Plaintiff also reasonably relied on OSC's § 1212(i) referral process, which diverted his claims to USDA OIG until June 2, 2023, when OIG confirmed it would issue no findings.

Moreover, OSC's misconduct continues: fabricated records remain uncorrected, criminal allegations persist without DOJ referral under 5 U.S.C. § 1214(e), and Plaintiff was compelled to disclose false records on July 1, 2025 during a federal suitability investigation. These constitute continuing harms under Page v. United States, 729 F.2d 818, 821 (D.C. Cir. 1984).

### Count 20: Violation of Substantive Due Process Under the Fifth Amendment

Plaintiff incorporates the relevant factual allegations from Section V. OSC engaged in a deliberate pattern of fabrication and misuse of federal records that deprived Plaintiff of liberty and property interests protected by the Fifth Amendment.

This misconduct included: (1) creation of a post hoc performance plan after the appraisal period, (2) false probationary designations unsupported by any SF-50, (3) fabricated AWOL charges contradicted by contemporaneous leave approval, and (4) allegations of unauthorized system

access directly refuted by supervisor authorization. These records were then used to justify coercive administrative measures, deny Plaintiff benefits, and force his resignation.

OSC further compounded these deprivations by disseminating Plaintiff's medical information and by refusing to correct records after notice of their falsity. The agency's sustained use of fabricated documentation and implicit threats of criminal liability—without DOJ referral under 5 U.S.C. § 1214(e)—constitute abuse of governmental power so egregious as to "shock the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–49 (1998); *Rochin v. California*, 342 U.S. 165, 172 (1952).*

This course of conduct was not a product of negligence, but reflected a systemic misuse of official authority designed to silence Plaintiff's protected activity. The deliberate perpetuation of false records in background investigations and suitability reviews continues to inflict ongoing liberty deprivations and professional harm.

### Count 21: Pattern-or-Practice and Structural Misconduct Requiring Injunctive and Equitable Relief

Plaintiff incorporates the relevant factual allegations from Section V. OSC has institutionalized a pattern and practice of misconduct that systematically deprives its employees of statutory, regulatory, and constitutional protections. This institutional misconduct includes:

1. Fabrication of Records: Post hoc performance plans, unsupported probationary designations, and false AWOL charges were created and maintained without statutory authority.

2. Mishandling of Confidential Records: Sensitive medical and accommodation documentation was circulated by email outside of published SORNs, in violation of 5 U.S.C. § 552a(e)(4)–(5) and OMB Circular A-108.

3. Suppression of Complaints: Employee disclosures were diverted into the § 1212(i) referral scheme, which foreclosed CSRA and WPA remedies and provided no notice, findings, or appeal rights.

4. Refusal to Correct Known False Records: Despite Plaintiff's repeated requests, OSC retained fabricated records that later surfaced in background investigations.

5. Internal Culture of Retaliation: Within OSC's workforce of approximately 160 employees, false records and insinuations circulated widely, isolating Plaintiff and denying him professional references.

This pattern is structural rather than isolated, and it creates systemic risk of continued violations absent judicial intervention. Plaintiff seeks injunctive relief compelling OSC to: (1) expunge fabricated records, (2) implement lawful recordkeeping systems, and (3) prohibit reliance on § 1212(i) to deny employees access to neutral adjudication.

### Count 22: Failure to Train and Supervise Resulting in Constitutional and Statutory Violations

Plaintiff incorporates the relevant factual allegations from Section V. OSC leadership failed to train or supervise subordinate staff on binding directives, including Directive 52 (medical privacy and reasonable accommodation), Directive 202 (performance documentation), Directive 57 (complaint handling), and Directive 58 (anti-retaliation).

This failure enabled subordinate misconduct—fabricated records, improper disclosures, and misuse of § 1212(i)—to persist unchecked. The Supreme Court has held that deliberate indifference to the need for training and supervision may establish constitutional liability. See City of Canton v. Harris, 489 U.S. 378, 388–89 (1989). OSC's institutional neglect directly caused Plaintiff's injuries.

### Count 23: As-Applied Ultra Vires Challenge – OSC's Misuse of § 1212(i) in Plaintiff's Case

Plaintiff incorporates the relevant factual allegations from Section V. OSC acted ultra vires by maintaining false and incorrect records beyond its statutory authority and forcing the diversion of Plaintiff's complaints into USDA OIG, which lacks jurisdiction to investigate or correct OSC PPPs, OSC waste, fraud, and abuse, or to provide due process to complainants.

Courts may enjoin agency action that exceeds statutory jurisdiction. See Leedom v. Kyne, 358 U.S. 184 (1958); Dart v. United States, 848 F.2d 217 (D.C. Cir. 1988). OSC's misuse of § 1212(i) deprived Plaintiff of CSRA/WPA rights and resulted in continuing reputational and employment harm.

### Count 24: Constitutional Informational Privacy Violation (Standalone)

Plaintiff incorporates the relevant factual allegations from Section V. OSC has continued to maintain and disseminate Plaintiff's confidential medical and fabricated employment records during federal background investigations.

On July 1, 2025, Plaintiff was compelled to disclose these records under oath, causing reputational injury and jeopardizing future employment. Additionally, investigators stated they will get more records from the agency. The Constitution protects against unjustified disclosure of sensitive personal information. See Whalen v. Roe, 429 U.S. 589 (1977); NASA v. Nelson, 562 U.S. 134 (2011). OSC's dissemination was unnecessary, lacked safeguards, and violated Plaintiff's constitutional right to informational privacy.

### Count 25: Violation of the First Amendment Right to Petition for Redress of Grievances

Plaintiff incorporates the relevant factual allegations from Section V. OSC's practice of automatically diverting internal complaints into USDA OIG under § 1212(i) deprived Plaintiff of any meaningful avenue to seek redress.

The First Amendment protects the right to petition the government independent of retaliation. See Borough of Duryea v. Guarnieri, 564 U.S. 379, 388 (2011). OSC's scheme effectively nullified this right by foreclosing any neutral adjudication, findings, or corrective action.

### Count 26: First Amendment Retaliation Through Criminal Allegations
### (U.S. Const. amend. I; Lane v. Franks, 573 U.S. 228 (2014))

On November 9, 2022, Plaintiff submitted disclosures of OSC misconduct to the MSPB, USDA OIG, and FBI. Two days later, OSC issued a suspension notice alleging that Plaintiff violated 18 U.S.C. § 1030 through unauthorized system access. This was the first adverse personnel action following Plaintiff's external protected activity.

The suspension notice was issued without opportunity for Plaintiff to respond, was based on inaccurate supervisory emails later contradicted by testimony, and was followed by escalating allegations in litigation filings. In MSPB proceedings, OSC's descriptions of the same access event intensified—from "unauthorized access," to "penetration," to "intrusion," and finally to "hacking." After Plaintiff's resignation, OSC counsel, including Amy Beckett and later Hnin Khaing, continued to advance these allegations before the MSPB and EEOC, despite never producing technical evidence, forensic reports, or investigatory findings.

This temporal proximity and escalation show that OSC staff retaliated against Plaintiff's protected disclosures by framing ordinary system administration duties as criminal activity. The

First Amendment prohibits government officials from using false or unsubstantiated allegations to punish employees for disclosures outside the chain of command concerning matters of public integrity. See Lane, 573 U.S. at 238.

### Count 27: Federal Records Act Violations (Direct Equitable Claim)

Plaintiff incorporates the relevant factual allegations from Section V (Factual Allegations) as the basis for this Count. OSC's falsification, concealment, and destruction of official federal records violated the Federal Records Act (FRA), 44 U.S.C. §§ 3101–3107.

OSC failed to create, preserve, and protect accurate records of Plaintiff's performance period, accommodation records, and disciplinary actions. The agency created post hoc and backdated records outside any lawful system, concealed relevant documents during administrative proceedings, and disseminated false information during background investigations.

Courts have equitable authority to compel agency compliance with the FRA. See Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289–90 (D.C. Cir. 1993). Plaintiff seeks injunctive relief requiring OSC to identify and preserve all records related to his employment, remove falsified or illegally maintained records, and notify federal entities that received unlawful records. Because the Federal Records Act does not provide for monetary damages, Plaintiff seeks only declaratory and injunctive relief for the violations alleged herein, including preservation and correction of federal records, implementation of lawful recordkeeping practices, and other equitable measures as the Court deems just and proper.

### Count 28: Privacy Act – Ongoing Suitability and Background Investigation Harm

Plaintiff realleges and incorporates all preceding factual allegations as if fully set forth herein. OSC continues to maintain and rely on false, incomplete, and stigmatizing records—including fabricated AWOL designations, probationary status, and unsupported allegations of unauthorized access to federal systems—that are permanently linked to Plaintiff's federal employment history.

146

OSC knew or should have known that these records would necessarily be disclosed during any future federal background investigation or suitability determination.

On July 1, 2025, Plaintiff was compelled to disclose these false records under oath during a federal suitability interview. This compelled disclosure caused reputational harm, emotional distress, and a substantial risk of future denial of federal employment or contracting opportunities.

Pursuant to 5 U.S.C. § 552a(g)(1)(C)–(D) and (g)(2), Plaintiff seeks injunctive and corrective relief requiring OSC to:

1) Amend or expunge all false and stigmatizing records;

2) Certify to the Court that the corrections have been made; and

3) Issue written confirmation to any federal agency that relies on these records for background or suitability determinations.

This relief is necessary to prevent recurrence of harm in all future suitability or clearance proceedings.

**Count 29: Breach of Ethical and Financial Oversight Obligations**

Plaintiff incorporates the relevant factual allegations from Section V. OSC violated binding ethical and fiscal oversight obligations designed to ensure impartiality, accountability, and protection of the public trust.

Under 5 C.F.R. § 2635.101(b)(11), federal employees "shall not knowingly engage in actions that create the appearance that they are violating the law or ethical standards," and must act impartially to preserve public confidence. OSC attorneys and managers—including Amy Beckett, Susan Ullman, and Ammar Ahmad—knowingly maintained false and incomplete records, used them to justify retaliatory administrative actions, and failed to take corrective measures even after Plaintiff provided contradictory documentation. These failures created the appearance, and reality, of bias and misuse of position in direct violation of the Standards of Ethical Conduct.

OSC also violated 31 U.S.C. § 3512(b) (the Federal Managers' Financial Integrity Act), which requires agency heads to establish internal accounting and administrative controls that provide "reasonable assurance" against fraud, waste, abuse, and mismanagement. OSC had no effective internal control systems in place to prevent staff from fabricating performance plans, misusing accommodation records, or diverting prohibited personnel practice complaints into an unreviewable referral process. The absence of accountability mechanisms permitted senior staff to reallocate agency resources to retaliatory objectives, contrary to statutory obligations of fiscal stewardship.

These lapses parallel findings from past OSC scandals, including during the tenure of former Special Counsel Scott Bloch, who resigned in 2008 after a DOJ investigation revealed systemic abuse of authority, record concealment, and retaliation. Congress and the GAO have long warned that OSC's lack of robust internal controls creates heightened risk of abuse, yet the same structural deficiencies persist. See GAO Report GAO-08-146T (2007) (testimony on OSC's internal control breakdowns).

Additionally, OMB Circular A-123 requires all executive agencies to implement internal control frameworks that ensure (1) compliance with laws and regulations, (2) reliability of financial and administrative reporting, and (3) safeguarding of assets. OSC failed to implement or enforce such a framework, allowing its managers to manipulate official records, improperly disseminate medical information, and divert appropriated funds to unlawful objectives.

By ignoring binding ethical standards and statutory fiscal integrity requirements, OSC leadership breached its duties to protect both employees' rights and the public interest. Plaintiff seeks declaratory relief recognizing OSC's violations of 5 C.F.R. § 2635.101(b)(11), 31 U.S.C. § 3512(b), and OMB Circular A-123, as well as injunctive relief requiring OSC to implement

effective internal controls, auditing procedures, and accountability mechanisms to prevent recurrence of misconduct.

### Count 30: Post-Employment "Stigma-Plus" Constitutional Violation
### (Fifth Amendment – Due Process Clause)

Plaintiff incorporates by reference all relevant factual allegations contained in Section V. Following Plaintiff's resignation in November 2022, OSC knowingly maintained and disseminated false and stigmatizing records, including fabricated AWOL designations, a fictitious probationary status, unsupported allegations of misconduct, and claims of unauthorized access. These records were created outside lawful performance or disciplinary procedures, retained despite repeated notice of their falsity, and never corrected or annotated.

On July 1, 2025, OSC's dissemination of these records to a federal background investigator forced Plaintiff, under oath, to defend against false allegations that had been created and perpetuated solely by OSC. This compelled self-defense before an external audience caused reputational injury, impaired Plaintiff's federal employment prospects, and deprived him of a liberty interest in reputation and occupational standing.

This satisfies the "stigma-plus" standard: government-created stigma coupled with alteration of legal status or tangible employment opportunities. Paul v. Davis, 424 U.S. 693 (1976); Siegert v. Gilley, 500 U.S. 226 (1991); Doe v. DOJ, 753 F.2d 1092, 1105–06 (D.C. Cir. 1985). Unlike typical internal personnel disagreements, these records were disseminated externally and continue to shape Plaintiff's suitability determinations, a legally cognizable consequence.

The deprivation is compounded by OSC's invocation of § 1212(i), which diverted Plaintiff's internal complaints into a referral process that provided no hearing, no opportunity to rebut, and no final resolution. This statutory void foreclosed Plaintiff from accessing ordinary CSRA and WPA

remedies that would have provided correction or neutral review. The continued use of false records, combined with the absence of any avenue for redress, created an unconstitutional deprivation of Plaintiff's liberty interests without due process of law.

## Count 31: Class-of-One Equal Protection Violation

Plaintiff incorporates the factual allegations from Section V. OSC subjected Plaintiff to disparate treatment not applied to similarly situated employees, without rational basis, in violation of the Equal Protection guarantee embodied in the Fifth Amendment.

Specifically, OSC imposed unique restrictions on Plaintiff—including fabricated probationary status, denial of telework despite approved medical documentation, manipulated AWOL designations, threats of criminal referral, and selective disciplinary tracking through spreadsheets—while no comparable employees were subjected to the same treatment. These actions lacked a legitimate governmental purpose and were driven by retaliatory animus following Plaintiff's disclosures to oversight bodies. Village of Willowbrook v. Olech, 528 U.S. 562 (2000). This class-of-one violation is not merely a matter of managerial discretion; it was structurally enabled by OSC's unilateral interpretation of § 1212(i), which denied Plaintiff access to neutral adjudication and foreclosed statutory protections available to other federal employees. By funneling Plaintiff's complaints into an investigatory void, OSC ensured that its disparate treatment would remain unchecked. Thus, the Equal Protection violation is both an individualized injury (Plaintiff singled out without rational basis) and a structural deprivation tied to OSC's misuse of § 1212(i).

## Count 32: Major Questions Doctrine Challenge to OSC's Interpretation and Expansion of § 1212(i)

Plaintiff incorporates the relevant factual allegations from Section V. This Count challenges OSC's expansive interpretation of § 1212(i) as unlawful under the Major Questions Doctrine, independent of its constitutional defects.

OSC interprets § 1212(i) to mean that all internal complaints by OSC employees must be exclusively referred to the USDA OIG, and that such referral forecloses access to CSRA and WPA protections, Merit Systems Protection Board (MSPB) jurisdiction, and judicial review. Under this policy, OSC employees occupy a unique category of federal service with no access to statutory protections available to all other civil servants. The USDA OIG itself confirmed in June 2023 that it provides no findings, no closure letters, and no adjudicatory relief to complainants—leaving Plaintiff and others in a permanent procedural void.

This interpretation is transformative in scope, effectively creating a new statutory regime under which an entire class of federal employees is excluded from Congress's carefully constructed merit system framework. The Supreme Court has made clear that such "major questions" of policy cannot be decided by agency interpretation absent an express and unambiguous delegation from Congress. West Virginia v. EPA, 597 U.S. 697, 719–20 (2022); Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024). Section 1212(i) provides no such delegation. Its plain text authorizes OSC to "obtain investigative support" from an Inspector General. It does not authorize OSC to divest its employees of statutory protections, to displace MSPB jurisdiction, or to create a self-policing system insulated from judicial review.

The harms suffered by Plaintiff under Counts 30 and 31 directly stem from this unlawful interpretation. The "stigma-plus" violation persisted because OSC treated § 1212(i) as foreclosing correction or neutral review of false records. The equal protection violation endured because

OSC's discretionary use of § 1212(i) ensured Plaintiff's disparate treatment could not be challenged within normal statutory channels.

Thus, the interpretation of § 1212(i) represents an assumption of power of such economic and political significance that it triggers the Major Questions Doctrine. Because Congress never granted OSC the authority it claims, OSC's implementation is ultra vires, unconstitutional, and void.

Plaintiff seeks declaratory relief invalidating OSC's interpretation and enforcement of § 1212(i) under the Major Questions Doctrine, and injunctive relief prohibiting OSC from using § 1212(i) to deny its employees access to CSRA/WPA remedies, MSPB review, or judicial oversight.

## VII. RELIEF REQUESTED

Plaintiff seeks all forms of relief available at law or in equity for each Count, including but not limited to declaratory, injunctive, corrective, and monetary relief, to the fullest extent permitted by the underlying statute, constitutional provision, or common-law theory. Nothing in this Complaint should be construed as limiting the scope of available remedies based on the dismissal or survival of any individual Count. In addition, Plaintiff seeks the following monetary damages and related relief as a direct and proximate result of Defendant's unlawful actions, inactions, and omissions:

### A. Declaratory Relief

1. Declare that Defendant U.S. Office of Special Counsel (OSC) violated the Privacy Act, the Administrative Procedure Act (APA), the First and Fifth Amendments to the U.S. Constitution, the Federal Tort Claims Act (FTCA), and the Federal Records Act (FRA).

2. Declare that OSC officials engaged in official misconduct and abuse of authority by falsifying and backdating performance documentation, fabricating misconduct allegations, improperly disclosing confidential medical information, and falsely implicating Plaintiff in criminal activity in violation of 18 U.S.C. § 1030 and 18 U.S.C. § 1001.

3. Declare that OSC's ongoing maintenance and dissemination of false, stigmatizing records concerning Plaintiff's performance, timekeeping, medical condition, and alleged misconduct constitutes a continuing violation of Plaintiff's constitutional liberty and property interests.

4. Declare that this conduct also violated fiscal integrity laws, including 31 U.S.C. §§ 1301(a), 1341(a), and 3512(b), and breached executive branch ethical obligations under 5 C.F.R. § 2635.101(b)(11).

5. Declare that 5 U.S.C. § 1212(i), both on its face and as applied to OSC employees, is unconstitutional due to its lack of procedural safeguards, insulation from judicial review, improper delegation of adjudicatory and enforcement authority, and failure to provide an adequate enforcement mechanism for employee complaints.

6. Declare that OSC's diversion of employee complaints into an unreviewable § 1212(i) process violates the First Amendment right to petition for redress of grievances.

7. Declare that OSC's failure to train and supervise employees regarding constitutional and statutory obligations amounts to deliberate indifference and caused ongoing violations of Plaintiff's rights.

**B. Injunctive and Equitable Relief**

1. Order Defendant to amend or expunge all false, misleading, or unlawfully maintained records concerning Plaintiff's employment, performance, leave, medical condition, or separation, including all records identified.

2. Order Defendant to issue corrective notices to all internal and external parties, including federal agencies and investigative entities, who received or relied on the records described.

3. Set aside all unlawful final agency actions and determinations made in reliance on improper records pursuant to 5 U.S.C. § 706(2).

4. Enjoin Defendant from further dissemination or use of Plaintiff's confidential medical information, personnel files, or other disputed materials.

5. Enjoin Defendant from taking any adverse action against Plaintiff or any OSC employee for disclosures protected by the First Amendment, Privacy Act, or Whistleblower Protection Act.

6. Enjoin Defendant from continuing to maintain or disseminate false, stigmatizing records that impair Plaintiff's suitability for federal employment or contracting, including for purposes of ongoing and future background investigations.

7. Order Defendant to establish or adopt a constitutionally adequate complaint, investigation, and enforcement process for OSC employees that provides due process, protects First Amendment and equal protection rights, and adheres to the substantive protections of the Whistleblower Protection Act and Civil Service Reform Act, including access to MSPB review under 5 U.S.C. §§ 1214 and 7701.

8. In the alternative, enjoin OSC from invoking or enforcing § 1212(i) as a barrier to employee complaints and require that all such complaints be handled by the U.S. Department of Agriculture Office of Inspector General or another independent agency with full procedural safeguards and the right to judicial review.

9. Require OSC to remove all unlawfully maintained medical records from its systems and certify to the Court that such information has been destroyed or expunged, with notice to all prior recipients.

**C. Structural Relief**

1. Order OSC to develop and publish revised policies that implement a constitutionally adequate employee misconduct reporting mechanism consistent with the foregoing requirements and the Court's findings.

2. Require OSC to provide annual reporting to Congress, the Office of Personnel Management, and the Office of Management and Budget on the handling and disposition of internal complaints, including data on complaint processing, outcomes, and corrective measures, subject to external oversight.

3. Order OSC to implement training programs for all managers and employees regarding the Privacy Act, FRA, First Amendment, due process obligations, and internal complaint-handling procedures.

## VIII. DAMAGES REQUESTED

Plaintiff respectfully seeks the following monetary relief:

a) Compensatory Damages under the Privacy Act

Award compensatory damages in the amount of $200,000 for actual injuries sustained as a result of Defendant's unlawful maintenance, dissemination, and failure to correct false and stigmatizing records, including emotional distress, reputational damage, and loss of employment opportunities.

b) Compensatory Damages under the Federal Tort Claims Act

Award compensatory damages in the amount of $500,000 for injuries proximately caused by Defendant's negligence, including unauthorized disclosures of medical information, failure to maintain accurate records, infliction of emotional and physical distress, foreseeable harm to Plaintiff's career, health, and financial stability, and negligent supervision and training.

c) Damages

In the alternative, award  damages for Defendant's violations of the First and Fifth Amendments if the Court declines to grant compensatory relief.

d) Court Costs

Award Plaintiff reasonable court costs and attorney's fees as permitted by law.

e) Further Relief

Grant such other and further relief as the Court deems just and proper to remedy the

ongoing constitutional, statutory, and structural violations identified in Counts 1–30.


Respectfully submitted,

/s/ Nathan Strong
Nathan Strong
240 S. Reynolds St
Alexandria, VA 22304
Telephone: (202) 709-6123

July 30, 2025