## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATHAN STRONG,

          *Plaintiff,*

   v.

Jameson Greer,
*Acting U.S. Special Counsel,*
*U.S. Office of Special Counsel*

      *Defendant.*

Civil Action No. 24-2766 (TJK)

## PLAINTIFF'S MOTION TO STRIKE OR DISREGARD IMPROPER REPLY-ONLY

## ARGUMENTS

Plaintiff respectfully moves for an order striking, or in the alternative disregarding, Defendant's Reply in Support of its Motion to Dismiss. The Reply is procedurally defective because it advances material arguments for the first time in reply, pivots to a new and internally inconsistent CSRA preclusion theory, and relies on extra-statutory assumptions not developed in the opening motion. In the alternative, and only if the Court elects to consider any reply-only arguments, Plaintiff requests leave to file a narrowly tailored sur-reply strictly limited to the new positions introduced in the Reply. Plaintiff requested Defendant's position pursuant to LCvR 7(m). Defendant did not respond by the time of submission.

It is settled law in this Circuit that arguments raised for the first time in a reply brief are waived and need not be considered. *Rollins Env't Servs. (NJ), Inc. v. EPA*, 937 F.2d 649, 661 (D.C. Cir. 1991). Accordingly, district courts disregard reply-only arguments that introduce new theories, recharacterize the record, or attempt to cure defects in the opening brief. *Lewis v.*

1

*District of Columbia*, 791 F. Supp. 2d 136, 140 n.4 (D.D.C. 2011); *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 56 (D.D.C. 2014).

Here, Defendant moved to dismiss under Rules 12(b)(1) and 12(b)(6), Plaintiff opposed, and Defendant's Reply then introduced new and outcome-determinative arguments, reframed the record, relied on internally inconsistent characterizations, and attempted to cure defects in the opening motion through reply-only reasoning. The defect is not disagreement on the merits, but the use of a reply to advance new theories and assumptions insulated from adversarial testing. Under settled Circuit law, such arguments are waived and may be disregarded.

## I. ARGUMENT

**A. The Reply is defective because it advances a new "CSRA preclusion even without relief" theory, which is waived, moots Defendant's own predicate, and conflicts with the Supreme Court's "meaningful review" rationale for exclusivity**

The Reply's CSRA preclusion theory is defective because it rests on a materially altered and internally inconsistent construction of § 1212(i) that cannot be reconciled with OSC's own prior jurisdictional representations, the statutory text, or the Supreme Court's framework governing CSRA exclusivity. In Second Amended Complaint (SAC) Exhibits A and B, OSC expressly distinguished its employees from other federal employees for purposes of CSRA exhaustion and adjudication, asserting that while non-OSC employees must exhaust whistleblower claims by filing a PPP complaint with OSC, "OSC employees must use an alternate route to exhaust their administrative remedies" under 5 U.S.C. § 1212(i). OSC further represented that this alternate route was a prerequisite to MSPB jurisdiction and required submission of a complaint to a designated OIG and production of a "closure letter" before an OSC employee could proceed. The Reply does not acknowledge this distinction, does not

explain how OSC employees can simultaneously be subject to a unique, non-CSRA exhaustion pathway and yet be fully encompassed within the ordinary CSRA remedial scheme, and does not reconcile its generic preclusion assertions with OSC's prior jurisdictional position. A reply brief may not erase a record-based distinction that underlies the very jurisdictional theory it now seeks to invoke.

OSC's interpretation and use of § 1212(i) operates to displace the CSRA in practice. By asserting that OSC employees must pursue § 1212(i) as a prerequisite to CSRA adjudication, while simultaneously implementing § 1212(i) as a non-adjudicatory, agency-facing investigative referral with no endpoint, no employee notice, and no mechanism to proceed back to the MSPB or any court, OSC has transformed § 1212(i) into a gatekeeper that provides no access to the gate it purports to control. Used in this manner, § 1212(i) does not supplement the CSRA; it functionally nullifies it. Nothing in the statutory text authorizes an agency to effect such a displacement of a congressionally created remedial scheme, and a reply brief may not assume such authority without adversarial testing.

These defects are compounded by the Reply's pivot to a materially different CSRA preclusion theory that did not appear in Defendant's opening motion. In the opening brief, Defendant's CSRA theory depended on the premise that Plaintiff's allegations fall "within the CSRA's remedial scheme," and therefore must be channeled through that statutory structure rather than litigated under other statutes or constitutional provisions. In the Reply, Defendant changes the justification for preclusion by asserting that preclusion applies even where "no remedy was available under that remedial scheme," invoking decisions such as *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988), and *Carducci v. Regan*, 714 F.2d 171 (D.C. Cir. 1983). That shift is reply-only and therefore waived, and it also moots the Reply's own repeated

reliance on the existence of a CSRA "remedial scheme" as the rationale for preclusion. A core theme of the Reply is that Plaintiff's dispute is "employment-based" and therefore falls "within the scope of review permitted under the CSRA." But the Reply's new formulation expressly attempts to obtain preclusion while conceding that the scheme supplies no relief. That is not a minor refinement; it collapses the conceptual basis for channeling. Exclusivity is ordinarily justified because Congress substituted a structured system of review for ad hoc district-court litigation. When the Reply insists that exclusivity applies even in the absence of any meaningful remedial route, it asks the Court to enforce preclusion without the channel itself. That is a self-negating predicate and an improper basis for Rule 12 dismissal.

The Reply's reply-only "preclusion without relief" theory also conflicts with the Supreme Court's limiting framework for CSRA exclusivity. In *Elgin v. Department of the Treasury*, the Court emphasized that CSRA exclusivity rests on two predicates: that the plaintiffs are *covered employees* and that their claims can *receive meaningful review within the CSRA scheme*. 567 U.S. 1, 10–21 (2012). Earlier, in *Bush v. Lucas*, the Court described the civil service system as "comprehensive" and providing "meaningful remedies." 462 U.S. 367, 388 (1983). In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, the Court refused to treat a statutory scheme as preclusive where it failed to provide a meaningful avenue for review of the claims asserted. 561 U.S. 477, 489–91 (2010). And in *Webster v. Doe*, the Court reiterated that when the Government contends Congress intended to foreclose judicial review—particularly of constitutional claims—such intent must be clear. 486 U.S. 592, 603 (1988). The Reply does not establish that OSC employees are covered employees for CSRA exclusivity purposes, does not identify any adjudicatory process or avenue of meaningful review available through § 1212(i),

and does not reconcile its position with *Elgin*'s requirement that meaningful review exist within the statutory scheme. Instead, it asserts exclusivity while disclaiming review.

The Reply never reconciles these contradictions. It relies on the assertion that Congress's omission of relief can itself evidence an intent that "no judicial relief be available," and then uses that assertion not merely to deny a particular remedy but to deny the availability of any forum at all while continuing to describe the CSRA as "the" remedial scheme. That internal conflict—introduced for the first time in reply—renders the Reply's CSRA preclusion theory analytically incomplete and unreliable as a basis for Rule 12 dismissal. The Court should therefore disregard Defendant's CSRA argument to the extent it depends on this internally inconsistent and extra-statutory construction.

**B. The Reply is defective because it imputes to Congress an exhaustion-and-preclusion scheme that does not appear in § 1212(i), while simultaneously using § 1212(i)'s non-adjudicatory structure to deny finality and deny review**

The Reply's CSRA position is further defective because it implicitly attributes to Congress a remedial design that is not in the governing text. The Reply's APA section concedes, in substance, that § 1212(i) is not itself an adjudicatory mechanism and does not culminate in final agency action as the APA understands that term. The Reply relies on Bennett v. Spear's "final agency action" requirements to deny review premised on § 1212(i). 520 U.S. 154 (1997). Yet in the same document the Reply invokes CSRA preclusion as though § 1212(i) were a functioning substitute for the CSRA's adjudicatory track.

This is not simply two arguments in the alternative; it is a structural incompatibility embedded in the Reply's logic. A framework that the Reply characterizes as non-final, non-adjudicatory, and non-reviewable under the APA cannot simultaneously supply the "remedial

scheme" predicate needed for CSRA exclusivity. The Reply's attempt to treat § 1212(i) as both (i) a diversion away from ordinary CSRA processing and (ii) a justification for broad CSRA preclusion produces an internally contradictory model in which claims are removed from adjudication but still treated as if they were covered by an adjudicatory remedial scheme. That is the very defect that makes the Reply's CSRA arguments unreliable as a dismissal vehicle, and the Court may disregard the Reply's CSRA reasoning to the extent it relies on that contradiction.

This defect is compounded by the Reply's effort to treat OSC's interpretation of § 1212(i) as if it were Congress's intended plan. The Reply does not identify text in § 1212(i) establishing an exhaustion sequence, a closure letter requirement, or any endpoint that restores access to a CSRA forum. Instead, the Reply seeks to enforce preclusion as though Congress had designed a complete remedial replacement for OSC employees. That imputation is exactly the type of unsupported congressional-intent assertion courts decline to credit, especially where the effect is to extinguish review. Webster, 486 U.S. at 603 (requiring clear evidence of intent to foreclose review of constitutional claims).

This defect is particularly acute because the Reply relies on an agency-asserted exhaustion-and-preclusion framework that is explicit in Defendant's position but extra-statutory in origin. Nothing in 5 U.S.C. § 1212(i) authorizes OSC to impose a mandatory or exclusive exhaustion regime, to require a "closure letter," to foreclose access to CSRA adjudication, or to render the process unreviewable. The Reply thus depends on an asserted expansion of agency authority that is not grounded in statutory text. As the Supreme Court has made clear, agencies may not claim such authority based on statutory silence, particularly where the asserted power would restructure or displace a congressionally created remedial scheme. West Virginia v. EPA, 597 U.S. 697, 721–23 (2022). Because this asserted authority was neither authorized by statute

nor articulated or developed in Defendant's opening motion, the Reply's reliance on it represents a procedurally improper expansion of the Government's theory and may be disregarded.

Because Defendant's Reply uses § 1212(i) to deny finality and deny review on the one hand, while treating it as part of a broad CSRA preclusion theory on the other, the Reply rests on an extra-statutory and internally contradictory premise that the Court should disregard.

**C. The Reply is defective because its CSRA preclusion framing is a new dispositive theory that would require adversarial testing before it could support dismissal**

The Reply's CSRA discussion is procedurally defective because it does not merely respond to Plaintiff's opposition but introduces a new, outcome-determinative theory of preclusion that was absent from Defendant's opening motion. In its opening brief, Defendant argued that CSRA preclusion applies because Plaintiff's allegations fall "within the CSRA's remedial scheme." In reply, Defendant advances a materially different position: that CSRA preclusion applies even where the asserted scheme provides no remedy, no adjudication, and no avenue of review. That reframing is not a clarification or elaboration of the opening argument; it is a new dispositive theory.

This shift is precisely what the waiver doctrine forbids. A reply brief may not be used to introduce a new theory that changes the basis for dismissal after the nonmovant has already responded. See Rollins Env't Servs. (NJ), Inc. v. EPA, 937 F.2d 649, 661 (D.C. Cir. 1991); Lewis v. District of Columbia, 791 F. Supp. 2d 136, 140 n.4 (D.D.C. 2011). Whether Defendant's new "preclusion without relief" theory could survive scrutiny is beside the point. Because it was not presented in the opening motion, Plaintiff had no fair opportunity to address its premises, its legal consequences, or its internal inconsistencies.

The procedural defect is especially acute because the Reply's new framing would require resolution of contested legal and structural questions not previously joined—including whether § 1212(i) supplies any meaningful review, whether OSC employees are covered employees for CSRA exclusivity purposes, and whether Congress authorized an exhaustion-and-preclusion regime that forecloses all forums. Those issues cannot be resolved in reply without adversarial testing. A reply brief is not a proper vehicle for introducing a new architecture of preclusion designed to foreclose every forum while avoiding the consequences of establishing a functioning statutory remedial path.

Because the Reply advances a new, dispositive CSRA preclusion theory for the first time in reply, and because consideration of that theory would require analysis and responses not permitted in the reply posture, the Court should disregard the Reply's CSRA argument to the extent it depends on this newly asserted framework.

**D. The Reply Recharacterizes the MSPB Jurisdictional Record Rather Than Responding to the Opposition**

The Reply asserts that Plaintiff "misreads" OSC's position before the MSPB and suggests that OSC merely argued a failure to exhaust administrative remedies. That assertion is defective because it reframes the MSPB jurisdictional record while omitting the operative conditions OSC itself imposed. In its jurisdictional pleadings before the MSPB, OSC did not argue exhaustion in the abstract. It expressly conditioned MSPB jurisdiction on exhaustion of 5 U.S.C. § 1212(i) and the production of a "closure letter" from the designated Office of Inspector General authorizing Board review.

The Reply is defective because it erases record evidence demonstrating that the exhaustion pathway it assumes lacks any employee-facing completion mechanism. In its MSPB

jurisdictional pleadings, OSC expressly conditioned Board jurisdiction on exhaustion of 5 U.S.C. § 1212(i) and the production of a "closure letter" from the designated Office of Inspector General (Exhibits A and B). That condition appears nowhere in the statute. Section 1212(i) contains no exhaustion steps, no closure mechanism, and no endpoint restoring MSPB jurisdiction. Nor does OSC Directive 57—the governing complaint policy attached as Exhibit I—provide for a closure letter, an exhaustion determination, or any procedure by which an OSC employee may return to CSRA adjudication.

The record further confirms that this pleading-created exhaustion condition cannot, as a practical matter, be satisfied. As reflected in Exhibit N, the designated USDA Office of Inspector General expressly states that it conducts investigations solely on behalf of OSC, does not issue employee-facing determinations, does not communicate investigative findings to employees, does not impose timelines, and plays no role in determining whether or when OSC responds to its reports. The OIG makes no reference to any "closure letter," exhaustion determination, or mechanism by which an OSC employee may proceed back to the MSPB or any other adjudicatory forum. Taken together, these undisputed features establish that the "closure letter" requirement imposed by OSC exists only in pleadings and cannot be completed under the actual § 1212(i) process.

These features were central to Plaintiff's opposition and to the argument that OSC's MSPB position functionally removed CSRA review. The Reply nonetheless ignores Exhibits A, B, I, and N and proceeds as though a valid exhaustion pathway exists. A reply brief may not erase record evidence demonstrating that the purported exhaustion pathway lacks any employee-facing completion mechanism, particularly where that absence is central to the opposition's argument. Because the Reply rests on a pleading-created exhaustion condition that cannot, as a

practical matter, be satisfied, its CSRA preclusion argument is procedurally defective and should be disregarded.

Courts in this Circuit consistently decline to consider reply arguments that rest on selective or contested characterizations of the record rather than responding to arguments actually raised in opposition. A reply brief is not a vehicle for reframing prior proceedings or introducing a new narrative of the factual or procedural history. See *Rollins Env't Servs. (NJ), Inc. v. EPA*, 937 F.2d 649, 661 (D.C. Cir. 1991) (arguments raised for the first time in reply are waived); *Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 140 n.4 (D.D.C. 2011) (court will not consider reply arguments that depend on factual assertions the opposing party had no opportunity to address). Where a reply depends on a disputed interpretation of prior proceedings, courts disregard it because resolution would require record development and adversarial testing that the reply posture does not permit.

**E. The Reply Collapses Distinct Statutory and Regulatory Regimes Without Developing the Connecting Logic**

The Reply repeatedly treats the CSRA, 5 U.S.C. § 1212(i), and multiple OSC Directives as if they formed a single, integrated preclusive framework, asserting that challenges to those directives are necessarily "employment-based disputes" barred by the CSRA. That collapse is defective because it assumes legal interchangeability that the opening motion never established and that the governing authorities do not support. The opening motion did not explain how non-adjudicatory referral provisions such as § 1212(i), or internal policies such as OSC Directives 52 (reasonable accommodation), 57 (complaint processing), and 58 (anti-harassment), are subsumed within the CSRA's adjudicatory scheme—particularly where those directives govern processes that are not personnel actions and do not culminate in appealable agency decisions.

10

Courts do not permit a movant to assert preclusion by collapsing distinct statutory or regulatory regimes into a single framework without developing the connective legal logic in the opening brief. A reply may not introduce a new composite theory assembled from multiple statutes or policies, particularly where those regimes serve different functions and produce different legal consequences. See *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 56 (D.D.C. 2014) (reply may not introduce new legal theories); *Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 331 (D.C. Cir. 2004) (reply cannot cure defects in opening brief). Courts therefore disregard reply arguments that assume legal interchangeability without analysis and would require the court to supply the missing reasoning.

**F. The Reply Assumes, Rather Than Demonstrates, That All Alleged Conduct Constitutes "Personnel Actions"**

The Reply asserts, without analysis, that all challenged conduct constitutes "personnel actions" reviewable under the CSRA. That assertion is conclusory. Neither the opening motion nor the Reply identifies which specific statutory categories under 5 U.S.C. § 2302(a)(2) are implicated by the challenged conduct, nor do they explain how non-adjudicatory processes— such as complaint handling, internal referrals, investigative routing, or record maintenance—fall within any enumerated personnel action. Instead of performing the required statutory mapping, the Reply simply labels the conduct "employment-based" and treats that label as dispositive.

It is well settled that conclusory assertions cannot substitute for statutory analysis, and a reply brief may not cure an undeveloped opening argument by simply declaring the conclusion. See *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555 (2007) (courts are not required to accept conclusory statements); *Schneider v. Kissinger*, 412 F.3d 190, 200 (D.C. Cir. 2005) (courts need not accept legal conclusions unsupported by analysis). Where preclusion depends on statutory

11

definitions, the burden rests with the movant to apply the statute to the alleged conduct. Courts disregard reply arguments that rely on conclusory labels rather than reasoned statutory application, particularly where accepting the argument would require the court to perform the analysis the movant omitted.

**G. The Reply Relies on Mutually Inconsistent Characterizations of Agency Finality**

In its APA discussion, the Reply insists that 5 U.S.C. § 1212(i) produces no "final agency action" and therefore cannot support APA review. Elsewhere, however, the Reply treats the same § 1212(i) framework as a meaningful component of a remedial structure sufficient to displace judicial review through CSRA preclusion. Those positions are incompatible. A statutory mechanism that is characterized as non-final, non-adjudicatory, and incapable of producing reviewable agency action cannot simultaneously serve as the operative substitute justifying broad preclusion of judicial review.

Courts routinely decline to credit arguments that depend on mutually inconsistent characterizations of the same conduct, especially when those inconsistencies appear for the first time in reply. A party may not alternately deny and affirm the legal significance of the same agency action to defeat different claims. See *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (courts do not permit internally inconsistent positions); *Morris v. McCarthy*, 825 F.3d 658, 667 (D.C. Cir. 2016) (courts reject arguments that shift positions to obtain procedural advantage). Where a reply relies on incompatible premises, courts disregard the argument because it is unreliable as a basis for dismissal.

**H. The Reply Invokes Title VII Preclusion Only by Incorporation, Without Analysis, and With Other Exclusive Statutory Frameworks**

The Reply alternately characterizes Plaintiff's claims as CSRA-precluded personnel disputes and as Title VII claims—invoking mutually exclusive statutory frameworks to defeat different causes of action—despite the Complaint expressly disclaiming any Title VII cause of action. The Reply attempts to accomplish this by stating that Defendant "incorporates in full" its Title VII arguments on the ground that Plaintiff allegedly did not respond to them. That maneuver is defective for multiple reasons. A reply brief may not preserve, expand, or revive an argument through incorporation by reference, particularly where the opening motion framed preclusion under a different statutory theory and the Reply supplies no substantive analysis. The defect is compounded because the Reply offers no explanation for how Title VII applies at all, provides no basis for treating the Complaint as invoking Title VII, and never explains how the same claims can simultaneously fall within both the CSRA and Title VII regimes. A reply brief may not rely on incompatible statutory characterizations of the same claims to obtain dismissal.

Courts in this Circuit have repeatedly held that incorporation by reference in a reply brief does not preserve, develop, or revive an argument. See *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (arguments not developed are forfeited); *United States v. Hicks*, 978 F.2d 722, 723 (D.C. Cir. 1992) (undeveloped arguments are waived). A reply brief must contain the substantive reasoning supporting the argument; it cannot rely on blanket incorporation, particularly where the reply invokes a statutory framework that the pleadings expressly disclaim. Courts therefore disregard reply arguments that rely on undeveloped incorporation rather than analysis.

**I. The Reply Relies on Overgeneralized Case Citations Without Engaging Limiting Principles**

The Reply cites CSRA preclusion cases at a high level of generality without addressing their limiting context, including whether those cases presuppose an operative CSRA adjudicatory pathway or involve § 1212(i). Applying precedent beyond its context without analysis is a classic reply defect. Courts decline to credit such arguments because the nonmovant had no opportunity to address the unstated extensions.

Courts do not extend precedent beyond its factual and statutory context without analysis, and a reply brief may not rely on overgeneralized citations to fill analytical gaps left in the opening motion. See *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) (precedent must be read in context); *Hilska v. Jones*, 297 F.3d 255, 259 (D.C. Cir. 2002) (courts decline to apply authority divorced from its facts). Where a movant relies on high-level propositions without addressing limiting principles, and does so in reply, courts disregard the argument because the nonmovant had no opportunity to address the unstated extensions.

**J. The Reply Shifts Between Jurisdictional and Merits-Based Framing Without Clarifying the Applicable Standard**

The Reply alternates between Rule 12(b)(1) and Rule 12(b)(6) in characterizing CSRA preclusion, at times asserting that preclusion deprives the Court of subject-matter jurisdiction and at others treating it as a merits-based bar to relief. The Reply does not identify which characterization controls or explain how the applicable standard should be applied.

Courts require clarity as to whether dismissal is sought on jurisdictional or merits grounds because different standards apply. A party may not shift between Rule 12(b)(1) and Rule 12(b)(6) in reply without identifying the governing standard. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998) (jurisdiction must be addressed distinctly); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (courts reject arguments that conflate jurisdiction

14

and merits). Where a reply alternates between jurisdictional and merits-based framing without explanation, courts disregard the argument because resolving the ambiguity would require the court to supply missing procedural analysis.

### K. The Reply Is Prejudicial Because It Withholds Dispositive Theories Until After Opposition and Seeks Dismissal on an Unanswered Record

The Reply is not merely procedurally irregular; it is prejudicial. Defendant used its Reply to introduce new, outcome-determinative theories, altered predicates for CSRA preclusion, and extra-statutory assumptions about § 1212(i) that were not presented in the opening motion and therefore could not be addressed in Plaintiff's opposition. That sequencing deprived Plaintiff of a fair opportunity to respond to the actual grounds on which Defendant now seeks dismissal.

The prejudice is concrete. The Reply advances theories that, if credited, would foreclose all forums for review by asserting that § 1212(i) is mandatory, exclusive, and unreviewable, while simultaneously denying that it provides any adjudicatory process or exhaustion endpoint. Plaintiff had no opportunity to address that framework in opposition, to marshal record evidence responding to it, or to brief the legal consequences of an exhaustion pathway that cannot be completed as a practical matter. Resolving those issues based solely on reply-only argument would require the Court to adjudicate dispositive questions without adversarial testing.

This prejudice is heightened by the procedural posture of the case. Defendant received a 53-day extension to file its Reply, yet nonetheless used the Reply to introduce dispositive theories that could have been raised in the opening motion. The prejudice therefore does not arise from timing constraints or unavoidable developments; it arises from a strategic choice to withhold dispositive arguments until reply, when Plaintiff no longer had a right to respond.

Courts in this Circuit routinely disregard reply-only arguments precisely to prevent this form of prejudice. Where a reply introduces new theories, reframes the record, or supplies missing analytical predicates, the harm is not cured by judicial scrutiny alone because the nonmovant has been denied the opportunity to test those theories through briefing. The appropriate remedy is to disregard the improper arguments, or, if the Court is inclined to consider them, to permit a narrowly limited sur-reply confined to the new material.

Accordingly, the Reply's defects are not harmless. They materially impair Plaintiff's ability to respond and would require the Court to resolve dispositive issues on an incomplete and one-sided record. That prejudice independently warrants disregarding the Reply to the extent it advances reply-only arguments or relies on newly asserted predicates.

## II. Conclusion

Each of the foregoing defects independently warrants disregarding the Reply in whole or, at minimum, declining to consider the defective portions. Considered together, they demonstrate that the Reply is procedurally improper and prejudicial because it advances new, outcome-determinative theories for the first time in reply, materially reframes the jurisdictional record, and relies on internally inconsistent and extra-statutory premises that were not presented in the opening motion. The resulting prejudice is not incidental. Defendant received a 53-day extension to file its Reply yet nonetheless reserved its most sweeping and dispositive theories for reply, after Plaintiff's opposition had already been filed and without affording Plaintiff a fair opportunity to respond.

For these reasons, Plaintiff respectfully requests that the Court strike Defendant's Reply or, at minimum, disregard the Reply to the extent it advances reply-only arguments or depends on newly asserted, internally inconsistent, or extra-statutory premises as a basis for dismissal. In

the further alternative—and only if the Court is inclined to consider any reply-only arguments or dependent reasoning—Plaintiff respectfully requests leave to file a short sur-reply strictly limited to the new material introduced in the Reply.

Respectfully submitted,

/s/ Nathan Strong
Nathan Strong
240 S. Reynolds St
Alexandria, VA 22304
(202) 709-6123

December 22, 2025